UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-CV-23401-COHN/SELTZER

SYDELLE RUDERMAN, by and through her
Attorney-in-fact, Bonnie Schwartz, and
SYLVIA POWERS, by and through her
Attorney-in-fact, Les Powers, individually
and on behalf of all others similarly situated,

Plaintiffs,

vs.

WASHINGTON NATIONAL
INSURANCE COMPANY,
Successors in Interest to
Pioneer Life Insurance Company,

Defendant.
_____/

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs, SYDELLE RUDERMAN by and through her attorney-in-fact, Bonnie Schwartz, and SYLVIA POWERS, by and through her attorney-in-fact, Les Powers, ("Plaintiffs" collectively), hereby bring this First Amended Class Action Complaint on behalf of themselves and all others similarly situated against WASHINGTON NATIONAL INSURANCE COMPANY, Successors in Interest to Pioneer Life Insurance Company, ("Defendant" or "Washington National"), for breach of contract and injunctive relief, and allege:

## NATURE OF THE CASE

1.     This is a proposed class action brought on behalf of all citizens of Florida who purchased a Limited Benefit Home Health Care Coverage Policy ("Policy"), from

Pioneer Life Insurance Company ("Pioneer Life") in the state of Florida where Pioneer Life or Washington National has rejected all or a portion of a claim on the Policy due to the Lifetime Maximum and/or Per Occurrence Benefit amounts having been reached.

## JURISDICTION AND VENUE

2.    This court has jurisdiction over the cause of action asserted herein pursuant to 28 U.S.C. §1332(d), because in the aggregate, the matter in controversy exceeds the sum or value of $5,000,000, and diversity of citizenship between the proposed Class Members and Defendant.

3.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2). Substantial acts in furtherance of the alleged improper conduct, including the contract formation, collection of premiums, and denial of benefits, occurred within this District.

## PARTIES

4.    Plaintiff Sydelle Ruderman is a resident of Dade County, Florida, where she purchased a Policy from Pioneer Life. By virtue of a power of attorney dated November 22, 2005, Bonnie Schwartz is the attorney-in-fact for said Plaintiff.

5.    Plaintiff Sylvia Powers a resident of Dade County, Florida, where she purchased a Policy from Pioneer Life. By virtue of a power of attorney dated October 26, 2000, Les Powers is the attorney-in-fact for said Plaintiff.

6.    Defendant Washington National Insurance Company is an insurance company providing insurance and annuities. Washington National is incorporated in Illinois and its principal place of business is located at 11815 North Pennsylvania Street, Carmel, Indiana 46032. Therefore, Washington National is both a citizen of Illinois and

Indiana for the purposes of diversity jurisdiction.   Defendant is authorized to and is doing business in the state of Florida.

7.      In 2003, Washington National assumed 100% of the liabilities of Pioneer Life as a result of a corporate merger.

## SUBSTANTIVE ALLEGATIONS

8.      Pioneer Life was a stock company that was domiciled in Illinois and was a wholly-owned subsidiary of Conseco Life Insurance Company of Texas. Pioneer Life was incorporated in 1963 and commenced writing business in 1964. Pioneer Life was authorized to write life, group life and annuities, credit life and health, credit disability, and accident and health business in Florida. On January 1, 2001, Pioneer Life ceased writing new business.

9.      On or about April 17, 1994, Pioneer Life issued a home health care insurance Policy to Plaintiff Ruderman bearing Certificate Number PL1090196A.

10.     On or about September 1, 1993, Pioneer Life issued a home health care insurance Policy to Plaintiff Powers bearing Certificate Number PL 1024210A.

11.     The Policy for both Plaintiffs and Class Members defined below, on page 5, in Section A under the heading "Benefits," provides:

> **HOME HEALTH CARE**: We will pay 100% of the usual and customary charges for Home Health Care expenses if the care was pre-authorized. If the care was not pre-authorized we will pay 75% of the usual and customary charges for Home Health Care expenses incurred, up to 75% of the Daily Benefit Amount shown in the schedule. These benefits will be paid up to the Home Health Care Daily Benefit shown in the schedule. All benefits will be limited to the Per Occurrence Maximum Benefit for each injury or sickness and the Lifetime Maximum Benefit Amount for ALL injuries and sicknesses which are shown in the certificate schedule.

3

12.     The relevant Policy Benefits are listed prominently in a Certificate Schedule, which is identical as to format, and as to the type and amount of each of the Benefits for Plaintiff Ruderman, Plaintiff Powers and for Class Members defined below.

13.     The Certificate Schedule is the only place in the Policy that specifies the amounts of coverage afforded to Plaintiffs and Class Members and the percentage amount their Policy Benefits increased per year under the Policy. The Certificate Schedule also appears to be the only part of the Policy that was prepared personally for Plaintiffs and Class Members and tailored for them to spell out the monetary value of their benefits and the 8% benefits increase uniformly afforded to each of them annually under the Policy.

14.     The Certificate Schedule is a sparsely typed page.  It appears as page 3 of the Policy. Page 1 is the cover page, and page 2, the Index, is printed on the back of page 1.  See Exhibits A and B attached hereto and incorporated herein.   Other than the heading, "Certificate Schedule," three lines at the bottom of the page giving the Insured's name, the certificate number, the effective date and the initial premium, and a final line with the form number and page number, it presents the four lines depicted below which set forth the three Benefits (Daily, Lifetime, and Per Occurrence Benefits), or limitations, referred to in the Home Health Care Section of the Policy.

15.     Each of the three Benefits appearing in the Certificate Schedule of the Policy gets its own maximum dollar amount: per day, per lifetime, and per occurrence of illness. After this listing, as set forth below, completely separated from it by additional spacing, appears the line: "AUTOMATIC BENEFIT INCREASE PERCENTAGE Benefits [plural] increase by 8% each year."   The Policy nowhere indicates that the 8%

4

"Automatic Benefit*s* Increase" does not apply to either the Lifetime and/or Per Occurrence Maximum Benefits under which the 8% increase it is plainly stated.

16.    Accordingly, the Certificate Schedule set forth in the Ruderman Policy reads:

CERTIFICATE SCHEDULE

HOME HEALTH CARE BENEFIT          $ 180/DAY
LIFETIME MAXIMUM BENEFIT AMOUNT   $ 250,000
PER OCCURRENCE MAXIMUM BENEFIT    $ 150,000/ILLNESS

**AUTOMATIC BENEFIT INCREASE
PERCENTAGE**                      **Benefit_s_ increase by 8% each year**

[Exhibit A, hereto][emphasis added].

17.    Likewise, the Certificate Schedule set forth in the Powers Policy reads:

CERTIFICATE SCHEDULE

HOME HEALTH CARE BENEFIT          $ 180 /DAY
LIFETIME MAXIMUM BENEFIT AMOUNT   $ 250,000 . . . . .
PER OCCURRENCE MAXIMUM BENEFIT    $ 150,000/ILLNESS

**AUTOMATIC BENEFIT INCREASE
PERCENTAGE**                      **Benefit_s_ increase by 8% each year**

[Exhibit B, hereto][emphasis added].

18.    Each time the Policy mentions the Per Occurrence or Lifetime Maximum Benefits, it refers back to the Certificate Schedule which clearly sets forth the 8% benefits increase language:

**HOME HEALTH CARE:**  We will pay 100% of the usual and customary charges for Home Health Care expenses if the care was pre-authorized.  If the care was not pre-authorized we will pay 75% of the usual and customary charges for Home Health Care expenses incurred, up to 75% of the Daily Benefit Amount shown in the _schedule_.  All benefits will be limited to the Per Occurrence Maximum Benefit for each injury or sickness and the Lifetime Maximum Benefit Amount for ALL injuries and sicknesses which are shown in the _certificate schedule_.

[Exhibits A and B hereto][emphasis added]

-----

**F. LIFETIME MAXIMUM BENEFIT.**  This coverage shall terminate and no further benefits will be payable when the total sum of Home Health Care or Adult Day Care benefits paid equals the amount shown in the *schedule* for the Lifetime Maximum Benefit Amount.  Any premium paid for a paid for a period after termination will be refunded.

*Id.* [emphasis added].

-----

**E. PER OCCURENCE MAXIMUM BENEFIT.**  No further benefits will be payable for  sickness or injury when the total sum of Home Health Care or Adult Day Care of benefits for that occurrence equals the amount shown in the *schedule*  for the Per Occurrence Maximum Benefit.  Successive confinement due the same or related cause not separated by at least six months of normal daily living will be considered as the same occurrence.

*Id.* [emphasis added].

**A. AUTOMATIC DAILY BENEFIT INCREASE.**  On each policy anniversary, we will increase the Home Health Care Daily Benefit payable under this policy by the Automatic Benefit Increase Percentage shown on the *schedule* page.

*Id.* [emphasis added]

19.     Despite the foregoing, Defendant has routinely only applied the 8% increase to the above-quoted Automatic Daily Benefit in the Policy.

20.     Nonetheless, currently, and at all times material hereto, Defendant has routinely not paid or afforded the 8% annual increase in the Lifetime Maximum and/or Per Occurrence Benefits to Plaintiffs and Class Members under the Policy.  As a result:

a. The Rule 23(b)(3) Class Members defined below have had claims denied because they exceed the original maximums on the Lifetime Maximum and/or Per Occurrence Benefits stated in the Certificate Schedule of the Policy sooner than they would have had Defendant

applied the 8% annual increase to <u>all</u> Policy benefits as stated in the Certificate Schedule; and

b. The Rule 23(b)(2) Class Members defined below are currently not being afforded the 8% annual increase to <u>all</u> Policy benefits as stated in the Certificate Schedule.

21.    For example, on or about January 28, 2007, after having previously paid claims made by Plaintiff Ruderman, Washington National denied a claim by Plaintiff Ruderman on the ground that she had reached the original Per Occurrence Benefit of $150,000, even though, as discussed above, the Policy expressly provides for an 8% annual increase for ***all* Benefits**.

22.    At all time prior to January 28, 2007, Plaintiff Ruderman fulfilled her obligations under the Policy.

23.    Also, on or about September 14, 2007, after having previously paid claims made by Plaintiff Powers, Washington National denied a claim by Plaintiff Powers on the ground that she had reached the original Maximum Lifetime Benefit of $250,000, even though, as discussed above, the Policy expressly provides for an 8% annual increase for ***all* Benefits**.

24.    At all times prior to September 14, 2007, Plaintiff Powers fulfilled her obligations under the Policy.

25.    On October 4, 2007, in a case involving the Policy that is identical to Plaintiffs' Policy, the United States Court of Appeals for the Eleventh Circuit reversed an order of the United States District for the Southern District of Florida and granted summary judgment on the issue of liability holding that "it would be reasonable for an

ordinary person to conclude that all benefits increase by 8% each year" and that under Florida law, where reasonable interpretations in an insurance policy provide for ambiguity, the terms are to be construed liberally in favor of the insured and strictly against the insurer.  The opinion (*Gradinger v. Washington National Ins. Co.*, Eleventh Circuit Case No. 06-16164 (on appeal from S.D. Fla.)), is available at http://www.ca11.uscourts.gov/unpub/ops/200616164.pdf,[1] and is attached hereto as Exhibit C.

26.    All conditions precedent to the filing of this action, if any, have been performed, waived, satisfied or otherwise executed.

## CLASS ALLEGATIONS

27.    Plaintiffs bring this action as a class action pursuant to Rule 23(b)2 and/or 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following "Classes" and "Class Members:"

Rule 23(b)(3) Class: All of Defendant's insureds residing in Florida who were denied Policy benefits because they reached their Lifetime Maximum and/or Per Occurrence Benefit maximum under the Policy.

Rule 23(b)(2) Class: All of Defendant's insureds residing in Florida who currently have a Policy in effect and are currently receiving benefits under the policy.

28.    Excluded from the Class are Defendant, any subsidiary or affiliate of Defendant, and  the directors, officers and employees of Defendant or its subsidiaries or affiliates, or any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person.

---

[1]  This opinion is marked as "withdrawn" by the Eleventh Circuit, but it remains on that court's web site.

29.     This action has been brought and may properly be maintained as a class action against Defendant pursuant to the Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class Members are easily ascertainable.

30.     At this time, Plaintiffs do not know the exact number of Class Members, but this information is easily ascertainable from Defendant's records.  Given the nature of the claims and the scope of Defendant's Home Health Insurance line of business, Plaintiffs believe that the Class is so numerous such that joinder of all Class Members is impracticable and the disposition of their claims in a class action rather in individual actions will benefit the Parties and the Court.  Class Members can be notified of this class action via notice publication and U.S. mail, at addresses which Defendant should have in its business records.

31.     Common questions of law or fact exist as to all Class Members and predominate over any questions solely affecting individual members of the Class Among the questions of law or fact common to Class Members are:

     a.  Whether Washington National and/or its predecessor-in-interest, Pioneer Life participated in and pursued the common course of conduct complained of herein;

     b.  Whether, based on the Policy read in its entirety, the 8% increase indicated in the Certificate Schedule applies to all benefits listed in the Certificate Schedule;

     c.  Whether the Policy is ambiguous on its face;

d.  Whether Washington National and/or its predessor-in-interest, Pioneer Life breached its contracts with Plaintiff and all Class Members by denying them an 8% annual increase in the Lifetime Maximum and/or Per Occurrence Benefits under the terms of the Policy;

e.  Whether Class Members have sustained damages and, if so, the proper measure thereof; and

f.  Whether Plaintiffs and Class Members are entitled to injunctive relief.

32.    Plaintiffs' claim is typical of those of the other Class Members because Plaintiffs have no interest that is adverse to the interests of other Class Members and Plaintiffs, like all other Class Members, were affected by the same ongoing and illegal conduct by Defendant in denying them an 8% annual increase in the Lifetime Maximum and/or Per Occurrence Benefits, as is set forth in the Policy.

33.    Plaintiffs will fairly and adequately protect the interests of Class Members because it is in their best interests to prosecute the claims alleged herein to obtain full redress due them for the illegal conduct of which they complain.  Plaintiffs have retained counsel who are experienced in litigating complex class actions.  Plaintiffs have no interests which conflict with Class Members because all questions of law and fact regarding Defendant's liability are common to all Class Members and predominate over any individual issues that may exist, such that by prevailing on their own claims, Plaintiffs necessarily will establish Defendant's liability to all Class Members.  Plaintiffs' counsel has the necessary resources to adequately and vigorously litigate this class action, and Plaintiff and her counsel are aware of their fiduciary responsibilities to the

Class Members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class Members.

34.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. The prosecution of individual remedies by Class Members will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties.  Most individual Class Members have little ability to prosecute an individual action due to their age, the complexity of the issues involved in this litigation, the enormity of Defendants' business, the significant costs attendant to litigation on this scale, and the amount of money damages suffered by or owed Class Members.  Class action treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.

35.     Plaintiffs seek injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class Members in order to enjoin and prevent Defendant's ongoing failure to apply the annual 8% increase to all benefits under the Policy, and to order Defendant to provide notice to insureds of their rights to the annual 8% increase.

36.     Because Plaintiffs seek injunctive relief for Class Members, the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members which

would establish incompatible standards of conduct for the Defendant. Further, adjudications with respect to individual Class Members would, as a practical matter, be dispositive of the interests of other Class Members who are not parties to the adjudication and may impair and impede their ability to protect their interests.

37.    Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**COUNT I**
**(BREACH OF CONTRACT)**

38.    Plaintiffs re-allege and incorporate by reference the above paragraphs of this First Amended Complaint as it fully set forth herein.

39.    Count I is brought on behalf of Plaintiffs individually and on behalf of the Rule 23(b)(3) Class Members set forth above.

40.    Pursuant to the express terms of the Policy, Defendant was obligated to increase the Lifetime Maximum and Per Occurrence Benefits annually by 8%.

41.    The Policy Plaintiffs and Class Members entered into are valid insurance contracts. [See Exhibits A and B attached hereto].  Plaintiffs and all other similarly situated Class Members performed all of their obligations under the contracts by paying the requisite premiums due under the terms of the Policy.

42.    Plaintiffs and all other similarly situated Class Members had a legal capacity to enter into the Policy.

43.    The Court has already determined that the Policy was ambiguous as to the 8% increase, and as such the Policy is to be construed against Defendant. (DE 28 at 7).    Defendant materially breached its insurance contracts with Plaintiffs and other similarly situated Class Members by denying claims on the Policy when the initial

12

Lifetime Maximum and/or Per Occurrence Benefit had been reached, without providing them with an 8% annual increase in the Lifetime Maximum and/or Per Occurrence Benefits.  In addition, as a result of the breach insureds have had to pay for healthcare services care out of pocket.

44.    As a direct and proximate result of the breach set forth herein, Plaintiff and all other similarly situated Class Members have suffered damages in an amount that will be proven at trial.

WHEREFORE, Plaintiffs pray for judgment on behalf of themselves and on behalf of the Rule 23(b)(3) Class Members defined above, as follows:

A.    Certifying the a class pursuant to Rule 23(b)(3), *Fed. R. Civ. P.*, and appointing Plaintiffs as representatives for said Class Members and their counsel as Class Counsel;

B.    Awarding Plaintiffs and Class Members compensatory damages in an amount in excess of $5,000,000 and all monetary relief referenced in this First Amended Complaint;

C.    Awarding reasonable costs and attorneys' fees;

D.    Awarding applicable pre-judgment and post-judgment interest; and

E.    Awarding such other relief as the Court may deem just and proper.

## COUNT II
## (INJUNCTIVE RELIEF)

45.    Plaintiffs readopt and re-allege the allegations set forth in Paragraphs 1-37 as if fully stated herein, and further state:

46.    Count II is brought on behalf of Plaintiffs individually and on behalf of the Rule 23(b)(2) Class Members set forth above.

47.    Plaintiffs and said Class Members are elderly (80-90 years old) and in many circumstances Class Members are in dire need of the Home Health Care provided under the Policy. Plaintiffs and Class Members purchased the Policy to cover those needs included in "Home Health Care" as defined in the Policy.

48.    Plaintiffs and Class Members have a legal right under the Policy to have the 8% annual increase applied to their Lifetime Maximum and/or Per Occurrence Benefits. Nonetheless, Defendant currently does not pay or afford the 8% annual increase in Lifetime Maximum and/or Per Occurrence Benefits to Plaintiffs and Class Members due and owing under the Policy.  As a consequence, Defendant has violated and continues to violate one or more cognizable legal rights of Plaintiffs and Class Members.

49.    Defendant continues to retain monies due and owing Plaintiffs and Class Members, and continues to withhold benefits, and unless enjoined by this Court will continue to retain such monies and withhold benefits commensurate with the 8% annual increase in Lifetime Maximum and/or Per Occurrence Benefits Plaintiffs and Class Members should receive under the Policy.

50.    Plaintiffs and Class Members have no adequate remedy at law by virtue of Defendant's on-going course of conduct.

51.    Irreparable injury will be suffered unless an injunction issues to prevent Defendant from continuing to deny the 8% annual increase in Lifetime Maximum and/or Per Occurrence Benefits to Plaintiffs and Class Members, and to provide notice to Class Members about their right to the 8% annual increase in Lifetime Maximum and/or Per Occurrence Benefits under the Policy.

52. Any potential injury to Defendant attributable to an injunction along the lines set forth in the preceding Paragraph is outweighed by the injury that Plaintiffs and Class Members and the public will suffer if such injunction is not issued, and such injunction would not be adverse to the public interest.

WHEREFORE, Plaintiffs pray for judgment as follows:

A. Certifying the Class pursuant to Rule 23(b)(2), *Fed. R. Civ. P.*, and appointing Plaintiffs as representatives for Class Members and their counsel as Class Counsel;

B. Enjoining Defendant from continuing to deny the 8% annual increase in Lifetime Maximum and Per Occurrence Benefits to Plaintiffs and Class Members; and requiring Defendant to provide notice to Class Members about their right to the 8% annual increase in Lifetime Maximum and/or Per Occurrence Benefits under the Policy;

C. Awarding reasonable costs and attorneys' fees; and

D. Awarding such other relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

DATED April 28, 2009

Respectfully submitted,

By: /s/ Steven R. Jaffe
Steven R. Jaffe        FLBN 390770
Mark S. Fistos        FLBN 909191
Seth Lehrman        FLBN 132896
ROTHSTEIN ROSENFELDT ADLER
401 East Las Olas Blvd., Suite 1650
Fort Lauderdale, Florida 33301
Telephone 954-522-3456
Facsimile 954-527-8663

Steven M. Dunn
STEVEN M. DUNN, P.A.
FLBN 488534
1135 Kane Concourse, 5th Floor
Bay Harbor Island, Florida  33154
Telephone 305-868-1400
Facsimile 305-868-1409

**Attorneys for Plaintiffs**

**FIRST AMENDED CLASS ACTION COMPLAINT**
**Ruderman v. Washington National, Case No. 08-23401-CIV-COHN/SELTZER**

# EXHIBIT A

# *PioneerLife*

## A STOCK COMPANY

(Referred to in this certificate as the company, we, our, or us)

## LIMITED BENEFIT HOME HEALTH CARE
## COVERAGE
## CERTIFICATE OF INSURANCE



This certificate is issued as evidence of insurance under the group policy issued to the group policyholder. This certificate describes the benefits and other important provisions of the group policy that pertain to your insurance. The group policy controls all of the terms of your insurance, and may be inspected at the office of the group policyholder during regular business hours. Please read this certificate carefully.

This insurance is effective at 12:01 A.M. on the Effective Date shown in the certificate schedule if: (1) you are eligible for coverage under the group policy; and (2) you have paid the required premium. You can continue to renew your coverage on each renewal date until it terminates in accordance with the termination provision.

### RIGHT TO EXAMINE

Carefully read this certificate as soon as you receive it. If you are not satisfied, you may return it to us within 30 days after you receive it. We will refund all premiums you have paid.

### IMPORTANT NOTICE ABOUT THE STATEMENTS IN THE APPLICATION

Please read the copy of the application which is attached to this certificate. Check to see if any medical history has been left out; otherwise your coverage may not be valid. Write to us within 10 days if any information shown isn't right and complete. Any wrong or left out statements could cause an otherwise valid claim to be denied.

*Robert S. Pinzur*

Secretary

*Thomas L. Brophy*

President

The benefits of the policy providing your coverage are governed primarily by the law of a state other than Florida.

IC-9311-A

**PIONEER LIFE INSURANCE COMPANY OF ILLINOIS**
304 North Main Street ● P.O. Box 120 ● Rockford, Illinois  61105-0120 ● (815) 987-5000

**INDEX**

| | PAGE |
|---|---|
| BENEFITS | |
|    HOME HEALTH CARE | 5-6 |
| DEFINITIONS | 4-5 |
| EFFECTIVE DATE | 3,8 |
| GENERAL PROVISIONS | 6-8 |
| IMPORTANT NOTICE | 1 |
| LIFETIME MAXIMUM BENEFIT | 3 |
| EXCLUSIONS | 6 |
| PRE-EXISTING CONDITIONS LIMITATION | 6 |
| RIGHT TO EXAMINE | 1 |
| SCHEDULE | 3 |

# CERTIFICATE SCHEDULE

| | |
|---|---|
| HOME HEALTH CARE DAILY BENEFIT | $ 180 / Day |
| LIFETIME MAXIMUM BENEFIT AMOUNT | $ 250,000 |
| PER OCCURRENCE MAXIMUM BENEFIT | $ 150,000 / Illness |
| AUTOMATIC BENEFIT INCREASE PERCENTAGE | Benefits increase by 8% each year. |

OPTIONAL BENEFITS

   NONE

<u>INSURED</u>

SYDELLE RUDERMAN

| | | |
|---|---|---|
| CERTIFICATE NUMBER: | | PL1090196A |
| EFFECTIVE DATE: | | 04-17-94 |
| INITIAL PREMIUM: | $ | 1,274.00 |

GHC-9311

PAGE 3

## PIONEER LIFE INSURANCE COMPANY OF ILLINOIS
304 North Main Street, P.O. Box 120, Rockford, Illinois 61105-0120

### AMENDMENT

The Policy or Certificate to which this Amendment is attached is amended as follows:

The Company cannot:

a)   Terminate a Group Member's Certificate as long as premiums are paid on time;
b)   Terminate the Group Policy;
c)   Make any change in any provision of the Group Policy;
d)   Place any restrictive riders on the coverage already in force; or
e)   Change the rating classification of any Group Member on account of physical impairment of such person occurring after the effective date of this amendment. The company may, however, change the table of premium rates applicable to all persons covered by the policy on a class basis.

This Amendment is effective on the Effective Date of the policy or certificate to which it is attached. It is subject to all of the provisions, limitations, and exclusions of the contract which are not inconsistent herewith. In all other respects, your coverage remains the same.

Signed at our Administrative Office on the Effective Date.

PIONEER LIFE INSURANCE COMPANY OF ILLINOIS

President

GHR-9077 (Rev. 9/88)

## PIONEER LIFE INSURANCE COMPANY OF ILLINOIS
304 North Main Street, P.O. Box 120, Rockford, Illinois 61105-0120

### Amendment

The following provision has been added to your certificate.

**REINSTATEMENT**: If any renewal is not paid within the time granted for payment, a subsequent acceptance of premium by us or by any agent duly authorized by us to accept such premium, without requiring an application for reinstatement shall reinstate the coverage; provided, however, that if we or any agent duly authorized by us requires an application for reinstatement and issues a conditional receipt for the premium, this coverage will be reinstated upon approval of such application by us; or lacking such approval, on the 45th day after the date of such conditional receipt unless we previously notify you, in writing, of our disapproval of the application.

The reinstated coverage shall cover only loss resulting from injury that is sustained after the date of reinstatement and sickness that begins more than 10 days after such date.

In all other respects both you and we shall have the same rights as we had under this certificate immediately before the due date of the defaulted premium. This is subject to any provisions endorsed on or attached to this certificate in connection with the reinstatement.

This amendment is subject to all of the conditions, limitations and exclusions of the group policy not inconsistent herewith..

Signed at our administrative office.

PIONEER LIFE INSURANCE COMPANY OF ILLINOIS

President

GHR-9439

**PIONEER LIFE INSURANCE COMPANY OF ILLINOIS**
304 North Main Street, Rockford, Illinois  61101

## HOME HEALTH CARE AMENDMENT

This amendment is made a part of the contract to which it is attached.  It changes the contract as follows:

Under **DEFINITIONS**, on Page 4, the definition of **HOME HEALTH CARE** is hereby deleted in it's entirety and replaced with:

**HOME HEALTH CARE** means Medically Necessary, Usual and Customary service provided by a licensed Home Health Care professional through a Home Health Care Provider, including but not limited to nursing care; physical therapy; occupational therapy; speech therapy;  hospice care; and incidental home health assistance providing personal care involving bathing, sitting, getting in or out of bed, dressing, hygiene, walking, taking medications or other assistance, which may be included in the Plan of Care.

**HOME HEALTH CARE** does not include (unless provided routinely by the Home Health Care Provider as part of a Plan of Care):  food or home delivered meals, social case work; purchase or rental of durable equipment; services of a homemaker, companion, or live in aide service; services by a person who ordinarily lives in your home or is related by blood or marriage; and services that are not medically necessary.

This rider is subject to all provisions, exclusions and limitations of the contract not inconsistent herewith.  It takes effect on the date coverage is effective for the Insured. In all other respects, your coverage remains the same.  Signed at our Home Office on the Effective Date.

PIONEER LIFE INSURANCE COMPANY OF ILLINOIS

*Thomas L Brophy*
President

R-3011

RIDER - AMENDMENT TO POLICY
PIONEER LIFE INSURANCE COMPANY OF ILLINOIS - Rockford, Illinois 61101

Attached to and made a part of Policy No. PL1090196A issued to Sydelle Ruderman. By the attachment of this Rider it is understood and agreed that the insurance under this policy is amended as follows:

All benefits, terms, provisions and limitations of this policy which were included in the former Policy No. PL0704998A will be effective as though this policy were issued and dated 04-17-90. All new benefits, and/or increased amounts of benefits begin with this new policy and are subject to its terms, provisions and limitations.

IN WITNESS WHEREOF, the Pioneer Life Insurance Company of Illinois has caused this Rider to be signed by its President on the date stamped below.

PIONEER LIFE INSURANCE COMPANY OF ILLINOIS

President

Effective Date: 04-17-94

Approved by: Robert S. Pingus

5422

AEL:s

## DEFINITIONS

For purposes of this certificate and wherever used in this certificate, the following definitions will apply:

**ADULT DAY CARE** means care provided in a structured, comprehensive program under qualified leadership in an ambulatory setting. The care must be provided during daylight hours for adults who would otherwise require 24 hour institutional care. The services must be provided by an agency licensed or certified to provide Adult Day Care by the state in which it operates. If the state in which it operates does not issue such license or certification, it must be recognized by us. Adult Day Care does not include programs designed solely for social purposes.

**GROUP ELIGIBILITY** means that in order to be eligible for this coverage, either the applicant or the applicant's spouse must have met the eligibility requirements of the group. This is in addition to any evidence of insurability that we may require on each person to be insured.

**HOME HEALTH CARE** means Medically Necessary, Usual and Customary service provided by a licensed Home Health Care professional through a Home Health Care Provider, including but not limited to nursing care; physical therapy; occupational therapy; speech therapy; home health aide; and hospice care.

**HOME HEALTH CARE** does not include: food or home-delivered meals, social case work; purchase or rental of durable equipment (unless provided routinely by the Home Health Care Provider); services for custodial care, such as bathing, sitting, cooking meals or personal transportation; services by a person who ordinarily lives in your home or is related by blood or marriage; and services that are not medically necessary.

**HOME HEALTH CARE PROVIDER** means a Home Health Care agency which:

1. is licensed in the state in which it operates; and
2. is qualified to provide Home Health Care services as recognized by Medicare.

**HOSPITAL** means a place which:

1. is legally operated for the care and treatment of sick and injured persons at their expense; and
2. is primarily engaged in providing medical, diagnostic and surgical facilities either on its premises or in facilities available to the hospital on a formal prearranged basis; and
3. provides 24 hour nursing service by or under the supervision of a graduate registered nurse (R.N.); and
4. has a staff of one or more physicians available at all times and is accredited by the Joint Commission on Accreditation of Hospitals.

Hospital as herein defined shall not include any institution which: is principally a rest home, Nursing Home, convalescent home, home for the aged; or is principally an institution for the care and treatment of alcoholics or drug addicts; or is a hospital operated by or for any branch of the U.S. Government, including the Veterans Administration.

**INJURY** means bodily injury caused by an accident which results in loss covered by the group policy. The injury and the loss must begin while the coverage is in force.

**INSURED PERSON** means the group member who has applied and been approved for coverage by the company. Any insured person named in the enrollment application but not approved by us for coverage shall not be insured.

**MEDICALLY NECESSARY** means a service, type of care, or procedure that is specified in a Plan of Care prepared by a physician and is appropriate and consistent with the physician's diagnosis and that could not be omitted without adversely affecting the insured's illness or condition.

It does not include services, care or supplies which are:
1. provided solely as a convenience; or
2. not appropriate to the diagnosis or symptoms.

BENEFITS (Continued)

**B. AUTOMATIC DAILY BENEFIT INCREASE**: On each policy anniversary, we will increase the Home Health Care Daily Benefit payable under this policy by the Automatic Benefit Increase Percentage shown on the schedule page.

**C. PRE-AUTHORIZATION**: Pre-authorization of care is required to qualify for some Home Health Care or Adult Day Care Benefits as stated in the **HOME HEALTH CARE** benefit section. To obtain pre-authorization you must provide the Plan of Care, as outlined in the **PLAN OF CARE** definition, to us or our designated previous to your Home Health Care or Adult Day Care. Home Health Care or Adult Day Care benefits shall be deemed pre-authorized only when the Company has made written authorization to you following receipt by us of the Plan of Care. Benefits for services provided at any time after initial authorization that differ from the specific Plan of Care and treatment previously authorized may require re-authorization by us. Verification of benefits and preliminary approval may be obtained from us or our authorized representative by telephone prior to commencement of services, but is binding on us only when you receive written confirmation from us or our authorized representative. Pre-authorization will not waive the Time Limit on Certain Defenses or the Pre-existing Conditions Limitation.

**D. PERIOD OF CARE**: Separate Home Health Care or Adult Day Care services received less than 6 months apart that are for the same or related injury or sickness are considered to be the same period of care.

**E. PER OCCURRENCE MAXIMUM BENEFIT**: No further benefits will be payable for a sickness or injury when the total sum of Home Health Care or Adult Day Care benefits paid for that occurrence equals the amount shown in the schedule for the Per Occurrence Maximum Benefit. Successive confinement due to the same or related cause not separated by at least 6 months of normal daily living will be considered as the same occurrence.

**F. LIFETIME MAXIMUM BENEFIT**: This coverage shall terminate and no further benefits will be payable when the total sum of Home Health Care or Adult Day Care benefits paid equals the amount shown in the schedule for the Lifetime Maximum Benefit Amount. Any premium paid for a period after termination will be refunded.

## EXCLUSIONS

Benefits are not provided for:

1. confinement or treatment, provided without cost to an Insured, in any facility contracted for or operated by the United States Government for the treatment of members or ex-members of the armed forces or any other person;
2. injury or sickness caused by war or any act of war, declared or undeclared;
3. rest cures, nervous or mental disorders (Alzheimer's disease and senile dementia are not considered nervous or mental disorders);
4. intentionally self-inflicted injury;
5. chronic alcoholism, or drug addiction unless addiction results from administration of drugs pursuant to treatment by a physician;
6. confinement or treatment covered by Worker's Compensation or Employer's Liability Law;
7. care or treatment by any member of your family or someone other than a licensed Home Health Care professional or licensed or certified Adult Day Care service;
8. services for which no charge is made or for which you have no legal obligation to pay.

## PRE-EXISTING CONDITIONS LIMITATION

No benefits are provided for any loss which begins within six months following the effective date of coverage of any Insured if such loss is due to a pre-existing condition.

GHC-9311-A

GENERAL PROVISIONS (Continued)

**PAYMENT OF CLAIMS**: All benefits will be payable to you unless assigned by you in accordance with the terms herein. If any such benefits remain unpaid at your death, or if you are, in the opinion of the company, incapable of giving a legally binding receipt for payment of any benefit, we may, at our option, pay benefits up to $1,000 to your estate or to any relative by blood or connection by marriage who is deemed by us to be equitably entitled thereto if benefits are payable. Any payment so made will fully discharge us to the extent of such payment.

**PHYSICAL EXAMINATION AND AUTOPSY**: We, at our expense, have the right to have you examined as often as reasonably necessary while a claim is pending. We may also have an autopsy made unless prohibited by law.

**LEGAL ACTION**: No legal action may be brought to recover on the group policy within 60 days after written proof of loss has been given as required by the group policy. No such action may be brought after 6 years from the time written proof of loss is required.

**EFFECTIVE DATE**: The insurance for which an insured is eligible hereunder will become effective on the date the Insured: (1) enrolls for coverage; (2) pays the amount of required initial premium; (3) furnishes evidence of insurability satisfactory to and accepted by us.

**TERMINATION OF COVERAGE**: Coverage for an insured will automatically terminate on the earliest of the following dates:

1.  the date the group policy terminates;
2.  the last day for which premiums are paid subject to the grace period; or
3.  the date you cease to be a member of the group to which the group policy was issued.

If coverage under the group policy with respect to an insured terminates for any reason such termination will be without prejudice to any uninterrupted loss which commences while coverage is in force with respect to such person. If an insured is receiving home health care services on the date of such termination, coverage for that person will continue for the benefit period or until the maximum benefit amount is reached, whichever is earlier.

If we accept a premium for insurance of an insured after the date on which the group policy provides that an insured shall cease to be covered, the coverage for the insured will continue in force until the end of the period for which such premium has been accepted.

**TIME LIMIT ON CERTAIN DEFENSES**: No statement made by an insured person relating to insurability will be used by us in contesting the validity of the insurance with respect to which that statement was made after the insurance has been in force prior to the contest for two years.

No claim for loss incurred more than six months after the effective date of coverage of an insured person whose loss is the basis of claim, shall be reduced or denied because of a pre-existing condition which had existed before the effective date of coverage of such person.

**FIRST AMENDED CLASS ACTION COMPLAINT**
**Ruderman v. Washington National, Case No. 08-23401-CIV-COHN/SELTZER**

# EXHIBIT B

# *PioneerLife*

## A STOCK COMPANY

(Referred to in this certificate as the company, we, our, or us)

*#1024210 A*          *due Sept 1*          *started 9/1/93*

## LIMITED BENEFIT HOME HEALTH CARE
## COVERAGE
## CERTIFICATE OF INSURANCE

This certificate is issued as evidence of insurance under the group policy issued to the group policyholder. This certificate describes the benefits and other important provisions of the group policy that pertain to your insurance. The group policy controls all of the terms of your insurance, and may be inspected at the office of the group policyholder during regular business hours. Please read this certificate carefully.

This insurance is effective at 12:01 A.M. on the Effective Date shown in the certificate schedule if: (1) you are eligible for coverage under the group policy; and (2) you have paid the required premium. You can continue to renew your coverage on each renewal date until it terminates in accordance with the termination provision.

### RIGHT TO EXAMINE

Carefully read this certificate as soon as you receive it. If you are not satisfied, you may return it to us within 30 days after you receive it. We will refund all premiums you have paid.

### IMPORTANT NOTICE ABOUT THE STATEMENTS IN THE APPLICATION

Please read the copy of the application which is attached to this certificate. Check to see if any medical history has been left out; otherwise your coverage may not be valid. Write to us within 10 days if any information shown isn't right and complete. Any wrong or left out statements could cause an otherwise valid claim to be denied.

*Robert S Pingum*

Secretary

*R Rnauer*

President

The benefits of the policy providing your coverage are governed primarily by the law of a state other than Florida.

*look in back of this policy*

GHC-9311-A

Page 1

# INDEX



|  | PAGE |
|---|---|
| BENEFITS | |
| HOME HEALTH CARE | |
| DEFINITIONS | 5-6 |
| EFFECTIVE DATE | 4-5 |
| GENERAL PROVISIONS | 3,8 |
| IMPORTANT NOTICE | 6-8 |
| LIFETIME MAXIMUM BENEFIT | 1 |
| EXCLUSIONS | 3 |
| PRE-EXISTING CONDITIONS LIMITATION | 6 |
| RIGHT TO EXAMINE | 6 |
| SCHEDULE | 1 |
|  | 3 |

GHC-9311-A

## CERTIFICATE SCHEDULE

HOME HEALTH CARE DAILY BENEFIT                  $    180 / Day

LIFETIME MAXIMUM BENEFIT AMOUNT                 $    250,000

PER OCCURRENCE MAXIMUM BENEFIT                  $    150,000 / Illness

AUTOMATIC BENEFIT INCREASE PERCENTAGE           Benefits increase by
                                                8% each year.

OPTIONAL BENEFITS

  NONE

INSURED

SYLVIA H POWERS                 CERTIFICATE NUMBER:     PL1024210A

                                EFFECTIVE DATE:         09-01-93

                                INITIAL PREMIUM:   $       1,289.00

                                _Premium_

                                       1274 - 1993
                                       1289 - 1994
                                    $ 1656.28 - 1995
                                    $ 2153.40 - 1996
                                    $ 2153.40 - 1997
                                      2153.40 - 1998
                                      2153.40   1999
                                      2691.80   2000

GHC-9311

# DEFINITIONS

For purposes of this certificate and wherever used in this certificate, the following definitions will apply:

**ADULT DAY CARE** means care provided in a structured, comprehensive program under qualified leadership in an ambulatory setting. The care must be provided during daylight hours for adults who would otherwise require 24 hour institutional care. The services must be provided by an agency. licensed or certified to provide Adult Day Care by the state in which it operates. If the state in which it operates does not issue such license or certification, it must be recognized by us. Adult Day Care does not include programs designed solely for social purposes.

**GROUP ELIGIBILITY** means that in order to be eligible for this coverage, either the applicant or the applicant's spouse must have met the eligibility requirements of the group. This is in addition to any evidence of insurability that we may require on each person to be insured.

**HOME HEALTH CARE** means Medically Necessary, Usual and Customary service provided by a licensed Home Health Care professional through a Home Health Care Provider, including but not limited to nursing care; physical therapy; occupational therapy; speech therapy; home health aide; and hospice care.

**HOME HEALTH CARE** does not include: food or home-delivered meals, social case work; purchase or rental of durable equipment (unless provided routinely by the Home Health Care Provider); services for custodial care, such as bathing, sitting, cooking meals or personal transportation; services by a person who ordinarily lives in your home or is related by blood or marriage; and services that are not medically necessary.

**HOME HEALTH CARE PROVIDER** means a Home Health Care agency which:

1. is licensed in the state in which it operates; and
2. is qualified to provide Home Health Care services as recognized by Medicare.

**HOSPITAL** means a place which:

1. is legally operated for the care and treatment of sick and injured persons at their expense; and
2. is primarily engaged in providing medical, diagnostic and surgical facilities either on its premises or in facilities available to the hospital on a formal prearranged basis; and
3. provides 24 hour nursing service by or under the supervision of a graduate registered nurse (R.N.); and
4. has a staff of one or more physicians available at all times and is accredited by the Joint Commission on Accreditation of Hospitals.

Hospital as herein defined shall not include any institution which: is principally a rest home, Nursing Home, convalescent home, home for the aged; or is principally an institution for the care and treatment of alcoholics or drug addicts; or is a hospital operated by or for any branch of the U.S. Government, including the Veterans Administration.

**INJURY** means bodily injury caused by an accident which results in loss covered by the group policy. The injury and the loss must begin while the coverage is in force.

**INSURED PERSON** means the group member who has applied and been approved for coverage by the company. Any insured person named in the enrollment application but not approved by us for coverage shall not be insured.

**MEDICALLY NECESSARY** means a service, type of care, or procedure that is specified in a Plan of Care prepared by a physician and is appropriate and consistent with the physician's diagnosis and that could not be omitted without adversely affecting the insured's illness or condition.

It does not include services, care or supplies which are:
1. provided solely as a convenience; or
2. not appropriate to the diagnosis or symptoms.

GHC-9311-A

## DEFINITIONS (Continued)

**MENTAL OR NERVOUS DISORDER** means a neurosis, psychoneurosis, psychopathy, psychosis or mental or emotional disease or disorder of any kind. Alzheimer's disease and senile dementia are not considered nervous or mental disorders.

**PHYSICIAN** means a practitioner of the healing arts, duly licensed by the state to treat the injury or sickness causing the loss. It does not include you or a member of your family. Also, the physician can not be the proprietor or employee of the provider of services.

**PLAN OF CARE**. Before authorization for payment of benefits under the group policy, a physician must establish the Plan of Care. The Plan of Care must include:

1. diagnosis, symptoms, complaints, and complications;
2. reason for admission or services, and reason for continued care;
3. physician's orders;
4. schedule of treatment with details of the exact involvement of the Home Health Care Provider;
5. physical limitations or impairments; and
6. objectives of the Plan of Care.

**PRE-EXISTING CONDITION** means a condition for which medical advice was given or treatment was recommended by or received from a physician within 6 months before the effective date of coverage.

**SICKNESS** means illness or disease which results in loss covered by the group policy. The loss must begin while the coverage is in force.

**USUAL AND CUSTOMARY** means the amount most usually charged for health care services and supplies in the community or area where they were provided.

**YOU, YOUR, YOURS** refers to the insured person named in the certificate schedule.

## BENEFITS

A. **HOME HEALTH CARE**: We will pay 100% of the usual and customary charges for Home Health Care expenses if the care was pre-authorized. If the care was not pre-authorized we will pay 75% of the usual and customary charges for Home Health Care expenses incurred, up to 75% of the Daily Benefit Amount shown in the schedule. These benefits will be paid up to the Home Health Care Daily Benefit shown in the schedule. All benefits will be limited to the Per Occurrence Maximum Benefit for each injury or sickness and the Lifetime Maximum Benefit Amount for ALL injuries and sicknesses which are shown in the certificate schedule.

Home health care benefits are payable if:

1. you receive Medically Necessary Home Health Care due to a sickness or injury, from a Home Health Care Provider;
2. the Home Health Care begins while your policy is in force; and
3. the Home Health Care is prescribed in a Plan of Care by a physician who certifies at least monthly that the insured requires the level or type of Home Health Care prescribed. We retain the right to determine the necessity of such care; and
4. the Per Occurrence Maximum Benefit and the Lifetime Maximum Benefit Amount have not been met.

If Home Health Care expenses are payable under this section of the policy, you may elect to receive the same benefits for services provided in an Adult Day Care Setting as defined in the policy. This benefit will be payable in lieu of the Home Health Care Benefits.

GHC-9311-A

**BENEFITS (Continued)**

B. **AUTOMATIC DAILY BENEFIT INCREASE**: On each policy anniversary, we will increase the Home Health Care Daily Benefit payable under this policy by the Automatic Benefit Increase Percentage shown on the schedule page.

C. **PRE-AUTHORIZATION**: Pre-authorization of care is required to qualify for some Home Health Care or Adult Day Care Benefits as stated in the **HOME HEALTH CARE** benefit section. To obtain pre-authorization you must provide the Plan of Care, as outlined in the **PLAN OF CARE** definition, to us or our designated previous to your Home Health Care or Adult Day Care. Home Health Care or Adult Day Care benefits shall be deemed pre-authorized only when the Company has made written authorization to you following receipt by us of the Plan of Care. Benefits for services provided at any time after initial authorization that differ from the specific Plan of Care and treatment previously authorized may require re-authorization by us. Verification of benefits and preliminary approval may be obtained from us or our authorized representative by telephone prior to commencement of services, but is binding on us only when you receive written confirmation from us or our authorized representative. Pre-authorization will not waive the Time Limit on Certain Defenses or the Pre-existing Conditions Limitation.

D. **PERIOD OF CARE**: Separate Home Health Care or Adult Day Care services received less than 6 months apart that are for the same or related injury or sickness are considered to be the same period of care.

E. **PER OCCURRENCE MAXIMUM BENEFIT**: No further benefits will be payable for a sickness or injury when the total sum of Home Health Care or Adult Day Care benefits paid for that occurrence equals the amount shown in the schedule for the Per Occurrence Maximum Benefit. Successive confinement due to the same or related cause not separated by at least 6 months of normal daily living will be considered as the same occurrence.

F. **LIFETIME MAXIMUM BENEFIT**: This coverage shall terminate and no further benefits will be payable when the total sum of Home Health Care or Adult Day Care benefits paid equals the amount shown in the schedule for the Lifetime Maximum Benefit Amount. Any premium paid for a period after termination will be refunded.

### EXCLUSIONS

Benefits are not provided for:
1. confinement or treatment, provided without cost to an Insured, in any facility contracted for or operated by the United States Government for the treatment of members or ex-members of the armed forces or any other person;
2. injury or sickness caused by war or any act of war, declared or undeclared;
3. rest cures, nervous or mental disorders (Alzheimer's disease and senile dementia are not considered nervous or mental disorders);
4. intentionally self-inflicted injury;
5. chronic alcoholism, or drug addiction unless addiction results from administration of drugs pursuant to treatment by a physician;
6. confinement or treatment covered by Worker's Compensation or Employer's Liability Law;
7. care or treatment by any member of your family or someone other than a licensed Home Health Care professional or licensed or certified Adult Day Care service;
8. services for which no charge is made or for which you have no legal obligation to pay.

### PRE-EXISTING CONDITIONS LIMITATION

No benefits are provided for any loss which begins within six months following the effective date of coverage of any Insured if such loss is due to a pre-existing condition.

GHC-9311-A

## GENERAL PROVISIONS

**ENTIRE CONTRACT; CHANGES**: The entire contract will consist of:
1. the group policy, the application of the group policyholder, which will be attached to the group policy; and
2. any enrollment applications of the proposed insured individuals, including your own.

All statements made by the group policyholder or by you will, in the absence of fraud, be deemed to be representations and not warranties. Only an executive officer of the company has the power on behalf of the company to execute or change the group policy. No other person will have the authority to bind us in any manner. Any change in the group policy will be made by amendment approved by the group policyholder and signed by the company. Such amendment will not require the consent of any insured person.

**FREE CHOICE OF PHYSICIAN**: An insured shall have free choice of physician.

**WORKER'S COMPENSATION NOT AFFECTED**: This coverage is not in lieu of and does not affect any requirement for coverage by Worker's Compensation Insurance.

**CONFORMITY WITH STATE STATUTES**: Any provision of the group policy which is in conflict with the statutes of the state in which the group policy is delivered is hereby amended to conform to the minimum requirements of such statutes.

**MISSTATEMENT OF AGE**: If the age of an insured has been misstated, all amounts payable under the group policy shall be adjusted by the ratio of the premium for the correct age to the premium for the age in the enrollment application of such insured.

**ASSIGNMENT**: Any assignment of an insured's interest under the policy must be in writing; it must be filed in our administrative office prior to payment of any benefit. We assume no responsibility for the validity of any assignment.

**PAYMENT OF PREMIUM**: Each premium for coverage is payable on or before the premium due date at our administrative office. Payment of a premium shall not maintain coverage in force beyond the period for which such premium is paid. Premiums or any increase in premiums for any insurance will be payable on the date such insurance becomes effective and on the same day of each month thereafter.

**PREMIUM CHANGES**: We will not increase the premiums solely on the basis of your claims or any change in your health; however, we reserve the right to change the premiums becoming due under the group policy at any time; provided we have given the group policyholder written notice of at least 31 days prior to the effective date of the new rates.

**GRACE PERIOD**: A grace period of 31 days will be granted for the payment of each premium due after the first premium; during such grace period, coverage with respect to an Insured shall continue in force.

**NOTICE OF CLAIM**: Written notice of claim must be given within 20 days after a covered loss starts or as soon as reasonably possible. Send this notice to us at our administrative office. Include your name and certificate number.

**CLAIM FORMS**: After we receive notice of claim, we will send you claim forms within 15 days. If we do not you will meet the proof of loss requirements by giving us a written statement of the nature and extent of the loss within the time stated in the proofs of loss provision.

**PROOFS OF LOSS**: For any covered loss, proof must be sent to us within 90 days. If it is not reasonably possible to give the proof within 90 days, your claim is not affected if the proof is sent as soon as possible. In any event, unless you are legally incapable of furnishing proof and have no one to furnish proof for you, proof of loss must be furnished within one year from the date it is otherwise due.

**TIME OF PAYMENT OF CLAIMS**: Benefits payable under the group policy will be paid immediately upon receipt of due written proof of loss.

GHC-9311-A

GENERAL PROVISIONS (Continued)

**PAYMENT OF CLAIMS:** All benefits will be payable to you unless assigned by you in accordance with the terms herein. If any such benefits remain unpaid at your death, or if you are, in the opinion of the company, incapable of giving a legally binding receipt for payment of any benefit, we may, at our option, pay benefits up to $1,000 to your estate or to any relative by blood or connection by marriage who is deemed by us to be equitably entitled thereto if benefits are payable. Any payment so made will fully discharge us to the extent of such payment.

**PHYSICAL EXAMINATION AND AUTOPSY:** We, at our expense, have the right to have you examined as often as reasonably necessary while a claim is pending. We may also have an autopsy made unless prohibited by law.

**LEGAL ACTION:** No legal action may be brought to recover on the group policy within 60 days after written proof of loss has been given as required by the group policy. No such action may be brought after 6 years from the time written proof of loss is required.

**EFFECTIVE DATE:** The insurance for which an insured is eligible hereunder will become effective on the date the Insured: (1) enrolls for coverage; (2) pays the amount of required initial premium; (3) furnishes evidence of insurability satisfactory to and accepted by us.

**TERMINATION OF COVERAGE:** Coverage for an insured will automatically terminate on the earliest of the following dates:

1. the date the group policy terminates;
2. the last day for which premiums are paid subject to the grace period; or
3. the date you cease to be a member of the group to which the group policy was issued.

If coverage under the group policy with respect to an insured terminates for any reason such termination will be without prejudice to any uninterrupted loss which commences while coverage is in force with respect to such person. If an insured is receiving home health care services on the date of such termination, coverage for that person will continue for the benefit period or until the maximum benefit amount is reached, whichever is earlier.

If we accept a premium for insurance of an insured after the date on which the group policy provides that an insured shall cease to be covered, the coverage for the insured will continue in force until the end of the period for which such premium has been accepted.

**TIME LIMIT ON CERTAIN DEFENSES:** No statement made by an insured person relating to insurability will be used by us in contesting the validity of the insurance with respect to which that statement was made after the insurance has been in force prior to the contest for two years.

No claim for loss incurred more than six months after the effective date of coverage of an insured person whose loss is the basis of claim, shall be reduced or denied because of a pre-existing condition which had existed before the effective date of coverage of such person.

GHC-9311-A

## PIONEER LIFE INSURANCE COMPANY OF ILLINOIS
304 North Main Street, P.O. Box 120, Rockford, Illinois 61105-0120

### Amendment

The following provision has been added to your certificate.

**REINSTATEMENT**: If any renewal is not paid within the time granted for payment, a subsequent acceptance of premium by us or by any agent duly authorized by us to accept such premium, without requiring an application for reinstatement shall reinstate the coverage; provided, however, that if we or any agent duly authorized by us requires an application for reinstatement and issues a conditional receipt for the premium, this coverage will be reinstated upon approval of such application by us; or lacking such approval, on the 45th day after the date of such conditional receipt unless we previously notify you, in writing, of our disapproval of the application.

The reinstated coverage shall cover only loss resulting from injury that is sustained after the date of reinstatement and sickness that begins more than 10 days after such date.

In all other respects both you and we shall have the same rights as we had under this certificate immediately before the due date of the defaulted premium. This is subject to any provisions endorsed on or attached to this certificate in connection with the reinstatement.

This amendment is subject to all of the conditions, limitations and exclusions of the group policy not inconsistent herewith.

Signed at our administrative office.

PIONEER LIFE INSURANCE COMPANY OF ILLINOIS

President

GHR-9439

**PIONEER LIFE INSURANCE COMPANY OF ILLINOIS**
304 North Main Street, P.O. Box 120, Rockford, Illinois 61105-0120

## AMENDMENT

The Policy or Certificate to which this Amendment is attached is amended as follows:

The Company cannot:

a)   Terminate a Group Member's Certificate as long as premiums are paid on time;
b)   Terminate the Group Policy;
c)   Make any change in any provision of the Group Policy;
d)   Place any restrictive riders on the coverage already in force; or
e)   Change the rating classification of any Group Member on account of physical impairment of such person occurring after the effective date of this amendment. The company may, however, change the table of premium rates applicable to all persons covered by the policy on a class basis.

This Amendment is effective on the Effective Date of the policy or certificate to which it is attached. It is subject to all of the provisions, limitations, and exclusions of the contract which are not inconsistent herewith. In all other respects, your coverage remains the same.

Signed at our Administrative Office on the Effective Date.

PIONEER LIFE INSURANCE COMPANY OF ILLINOIS

President

GHR-9077 (Rev. 9/88)

**FIRST AMENDED CLASS ACTION COMPLAINT**
**Ruderman v. Washington National, Case No. 08-23401-CIV-COHN/SELTZER**

# EXHIBIT C

**WITHDRAWN**                                    [DO NOT PUBLISH]

## IN THE UNITED STATES COURT OF APPEALS

### FOR THE ELEVENTH CIRCUIT

_____

No. 06-16164

_____

> FILED
> U.S. COURT OF APPEALS
> ELEVENTH CIRCUIT
> OCTOBER 4, 2007
> THOMAS K. KAHN
> CLERK

D. C. Docket No. 06-60227-CV-JIC

HILDA GRADINGER,

                                        Plaintiff,

EDWARD B. GRADINGER,
CARYLE R. LEVINE,

                                        Plaintiffs-Appellants,

versus

WASHINGTON NATIONAL INSURANCE COMPANY,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(October 4, 2007)**

Before ANDERSON and PRYOR, Circuit Judges, and VINING,* District Judge.

_____

*Honorable Robert L. Vining, Jr., United States District Judge for the Northern District of
Georgia, sitting by designation.

PER CURIAM:

Edward B. Gradinger and Caryle R. Levine, as personal representatives of the Estate of Hilda Gradinger, appeal the district court's grant of Washington National Insurance Company's motion for final summary judgment and the denial of Mrs. Gradinger's[1] motion for partial summary judgment. The parties do not dispute the facts or the applicable law in this case. They simply disagree on how the law applies to the facts. Because we find that there is more than one reasonable interpretation of the home health care insurance policy at issue, we must liberally construe it in favor of the insured. Thus, we reverse the district court's order.

## I. BACKGROUND

In November 1990, Mrs. Gradinger applied for home health care insurance with Pioneer Life Insurance Company. Pioneer issued a policy to Mrs. Gradinger, effective December 26, 1990, which included multiple pages: (a) introductory pages; (b) a one-page Certificate Schedule; (c) five printed pages detailing information such as policy definitions, benefits, exclusions, and pre-existing conditions limitations; (d) an endorsement page; (e) amendments to the policy; and (f) a copy of Mrs. Grandinger's application for insurance. The introductory pages

---

[1] Mrs. Grandinger died on July 14, 2006. Her personal representatives filed a motion to substitute, which the district court granted on November 31, 2006. Following the custom of the district court and the parties, we refer to Mrs. Gradinger as the plaintiff in this action for the purposes of this opinion.

2

and five pages following the Certificate Schedule comprised a pre-printed,

standard certificate of insurance.  The Certificate Schedule, which details the

amounts of coverage, was the only portion of the policy specially prepared for Mrs.

Gradinger.

The schedule appears as follows:

CERTIFICATE SCHEDULE

| | |
|---|---|
| HOME HEALTH CARE BENEFIT | $180/DAY |
| LIFETIME MAXIMUM BENEFIT AMOUNT | $250,000 |
| PER OCCURRENCE MAXIMUM BENEFIT | $150,000/ILLNESS |
| AUTOMATIC BENEFIT INCREASE PERCENTAGE | Benefits increase by 8% each year |

| | | |
|---|---|---|
| INSURED:  Hilda Gradinger | CERTIFICATE NO: | PL0855783A |
| | EFFECTIVE DATE: | 12-26-90 |
| | INITIAL PREMIUM: | $1,108.00 |

Additionally, the pre-printed pages contain the following relevant

provisions:

HOME HEALTH CARE: We will pay 100% of the usual and
customary charges for Home Health Care expenses if the care was
pre-authorized.  If the care was not pre-authorized we will pay 75% of
the usual and customary charges for Home Health Care expenses

3

incurred, up to 75% of the Daily Benefit Amount shown in the
schedule.  These benefits will be paid up to the Home Health Care
Daily Benefit shown in the schedule.  All benefits will be limited to
the Per Occurrence Maximum Benefit for each injury or sickness and
the Lifetime Maximum Benefit Amount for ALL injuries and
sicknesses which are shown in the certificate schedule.

. . . .

AUTOMATIC DAILY BENEFIT INCREASE: On each policy
anniversary, we will increase the Home Health Care Daily Benefit
payable under this policy by the Automatic Benefit Increase
Percentage shown on the schedule page.

. . . .

LIFETIME MAXIMUM BENEFIT: This coverage shall terminate
and no further benefits will be payable when the total sum of Home
Health Care or Adult Day Care benefits paid equals the amount shown
in the schedule for the Lifetime Maximum Benefit Amount.  Any
premium paid for a period after termination will be refunded.

After the policy was issued, Pioneer merged with Washington National

Insurance Company.  As a result of the merger, Washington National assumed all

obligations under the policy.

In April 1998, Mrs. Gradinger submitted a claim for benefits under the

policy because she was receiving medically necessitated home health care.  The

insurer paid home health care benefits on behalf of Mrs. Gradinger for

approximately five years.  In April 2003, the insurer ceased paying benefits under

the policy and terminated coverage because it claimed that Mrs. Gradinger had

reached the Lifetime Maximum Benefit amount of $250,000.[2]  Mrs. Gradinger objected to the termination of her coverage, arguing that the liability limit under the policy had not been met because the Lifetime Maximum Benefit amount had increased by 8% each year.  Subsequently, Mrs. Gradinger received and paid three premium bills totaling $2,649.75.

In January 2006, Mrs. Gradinger filed her lawsuit against Washington National in state court, alleging breach of contract (Count I) and waiver and estoppel (Count II).  Washington National removed the case to federal district court pursuant to 28 U.S.C. § 1332.

In April 2006, Washington National remitted a check to Mrs. Gradinger for $669.98.  An accompanying letter explained that the check was a refund of unearned premiums collected plus interest at the rate of 7%, minus an overpayment of claims in the amount of $1,995.50.  Mrs. Gradinger accepted the reimbursement.

In September 2006, Mrs. Gradinger moved for partial summary judgment only on the liability aspect of the breach of contract claim.[3]  Washington National moved for final summary judgment on both the breach of contract claim and the

---

[2] The Per Ocurrence Maximum Benefit amount is not at issue in this case because it is undisputed that Mrs. Gradinger began suffering from a separate and distinct illness requiring home health care covered by the policy after she submitted her initial claim under the policy.

[3] Mrs. Gradinger did not seek summary judgment as to damages payable if the Court ruled in her favor.

waiver and estoppel claim.  The district court entered an order granting final

summary judgment to Washington National and denying partial summary

judgment to Mrs. Gradinger on October 30, 2006.  Mrs. Gradinger appeals the

district court's dismissal of her breach of contract claim only.  She does not appeal

the dismissal of her waiver and estoppel claim.

## II. STANDARD OF REVIEW

We review the grant or denial of summary judgment *de novo*.  *Holloman v.*

*Mail-Well Corp.*, 443 F.3d 832, 836 (11th Cir. 2006).  "Summary judgment is

appropriate when no genuine issue of material fact exists and the moving party is

entitled to judgment as a matter of law."  *Elan Pharm. Research Corp. v.*

*Employers Ins. of Wasau*, 144 F.3d 1372, 1374-75 (11th Cir. 1998) (citing Fed. R.

Civ. P. 56(c)).

## III. DISCUSSION

This matter is ripe for summary judgment because it involves a pure

question of law.  The parties do not dispute the relevant facts.  They only dispute

the proper interpretation of the Maximum Lifetime Benefit amount payable under

the home health care insurance policy.  Washington National argues that the policy

caps the allowable Lifetime Benefit at $250,000.  Mrs. Gradinger, on the other

hand, asserts that the Maximum Lifetime Benefit should have increased 8% per

year from the original $250,000.  The district court held that the policy was

unambiguous and the plain meaning supported Washington National's

interpretation of the of the policy.  We disagree.

In this case, Florida law governs the interpretation of the home health care

insurance policy.  "Thus, we look at the policy as a whole and give every provision

its full meaning and operative effect."  *Hyman v. Nationwide Mut. Fire Ins. Co.*,

304 F.3d 1179, 1186 (11th Cir. 2002) (applying Florida law).  As we explained in

*Hyman*:

> We start with the plain language of the policy, as bargained for by the
> parties.  If that language is unambiguous, it governs.  Under Florida
> law, however, if the "relevant policy language is susceptible to more
> than one reasonable interpretation, one providing coverage and the
> []other limiting coverage, the insurance policy is considered
> ambiguous," and must be "interpreted liberally in favor of the insured
> and strictly against the drafter who prepared the policy."

*Id.* (citations omitted) (alteration in original).  Florida law requires that the terms of

the policy "be given their everyday meaning" and be viewed "in light of the skill

and experience of ordinary people."  *Lindheimer v. St. Paul Fire and Marine Ins.*

*Co.*, 643 So. 2d 636, 638 (Fla. Dist. Ct. App. 1994).

The only question before us is whether Mrs. Gradinger's interpretation of

the policy is a reasonable one.  If a person of ordinary skill and experience

reasonably could conclude that the Automatic Benefit Increase applies not only to

7

the daily Home Health Care Benefit but to the Lifetime Maximum Benefit as well, then the policy is ambiguous and we must construe its terms liberally in favor of Mrs. Gradinger and strictly against the insurer.

The Benefits section of the policy expressly states that the insurer "will increase the Home Health Care Daily Benefit payable under this policy by the Automatic Benefit Increase Percentage shown on the schedule page." While this provision makes it clear that the Automatic Benefit Increase applies to the daily benefit, nowhere in the policy does it state that the Automatic Benefit Increase does *not* apply to either of the maximum benefits. Instead, each time the policy discusses either maximum benefit, the policy directs the reader to the Certificate Schedule.

Turning to that section of the policy, we see that the Certificate Schedule lists three benefits: the Home Health Care Benefit, the Lifetime Maximum Benefit, and the Per Occurrence Maximum Benefit. After this grouping of three benefits, the schedule sets out the Automatic Benefit Increase Percentage with some spacing between the three benefits and the percentage. The schedule states: "Benefits increase by 8% each year." Considering the grouping of the benefits and the alternate uses of the singular and plural forms of the word benefit, nothing in the schedule indicates that the Automatic Benefit Increase only applies to the first of

8

three benefits listed.

The Automatic Benefit Increase appeals to a prospective insured who seeks protection against the rising costs of health care.  Promising that benefits increase by 8% each year is a policy selling point; however, if the daily benefit increases over time, but the Lifetime Maximum Benefit remains fixed at its initial level, the period of protection will shrink.  Thus, an insured who survives until she has incurred $250,000 in covered costs, will reach the Per Occurrence and Lifetime Maximum Benefit limits sooner.  An ordinary person could reasonably assume that the Automatic Benefit Increase does not function to reduce the duration of coverage.   In other words, it would be reasonable for an ordinary person to conclude that all benefits increase by 8% each year.

Washington National asserts that Mrs. Gradinger places too much emphasis on the schedule and unreasonably reads this portion of the policy in isolation.  The pre-printed, standardized provisions of the policy, however, repeatedly emphasize the centrality of the schedule to the meaning of the policy.  Because the schedule was the only portion of the policy specially prepared for Mrs. Gradinger, it is not unreasonable to focus on it, especially considering that none of the policy's other provisions contradict Mrs. Gradinger's interpretation of the schedule.

Reading the Benefits section in conjunction with the Certificate Schedule,

9

there is an ambiguity as to whether the Automatic Benefit Increase applies to the Lifetime Maximum Benefit.  While the insurer may have intended that the Automatic Benefit Increase apply exclusively to the daily Home Health Care Benefit, it is not plain that the policy should be construed so narrowly.  Because the policy is ambiguous, we resolve the issue in favor of Mrs. Gradinger and against the insurer, the drafter of policy.  *See Hyman*, 304 F.3d at 1186.

## IV. CONCLUSION

Accordingly, we reverse the district court's grant of summary judgment in favor of Washington National and remand the case with instructions to grant Mrs. Gradinger's motion for partial summary judgment.

**REVERSED and REMANDED.**