UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 08-23401-CIV-COHN/SELTZER

SYDELLE RUDERMAN,
by and through her Attorney-in-fact, Bonnie Schwartz,
and SYLVIA POWERS,
by and through her Attorney-in-fact, Les Powers,
individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

WASHINGTON NATIONAL INSURANCE COMPANY,
Successor-in-Interest to Pioneer Life Insurance Company,

Defendant.

_____/

## ORDER GRANTING MOTION TO INTERVENE AND GRANTING MOTION FOR CLASS CERTIFICATION

**THIS CAUSE** is before the Court on Motion of Kate Kolber, through her Attorney-in-Fact, Fred Kolber, Robert Schwarz and Bluma Schwarz to Intervene as Additional Plaintiffs and Class Representatives [DE 78] ("Motion to Intervene") and Plaintiffs' Motion for Class Certification [DE 58]. The Court has carefully reviewed the Motion to Intervene, the Motion for Class Certification, all of the parties' submissions, and is otherwise fully advised in the premises.

### I. BACKGROUND

This case is a putative class action on behalf of all citizens of Florida who purchased a Limited Benefit Home Health Care Coverage Policy ("Policy") from Pioneer Life Insurance Company ("Pioneer Life") in the state of Florida where either: (a) Washington National Insurance Company ("WNIC") has rejected all or a portion of a

claim on the Policy due to the Lifetime Maximum Benefit amount, the Per Occurrence

Benefit amount, or both, having been reached; or (b) the Policy was in effect at the time

of the filing of this action.

The Policies issued to plaintiffs, under the heading "Benefits," provide as follows:

HOME HEALTH CARE: We will pay 100% of the usual and customary
charges for Home Health Care expenses if the care was pre-authorized.
If the care was not pre-authorized we will pay 75% of the usual and
customary charges for Home Health Care expenses incurred, up to 75%
of the Daily Benefit Amount shown in the schedule.  These benefits will be
paid up to the Home Health Care Daily Benefit shown in the schedule.  All
benefits will be limited to the Per Occurrence Maximum Benefit Amount
for ALL injuries and sicknesses which are shown in the certificate
schedule.

FAC para. 11.[1]  Each of the three benefits in the Certificate Schedule (i.e., the Home

Health Care Daily Benefit, the Lifetime Maximum Benefit Amount, and the Per

---

[1]     The subsequent paragraphs then state the following:

**B. AUTOMATIC DAILY BENEFIT INCREASE**: On each policy
anniversary, we will increase the Home Health Care Daily Benefit payable
under this policy by the Automatic Benefit Increase Percentage shown on
the schedule page.

. . .

**E. PER OCCURRENCE MAXIMUM BENEFIT**: No further benefits will be
payable for a sickness or injury when the total sum of Home Health Care
or Adult Day Care benefits paid for that occurrence equals the amount
shown in the schedule for the Per Occurrence Maximum Benefit.
Successive confinement due to the same or related cause not separated
by at least 6 months of normal daily living will be considered as the same
occurrence.

**F. LIFETIME MAXIMUM BENEFIT**: This coverage shall terminate and no
further benefits will be payable when the total sum of Home Health Care
or Adult Day Care benefits paid equals the amount shown in the schedule
for the Lifetime Maximum Benefit Amount. Any premium paid for a period
after termination will be refunded.

Occurrence Maximum Benefit) are subject to a maximum dollar amount (i.e., per day, per lifetime, per occurrence).[2]  The Certificate Schedule also contains an "Automatic Benefit Increase Percentage and states that "Benefits increase by 8% each year."  Id. The Policy does not state that the 8% Automatic Benefit Increase applies only to the Daily Benefit Amount.  Defendant, however, has applied the 8% increase only to the Daily Benefit.

Plaintiff Ruderman filed her initial class action complaint ("Complaint") on December 9, 2008.  The Complaint contained only a damages claim for breach of contract.  WNIC filed a motion to dismiss on February 9, 2009.  The Court denied the Motion to Dismiss and on April 28, 2009, plaintiffs filed an amended complaint ("FAC") which alleged that the action was brought pursuant to Rule 23(b)(2) and (3).  The FAC, however, contained only two causes of action: a damages claim for breach of contract and a claim for injunctive relief.  WNIC filed its answer to the FAC on May 12, 2009.

Thereafter, Plaintiffs filed a motion for class certification on July 15, 2009. Plaintiffs seek to represent two groups: 1) a Rule 23(b)(2) class defined as "[a]ll of Defendant's Florida Insureds who currently have a Policy in effect[;]" and 2) a Rule

---

[2]      The Certificate Schedule states as follows:

CERTIFICATE SCHEDULE

| | |
|---|---|
| HOME HEALTH CARE DAILY BENEFIT | $ 180 / Day |
| LIFETIME MAXIMUM BENEFIT AMOUNT | $ 250,000 |
| PER OCCURRENCE MAXIMUM BENEFIT | $ 150,000 / Illness |
| AUTOMATIC BENEFIT INCREASE PERCENTAGE | Benefits increase by 8% each year |

23(b)(3) class defined as "[a]ll of Defendant's Florida Insureds who were denied Policy benefits during the Class Period because they reached their Lifetime Maximum and/or Per Occurrence Maximum benefit under the Policy."[3]  Plaintiffs seek to be appointed as class representatives and to have their counsel appointed as class counsel.

Movants Kate Kolber, through her attorney-in-fact, Fred Kolber, Robert Schwarz and Bluma Schwarz (collectively, "Proposed Intervenors") assert that neither of the plaintiffs in this action is a member of the proposed Rule 23(b)(2) Class.  According to the Proposed Intervenors, "Plaintiff Sydelle Ruderman exhausted her coverage under the Per Occurrence Benefit on January 28, 2007 and plaintiff Sylvia Powers exhausted her coverage under the Lifetime Maximum Benefit on September 14, 2007."  Motion to Intervene at 4.  Furthermore, Proposed Intervenors note that the FAC does not allege that Ms. Ruderman's Policy remains in effect.  "Thus," Proposed Intervenors contend, "neither of plaintiff's Policies is 'in effect.'"  Id.

Conversely, proposed intervenor Kate Kolber is a member of the proposed Rule 23(b)(2) Class.  Ms. Kolber purchased a Limited Benefit Home Health Care Coverage Policy from Pioneer Life on October 19, 1992.  Moreover, on July 22, 2009, WNIC rejected a claim submitted by Ms. Kolber because she had reached the Policy's Per Occurrence Maximum Benefit.  She contends that "[h]er Policy is currently in effect, as she has not reached the Lifetime Maximum Benefit amount."  Motion to Intervene at 5.

---

[3]       "Florida Insureds" is defined in the Motion for Class Certification as individuals named as insureds in Defendant's Policy or the attorneys in fact for such individuals, where the insured individuals currently reside in Florida and their Policy was issued to them in Florida.  The "Class Period" runs from December 1, 2003 to the present.

Accordingly, Proposed Intervenors contend that Ms. Kolber is a member of the Rule 23(b)(2) Class.

Likewise, proposed intervenors Robert Schwarz and Bluma Schwarz contend that they are members of the proposed Rule 23(b)(2) Class.  On March 12, 1993, Robert Schwarz and Bluma Schwarz each purchased a Limited Benefit Home Health Care Coverage Policy from Pioneer Life.  Neither of them, they contend, have exhausted the benefits under their policies.

Proposed Intervenors therefore maintain that the Court should permit them to intervene in the instant action to represent the Rule 23(b)(2) Class as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2).  Alternatively, Proposed Intervenors seek permissive intervention pursuant to Rule 24(b).  Plaintiffs argue that the Court should not allow Proposed Intervenors to intervene because Plaintiffs adequately represent their interests.

Defendants contend that Plaintiffs do not adequately represent the class. Defendants further contend that this case should not be certified as a class action because Plaintiffs cannot satisfy the typicality, commonality, numerosity, or predominance requirements of Federal Rule of Civil Procedure 23.  Thus, Defendants maintain that the instant action is inappropriate for class resolution and that the Court should deny the Plaintiffs' Motion for Class Certification.

5

## II. DISCUSSION

### A. Legal Standards

### 1. Intervention as a Matter of Right Standard

A party seeking to intervene as a matter of right pursuant to Rule 24(a)(2) must show each of the following: "(1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit." Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir. 1989).

### 2. Permissive Intervention Standard

A party seeking to intervene in a class action pursuant to Rule 24(b) must show both of the following: "(1) his application to intervene is timely; and (2) his claim or defense and the main action have a question of law or fact in common." Id.

### 3. Class Certification

Plaintiffs seek class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. Rule 23 provides in pertinent part:

(a) **Prerequisites**. One or more members of a class may sue or be sued as representative parties on behalf of all only if:
(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

(b) **Types of Class Actions**. A class action may be maintained if Rule 23(a) is

6

satisfied and if:

. . .

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23.  An action may be maintained as a class action only if all four prerequisites of Rule 23(a) are satisfied and, in addition, the requirements of one of the three subsections of Rule 23(b) are also met.  Heaven v. Trust Co. Bank, 118 F.3d 735, 737 (11th Cir. 1997); see also Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997).

In deciding whether to certify a class, a district court has broad discretion. Washington v. Brown & Williamson Tobacco Corp., 959 F.2d 1566, 1569 (11th Cir. 1992).  Although a district court is not to determine the merits of a case at the certification stage, sometimes "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."  Id. at 1570 n.11.  A class action may be certified only if the court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 have been met.  Gilchrist v. Bolger, 733 F.2d 1551, 1555 (11th Cir. 1984).  The burden of establishing these requirements is on the plaintiff who seeks to certify the suit as a class action.  Heaven, 118 F.3d at 737 (citing Gilchrist, 733 F.2d at 1556; Zeidman v. J. Ray McDermott & Co., Inc., 651 F.2d 1030, 1038 (5th Cir. 1981)).

7

## B. Intervention as a Matter of Right

As noted above, there are two named plaintiffs: Sydelle Ruderman and Sylvia Powers (collectively "Plaintiffs").  The Plaintiffs do not address the first three factors that pertain to a proposed intervenor's ability to intervene as a matter of right.  Rather, Plaintiffs focus exclusively on the fourth factor: whether the Proposed Intervenors are "represented inadequately by the existing parties to the suit."  Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir. 1989).  Stated differently, Plaintiffs contend that because they adequately represent the Proposed Intervenors' interests, the Proposed Intervenors may not intervene as a matter of right.  Proposed Intervenors, on the other hand, argue that neither plaintiff adequately represents their interests because neither plaintiff is a member of the Rule 23(b)(2) Class.  Specifically, Proposed Intervenors contend that neither plaintiff has a policy "in effect."  Thus, before the Court addresses the other three factors that bear upon a proposed intervenor's ability to intervene as a matter of right, the Court will address the issue of adequate representation.

### 1. The Plaintiffs May Not Adequately Represent Proposed Intervenors' Interests

"[A] proposed intervenor's interest is [presumed to be] adequately represented when an existing party pursues the same ultimate objective as the party seeking intervention."  United States v. Georgia, 19 F.3d 1388, 1394 (11th Cir. 1994).  The presumption of adequate representation, however, "is weak" and "merely requires the presumed result *unless* some evidence is placed before the court tending to rebut it."  Clark v. Putnam County, 168 F.3d 458, 461 (11th Cir. 1999).  Indeed, "[t]he Supreme Court has held that the inadequate representation requirement 'is satisfied if the

[proposed intervenor] shows that representation of his interest 'may be' inadequate' and that 'the burden of making that showing should be treated as minimal.'" <u>Chiles v. Thornburgh</u>, 865 F.2d 1197, 1214 (11th Cir. 1989) (quoting <u>Trbovich v. United Mine Workers</u>, 404 U.S. 528, 538 n.10 (1972)).

### a. Plaintiff Powers

Proposed Intervenors assert that Sylvia Powers inadequately represents the Proposed Intervenors' interests. Specifically, Proposed Intervenors argue that Sylvia Powers does not have a policy "in effect." Plaintiffs do not argue otherwise in their opposition to the Motion to Intervene. Accordingly, the Court finds Sylvia Powers is not a member of the Rule 23(b)(2) Class.

Because Sylvia Powers is not a member of the Rule 23(b)(2) Class, Plaintiff Powers does not have standing to represent the proposed class. Proposed Intervenors, therefore, have overcome the presumption that Plaintiff Powers adequately represents their interests. Thus, if Proposed Intervenors can demonstrate that Plaintiff Ruderman may not adequately represent their interests, Proposed Intervenors will overcome the presumption of adequate representation.[4]

### b. Plaintiff Ruderman

Although Plaintiffs' First Amended Complaint does not allege that Plaintiff

---

[4]    Defendant, in its opposition to the Motion to Intervene, asserts that Proposed Intervenors' counsel is also inadequate. Specifically, Defendant alleges that Proposed Intervenors' counsel is inadequate because he committed ethical violations to identify potential class representatives. Assuming *arguendo* that Proposed Intervenors' counsel committed the alleged ethical violations, Defendant cites no authority that indicates the alleged conduct renders Proposed Intervenors' counsel's representation inadequate in this case. The Court, therefore, summarily rejects Defendant's argument regarding the adequacy of Proposed Intervenors' representation.

Ruderman has a policy "in effect" as contemplated by the Rule 23(b)(2) Class definition, Plaintiffs contend in their opposition that Plaintiff Ruderman indeed has a policy "in effect."  Specifically, Plaintiffs maintain that "Plaintiff Ruderman has maintained her Limited Benefit Home Health Care Coverage Policy in effect and continues to pay premiums on it because she has yet to reach her Lifetime Maximum on the Policy."  DE 95 at 2.

Moreover, Plaintiffs contend that the Proposed Intervenors' complaint "has the same objective and contains the same counts and seeks the exact same relief Plaintiffs seek for the same injury."  Id.  Therefore, according to Plaintiffs, Plaintiff Ruderman adequately represents Proposed Intervenors' interests.  Furthermore, Plaintiffs argue, Proposed Intervenors have not made the necessary showing to overcome the presumption of adequacy that attaches to Plaintiff Ruderman's representation.

Proposed Intervenors, in their reply, point out that "Defendant has made several arguments concerning the inadequacy of Sydelle Ruderman."  DE 101 at 2.  For example, "Defendant argues that the attorneys-in-fact for Plaintiffs believe that they are the actual Plaintiffs, but 'as non-privies to the Policies, the insureds' children lack Article III standing to sue.'"  Id. at 6; see also DE 65 at 43 (citing Kleopa v. Prudential Inv. Mgmt., Inc., 2009 WL 2242606 n.5 (S.D. Fla. July 27, 2009) ("[T]he Court finds that Plaintiff, who proceeds as 'attorney in fact,' lacks Article III standing to bring this case")).  Thus, Defendant asserts that "the attorneys-in-fact have no claims, cannot be plaintiffs and cannot be class representatives."  DE 102 at 6 (quoting DE 65 at 43-44).  Proposed Intervenors therefore posit that "[t]o the extent this argument is valid, it does not apply to Proposed Intervenors Robert Schwarz or Bluma Schwarz, as they are the

10

Policyholders." Id.

Defendant further contends that Plaintiffs' proposed class counsel is inadequate due to purported conflicts raised by class counsel's representation of individual plaintiffs in separate actions against Defendant.  Thus, to the extent this argument is valid, Plaintiffs might be inadequate class representatives because in choosing inadequate class counsel, they have failed to fulfill their duties as class representatives.  Krim v. pcOrder.com, Inc., 210 F.R.D. 581, 589 (W.D. Tex. 2002) (denying class certification because class representatives failed to demonstrate the adequacy of their counsel); see also Tedesco v. Mishkin, 689 F.Supp. 1327, 1339 (S.D.N.Y. 1988) (stating because "the unnamed members of the class are not present to protect their rights, the district court must accordingly take special care to guarantee the propriety and adequacy of the class' legal representation").  "Class counsel must act with unwavering and complete loyalty to the class members they represent, and the 'responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel.'" Krim, 210 F.R.D. at 589 (quoting Kayes v. Pacific Lumber Co., 51 F.3d 1449, 1465 (9th Cir. 1995)); see also Nat'l Air Traffic Controllers Ass'n v. Dental Plans, Inc., No. 1:05-CV-882TW, 2006 WL 584760, at *4 (N.D. Ga. Mar. 10, 2006) ("The appearance of divided loyalties includes both differing and potentially conflicting interests, not merely instances actually manifesting such conflict.").

The Court need not resolve these issues at this stage of the proceedings, for the mere existence of colorable adequacy issues satisfies Proposed Intervenors' minimal burden to show that representation of their interests "may be" inadequate.  See Chiles,

865 F.2d at 1214 ("[T]he inadequate representation requirement is satisfied if . . . representation of [Proposed Intervenors'] interest '*may be*' inadequate and that the burden of making that showing should be treated as minimal." (emphasis added)). Here, the Court finds that Proposed Intervenors have made a minimal showing that representation of their interests may be inadequate. Consequently, the Court must address the other three factors that determine whether Proposed Intervenors may intervene in this case as a matter of right.

### 2. Timeliness

As noted above, a party seeking to intervene as of right must show that "his application to intervene is timely." Id. at 1213. The four factors relevant to the timeliness inquiry are as follows: "(1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely." Armor Screen Corp. v. Storm Catcher, Inc., 2008 WL 5746938, at *6 (S.D. Fla. Nov. 10, 2008).

Here, Proposed Intervenors filed their Motion to Intervene eight months after the Plaintiffs filed their initial complaint. Plaintiffs, however, did not assert a claim for injunctive relief in their initial complaint. Rather, Plaintiffs first asserted their claim for injunctive relief in their amended complaint. Proposed Intervenors seek to join only in the claim for injunctive relief (i.e., the Rule 23(b)(2) Class). Thus, Proposed Intervenors

12

filed their Motion to Intervene less than four months after Plaintiffs filed the relevant claim.  Compare Complaint, DE 1, with First Amended Complaint, DE 30, and Motion to Intervene, DE 78.  Accordingly, the Court finds that Proposed Intervenors filed their Motion to Intervene reasonably quickly after they knew or reasonably should have known of their interest in the case.

As to prejudice, only three individuals seek to intervene.  The factual allegations that underlie Proposed Intervenors' claims are, presumably, substantially the same as those of the Plaintiffs.  Thus, the prejudice to Plaintiffs and Defendant that would result from an enlargement of the discovery deadline and short continuance of trial, if any, would be minimal.  Conversely, the prejudice to Proposed Intervenors, should the Court determine Plaintiffs have no standing to maintain their claim, would be severe.  Lastly, there appear to be no unusual circumstances militating either for or against a determination that the application is timely.  Taken together, the four factors indicate that Proposed Intervenors filed their Motion to Intervene in a timely manner.

### 3. Interest in the Action

Rule 24(a)(2) requires that the proposed intervenor have a "direct, substantial, legally protectable interest in the proceeding."  Chiles, 865 F.2d at 1213.  Here, Proposed Intervenors purchased Policies from Pioneer Life that are identical to the Policies of Plaintiffs and Class Members.  Proposed Intervenors, moreover, have not yet exhausted all of the benefits to which they are entitled under the Policies.  Accordingly, they have an interest relating to the property or transaction which is the subject of this action.

<u>4. Disposition of this Action May Impair Interests</u>

The nature of a party's interest in an action and the effect that the disposition of the lawsuit will have on the party's ability to protect its interest are closely related issues. <u>See</u> <u>Chiles</u>, 865 F.2d at 1214.  The Court finds the Proposed Intervenors are so situated that the disposition of the lawsuit will, as a practical matter, impair their ability to protect their interests.  <u>Id.</u>  The Proposed Intervenors' property interest in the Policies is the very subject of the main action and "the *stare decisis* effect of a decision suggests the practical disadvantage requisite for intervention."  <u>Id.</u>  "Where a party seeking to intervene in an action claims an interest in the very property and very transaction that is the subject of the main action, the potential *stare decisis* effect may supply that practical disadvantage which warrants intervention as of right."  <u>Id.</u> (citing <u>Atlantis Dev. Corp. v. United States</u>, 379 F.2d 818, 829 (5th Cir. 1967)).  Here, the Proposed Intervenors' ability to litigate the amount of benefits afforded by the Policies might be an exercise in futility if the Court were to decide the instant lawsuit in favor of Defendant.  <u>See</u> <u>id.</u>

Consequently, the Court finds that Proposed Intervenors' application to intervene is timely, they have an interest relating to the property or transaction which is the subject of the action, they are so situated that disposition of the action, as a practical matter, may impede or impair their ability to protect that interest, and their interest may be represented inadequately by the existing parties to the suit.  Proposed Intervenors have therefore demonstrated that they are entitled to intervene in this action as a matter of right.

## C. Permissive Intervention

As noted above, a party seeking to intervene in a class action pursuant to Rule 24(b) must show both of the following: "(1) his application to intervene is timely; and (2) his claim or defense and the main action have a question of law or fact in common." Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir. 1989).  For the reasons stated above, the Court finds that Proposed Intervenors' application to intervene is timely and that their claim and the main action have a question of law or fact in common.  Thus, even if Proposed Intervenors do not satisfy all four of the factors for intervention as a matter of right, the Court will permit Proposed Intervenors to intervene in this class action to bolster the representation offered by Plaintiffs.

## D. Class Certification

Because the Court will permit Proposed Intervenors to join Plaintiffs in representing the Rule 23(b)(2) class in this action, the Court will address Plaintiffs' Motion for Class Certification in light of that ruling.

### 1.  Numerosity

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  The focus of the numerosity inquiry is not whether the number of proposed class members is "too few" to satisfy the Rule, but "whether joinder of proposed class members is impractical." Armstead v. Pingree, 629 F.Supp. 273, 279 (M.D. Fla. 1986).  Parties seeking class certification do not need to know the "precise number of class members," but they "must make reasonable estimates with support as to the size of the proposed class." Fuller v.

Becker & Poliakoff, P.A., 197 F.R.D. 697, 699 (M.D. Fla. 2000).  The Eleventh Circuit has held that "[g]enerally, 'less than twenty-one is inadequate, more than forty adequate.'"  Cheney v. Cyberguard Corp., 213 F.R.D. 484, 490 (S.D. Fla. 2003) (quoting Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986)).

Here, the record reveals that Defendant has terminated the Policies of eighty-one individuals for reaching their maximum benefits, including the Lifetime or Maximum Per Occurrence Maximum Benefits under the Policy (i.e., there are eighty-one members of the Rule 23(b)(3) class).  Moreover, Defendant's corporate representative testified to the following: (1) Defendant has paid claims on 700 unique Policy numbers between September 2003 and May 2009; (2) Defendant can identify which of the 700 Policy holders have had claims rejected; and (3) by cross-referencing the rejected claims, Defendant can determine which claims were rejected because the Policy holder reached the maximum benefits amount.[5]  Accordingly, the Court finds that the numerosity requirement is satisfied.

## 2.  Commonality

Rule 23(a)'s commonality prerequisite requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  However, it "does not require that all of the questions of law or fact raised by the case be common to all the plaintiffs."  Walco Invs., Inc. v. Thenen, 168 F.R.D. 315, 325 (S.D. Fla. 1996).  The commonality element is generally satisfied when a plaintiff alleges that "[d]efendants have engaged in a

---

[5]        This includes no less than the eighty-one individuals whose Policies were terminated for reaching their maximum benefits, including the Lifetime or Maximum Per Occurrence Maximum Benefits.

standardized course of conduct that affects all class members." In re Terazosin Hydrochloride, 220 F.R.D. 672, 687 (S.D. Fla. 2004). However, "a class action must involve issues that are susceptible to class-wide proof." Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001).

Plaintiffs' Motion argues that "Plaintiffs and Class Members clearly share several common factual and legal issues sufficient to satisfy the commonality requirement." DE 58 at 11. Notwithstanding, Defendant asserts that "a (b)(2) class should not be certified for lack of commonality . . . because (i) the Court found the Policies ambiguous, and (ii) the Policy forms are materially divergent." DE 92 at 7. The Court addresses each of Defendant's arguments in turn.

### a. The Court May Not Look to Extrinsic Evidence to Resolve the Ambiguity in the Policies

The Court has already determined that the Policies contain an ambiguity. See DE 28 at 6. The Court reached that conclusion by relying in part on the 11th Circuit's withdrawn opinion in Gradinger v. Wash. Nat'l Ins. Co., 250 Fed. App'x 271, 275 (11th Cir. 2007). Specifically, the Court found that whether the Automatic Benefit Increase applied to the Per Occurrence Maximum Benefit and the Lifetime Maximum Benefit was ambiguous because the Policy did not state that the Automatic Benefit Increase did not apply to those benefits. The Court, therefore, must resolve the ambiguity.

Defendant argues that "[u]nder Florida law, when an insurance policy is ambiguous, extrinsic evidence may be used to determine the intent of the parties." DE 65 at 24. Defendant is half right. Under Florida law, when a contract contains a latent ambiguity, the Court may look to extrinsic evidence to determine the intent of the

17

parties, and thereby resolve the latent ambiguity.  See Mac-Gray Servs. v. Savannah Assocs., 915 So. 2d 657, 659 (Fla. Dist. Ct. App. 2005) (citing Bradley v. Washington, Alexandria, Y Georgetown Steam Packet Co., 38 U.S. 89, 97 (1839) ("[E]xtrinsic evidence . . . is admissible to explain a latent ambiguity [which is an ambiguity] not apparent on the face of the instrument, but one arising from extrinsic evidence."). When a contract contains a patent ambiguity, however, Florida law dictates that a court resolve the ambiguity against the drafter of the contract.  Da Costa v. Gen. Guar. Ins. Co., 226 So. 2d 104, 105 (Fla. 1969).  This is the rule of contra proferentem.  Id.

Here, the Policies contain a patent ambiguity because the ambiguity appears on the face of the Policies.  Indeed, when examined in their entirety, the Policies do not make clear whether the Automatic Benefit Increase applies only to the Home Health Care Daily Benefit or whether it applies also to the Per Occurrence and Lifetime Benefits.  Consequently, Defendant's argument concerning the use of highly individualized extrinsic evidence to resolve the Policies' ambiguity, and by extension Defendant's argument concerning the ambiguity's effect on the Court's Rule 23's commonality analysis, is misplaced.

Moreover, in Gradinger v. Wash. Nat'l Ins. Co., 250 Fed. App'x 271, 275 (11th Cir. 2007), the United States Court of Appeals for the Eleventh Circuit examined an insurance policy virtually identical to Plaintiffs' Policies.  The Eleventh Circuit in Gradinger determined that the Certificate Schedule, read in isolation, appeared to apply the Automatic Benefit Increase to not only the Home Health Care Daily Benefit, but also to the Per Occurrence Maximum Benefit and the Lifetime Maximum Benefit.  Therefore, because the Benefits portion of the Policy that explained the Automatic Benefit Increase

18

did not expressly state that the Automatic Benefit Increase did not apply to the Per

Occurrence Maximum Benefit and the Lifetime Maximum Benefit, the Court found the

Policy, when read in its entirety, contained an ambiguity. The Eleventh Circuit, however,

resorted to no extrinsic evidence to resolve the ambiguity.  Rather, the Eleventh Circuit

resolved the ambiguity in favor of the insured and against the insurance company.  The

Court finds the Eleventh Circuit's approach in Gradinger disposes of the issue in this

case.[6]

b. The Policy Forms Are Not Materially Different

Defendant also argues that because "members of the putative class have

divergent Policies[,]" the Plaintiffs cannot satisfy the commonality or typicality

requirement.  Defendant devotes particular energy to the various certificate schedules

and the spacing therein.  According to Defendant,

> The Eleventh Circuit's withdrawn and null opinion in Gradinger, as well as
> the Named Plaintiffs' Amended Complaint and briefs submitted to this
> Court, places extremely heavy emphasis on the alleged 'spacing' of the
> four lines on the Certificate Schedule, noting that the clustering of the first
> three lines followed by a double space then the fourth line, indicates that
> the fourth line – the 8% escalator of the Daily Benefit – was meant to
> apply to all three lines, and not just the line setting forth the Daily Benefit.

DE 92 at 17.  The Eleventh Circuit's opinion in Gradinger, contrary to Defendant's

contention, does not place "extremely heavy emphasis on the alleged 'spacing' of the

---

[6]     The Eleventh Circuit withdrew its opinion in Gradinger.  Nonetheless, a "logical and well-reasoned decision, despite vacatur, is always persuasive authority, regardless of its district of origin or its ability to bind."  Gutter v. E.I. Dupont De Nemours & Co., No. 95-2152-CIV-GOLD, 2001 WL 36086589, at *6 (S.D. Fla. March 26, 2001).

four lines on the Certificate Schedule."[7]  Moreover, it is irrelevant whether the Plaintiffs'
arguments place "extremely heavy emphasis" on the spacing, for the Court finds the
spacing immaterial in its analysis finding the Policies ambiguous.  Stated differently, the
Policies are ambiguous regardless of the spacing.  Any differences in spacing amongst
the class members' Policies is not enough to destroy commonality.

Defendants also argue that "the Policies' definition of home health care varies
significantly" and that "the Policies contain differences in the conditions that must be
met before benefits are paid."  DE 65 at 38-39.  To the extent the definition of home
health care is relevant in this case, it is relevant only to the Plaintiffs' alleged damages.
Variances in the definition, therefore, do not affect the common issues of law related to
liability.  Likewise, any differences in the conditions that must be met before benefits
are paid affect damages rather than liability.  The Court finds this case presents several
common questions of law regarding liability:

•      whether the Policy was ambiguous on its face;

•      whether the Policy therefore obligated Defendant to apply the 8% increase to all

     Policy benefits; and thus

---

[7]     The only part of the opinion in <u>Gradinger</u> that relates to spacing states as
follows:

> [T]he schedule sets out the Automatic Benefit Increase Percentage with
> some spacing between the three benefits and the percentage. . . .
> Considering the grouping of the benefits and the alternate uses of the
> singular and plural forms of the word benefit, nothing in the schedule
> indicates that the Automatic Benefit Increase only applies to the first three
> benefits listed.

<u>Gradinger</u>, 250 Fed App'x at 275.  The opinion makes no other reference to the spacing
in the Certificate Schedule.

- whether Defendant breached the Policy by not applying the 8% annual benefit increase to the Per Occurrence and/or Lifetime Maximum Benefits;

- whether injunctive relief is appropriate (for Rule 23(b)(2) class members)

- whether damages are appropriate (for Rule 23(b)(3) class members)

These common questions of law therefore satisfy the commonality requirement of Rule 23(a)(2).

### 3. Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality is satisfied where the named plaintiffs' claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the class.  Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984), cert. denied, 470 U.S. 1004 (1985); see also CV Reit, Inc. v. Levy, 144 F.R.D. 690, 696 (S.D. Fla. 1992). As the Supreme Court has noted, the "commonality and typicality requirements of Rule 23(a) tend to merge."  See Gen. Tele. Co. v. Falcon, 457 U.S. 147, 157 n.13 (1982); see also Griffin v. Dugger, 823 F.2d 1476, 1489 n.31 (11th Cir. 1987).

Here, Plaintiffs, like each class member, were Florida Insureds under the Policies.  As with each class member, Defendant failed to apply the 8% annual benefit increase to the Per Occurrence and/or Lifetime Maximum Benefits under the Policy. Because such failure violates the Policy terms, Plaintiffs share a common legal injury with other class members for which Plaintiffs seek injunctive relief and or damages. Thus, Plaintiffs' interests are aligned with those of each class member; the claims of the Plaintiffs are therefore typical of the claims of other class members.  The typicality

21

requirement is met in this case.

### 4.  Adequacy of Representation

As addressed in detail above, Plaintiffs must satisfy the Court that the "representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement applies to both the named plaintiffs and their counsel.  London v. Wal-Mart, Inc., 340 F.3d 1246, 1253 (11th Cir. 2003).  The purpose of the adequacy requirement is to protect the legal rights of the unnamed class members.  Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 726 (11th Cir. 1987), cert. denied, 485 U.S. 959 (1988).  "This 'adequacy of representation' analysis encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action."  Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003) (citation omitted).

In the present case, Defendant vigorously disputes the adequacy of Plaintiffs' representation as well as the adequacy of Plaintiffs' counsel's representation.  Because the Court will grant Proposed Intervenors' Motion to Intervene so that Proposed Intervenors will join Plaintiffs in representing the 23(b)(2) Class, but not the 23(b)(3) Class, the Court must conduct individualized inquiries regarding the adequacy of representation for each of the proposed classes.

### a. Rule 23(b)(2) Class

Plaintiffs seek to certify a Rule 23(b)(2) class defined as "[a]ll of Defendant's Florida Insureds who currently have a Policy in effect."  Motion for Class Certification at 1.  Defendants, however, argue that Plaintiffs cannot adequately represent such a

class.  Specifically, Defendants assert that (1) Plaintiffs lack standing to represent the Rule 23(b)(2) Class because the Plaintiffs are attorneys-in-fact rather than the Policy holders and (2) Plaintiffs' counsel cannot adequately represent the class members because of alleged conflicts of interest.

As demonstrated above, such assertions do not apply to Proposed Intervenors. Thus, for the reasons set forth above, any inadequacies that Defendants have asserted against the representation provided by Plaintiffs will be cured by the joinder of the Proposed Intervenors.  The Court therefore finds that the Plaintiffs, bolstered by the joinder of Proposed Intervenors, adequately represent the Rule 23(b)(2) Class.

Consequently, the Plaintiffs satisfy all four of the Rule 23(a) factors.  To certify the 23(b)(2) Class, however, the Plaintiffs must also demonstrate that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Here, Plaintiffs allege that Defendant has refused to apply the Automatic Benefit Increase to either the Lifetime Maximum Benefit or the Per Occurrence Benefit.  Thus, a ruling favorable to Plaintiffs that requires Defendant to apply the Automatic Benefit Increase to the Lifetime Maximum Benefit or the Per Occurrence Benefit would be appropriate injunctive or declaratory relief respecting the class as a whole.  Plaintiffs therefore satisfy both Rule 23(a) and Rule 23(b)(2) and the Court will certify the Rule 23(b)(2) Class.

### b. Rule 23(b)(3) Class

Plaintiffs also seek class certification of a Rule 23(b)(3) class defined as "[a]ll of

Defendant's Florida Insureds who were denied Policy benefits during the Class Period because they reached their Lifetime Maximum and/or Per Occurrence Maximum benefit under the Policy."  DE 30 at 8.  Plaintiffs, therefore, must prove that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Before, however, the Court determines the predominance and superiority requirements, the Court must revisit the adequacy of class representation.[8]

### i.  Class Representatives of Rule 23(b)(3) Class

### (A) Standing

Defendant contends that Plaintiffs do not have standing because "both attorneys-in-fact have stated that they, not the insureds, are the actual plaintiffs in this case."[9]  DE 65 at 43.  Defendant then cites a case where an attorney-in-fact was found not to have standing to maintain a claim.  Here, however, the attorneys-in-fact, despite their "admissions," are not the Plaintiffs.  Ms. Powers and Ms. Ruderman are the named Plaintiffs in this action.  They allege that the Defendant issued them their

---

[8]      As discussed above, Proposed Intervenors cure the alleged inadequacies of the Plaintiffs' representation as it pertains to the Rule 23(b)(2) Class.  Because the Proposed Intervenors do not seek to represent the Rule 23(b)(3) Class, the Court must determine whether Plaintiffs, without Proposed Intervenors, adequately represent the class.

[9]      Defendant maintains that "[b]oth attorneys-in-fact have stated that they, not the insureds, are the actual plaintiffs in this case."  DE 65 at 43.  Defendant then cites to declarations made by the attorneys-in-fact wherein the declarant states, "I am one of the named Plaintiffs in this case and I make this Declaration in support of the Motion for Class Certification."  DE's 58-6 and 58-7.

Policies, that Defendant breached the Policies, and that they have suffered damages because of the breach.  Plaintiffs, therefore, have standing.

### (B) Health

Defendant contends that Plaintiffs have "represented that they cannot be deposed because of their health" and therefore "the insureds and their agents will not be able to offer any testimony at trial."  DE 65 at 44.  Defendant then asserts, "[t]hat is a problem for the class, given the enormous amount of extrinsic evidence that will be offered by [Defendant]."  Id.  As demonstrated above, however, the Court need not evaluate extrinsic evidence to resolve the ambiguity in the Policies.  Defendant's argument is unpersuasive.

### (C)  Credibility

Defendant next asserts that the Plaintiffs cannot adequately represent a class because the attorneys-in-fact "are not credible witnesses."  Id. at 44-45.  Defendant cites no authority from within the Eleventh Circuit to support this proposition.  Moreover, even if credibility issues are germane to the adequacy of the adequate representation determination, Defendant points to virtually no facts to support its attack.[10]  The Court

---

[10]     Defendant asserts only that both attorneys-in-fact "offered overly-coached, even silly, testimony that they were unaware it was illegal to hire domestic employees and not pay any taxes associated therewith. . . . Both attorneys-in-fact have also sought to mislead this Court by presenting demonstrably false information about the spacing within the Certificate Schedules."  DE 65 at 45.  The Court will not determine at this time whether the attorneys-in-facts' testimony was "overly-coached" or "silly."

As to the "demonstrably false information about the spacing," the declarations that Defendant cites to demonstrate the attorneys-in-facts' intent (i.e., Defendant's assertion that the attorneys-in-fact "sought to mislead this Court") do not purport to provide a carbon copy of the Certificate Schedule.  The Court will not assume, as Defendant so readily does, that the attorneys-in-fact sought to mislead the Court.

will not impugn the credibility of the attorneys-in-fact based on such scant allegations.

(D) Active Involvement

Defendant also contends that "courts will not permit someone to serve as a class representative if they do not possess sufficient knowledge of the litigation and actively involve themselves in the case." Id.  To support that contention, Defendant cites a district court case from Texas that quotes an Eleventh Circuit decision: Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718 (11th Cir. 1987).  In Kirkpatrick, the court remanded the case to the district court so that the district court could determine whether class representatives with an alleged lack of interest could adequately represent the class. See id.  The Eleventh Circuit concluded that

> in securities cases . . . where the class is represented by competent and zealous counsel, class certification should not be denied simply because of a perceived lack of subjective interest on the part of the named plaintiffs *unless their participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case.*

Id. at 728 (emphasis added).  Although Kirkpatrick was a securities case, the Court finds it provides helpful guidance.

Here, Defendant asserts that the attorneys-in-fact do not possess a requisite level of knowledge about the case for the following reasons: 1) One attorney-in-fact did not read the complaint before it was filed;[11] 2) another attorney-in-fact did not attend the

---

Moreover, despite a voluminous record, Defendant offers no additional facts to cast doubt on the credibility of the attorneys-in fact.

Defendant sought, and the Court granted, leave to file an overlength response to the Motion for Class Certification.  Defendant would be wise not to abuse the Court's leniency by asserting such a "silly" argument.

[11]     The attorney-in-fact who candidly admitted at his deposition that he did not recall reading the complaint before it was filed (which the Court finds bolsters that

mediation; 3) "They both had very little knowledge about the case, being unable to even explain the basic terms of the Policies;" 4) "Neither of them could explain why their attorneys submitted interrogatory responses claiming damages in an amount several times more than what they were actually seeking in this case;" and 5) "both of them admitted that they do not subscribe to a central tent of their own pleading, that the spacing of the benefits in the Certificate Schedule is important to interpreting the Policies."  DE 65 at 45.

First, as demonstrated above, the spacing of the benefits in the Certificate Schedule is irrelevant.  Thus, even if the spacing were a "central tenet" of the Plaintiffs' Amended Complaint, which the Court does not find, it would not matter if the attorneys-in-fact subscribed to it.  Stated differently, the class representatives position on the spacing in the certificate schedule is not "contrary to the position which must be taken by those members of the putative class."  Griffin v. GK Intelligent Sys., Inc., 196 F.R.D. 298, 302 (S.D. Tex. 2000).

Second, Defendant cites no authority for its assertion that a class representative provides inadequate representation if he or she fails to read the complaint before it is filed or fails to attend a mediation.  As to Defendant's remaining criticisms, they pertain to issues that require legal training (i.e., ability to construe policy, reasoning behind interrogatory responses).  In short, Defendant has not demonstrated that the attorneys-in-fact's "participation [in this case] is so minimal that they virtually have abdicated to

---

attorney-in-fact's credibility), testified that he did not feel the need to read the complaint before it was filed because he had previously discussed the case with his counsel.  DE 69-17 at 72-73.

their attorneys the conduct of the case." Kirkpatrick, 827 F.2d at 728.

### (E) Antagonistic Testimony

Defendant argues that the attorneys-in-fact cannot serve as class representatives because they "have provided testimony that is antagonistic to the class." DE 65 at 45.  Even if Defendant's argument is a correct statement of the law within this jurisdiction, which the Court need not determine, the facts do not support Defendant's argument.  Defendant bases its argument on the fact that "one attorney-in-fact has already testified that any class member receiving a brochure would not have a claim." Id. at 46.

Presumably, Defendant elicited this testimony to support its misplaced argument that the Court should consider extrinsic evidence to determine the parties' intent regarding the Automatic Benefit Increase and thereby resolve the ambiguity in favor of the Defendant.  As demonstrated above, the Policies contain a patent ambiguity construed against the drafter, regardless of any extrinsic evidence bearing upon the parties' intent.  The attorney-in-fact's testimony, therefore, is not antagonistic to the class.[12]

### (F) Adequacy of Counsel

As noted above, Defendant contends that Plaintiffs' proposed class counsel is inadequate due to purported conflicts raised by class counsel's representation of individual plaintiffs in separate actions against Defendant.  If Plaintiffs' proposed class

---

[12]    Additionally, the attorney-in-fact's allegedly "antagonistic testimony," at most, constitutes a layperson's legal conclusion concerning the probative value of extrinsic evidence.  The Court, with all due respect to the deponent, makes its own legal conclusions concerning such matters.

counsel is inadequate, Defendant argues, then Plaintiffs cannot adequately represent the class.  See Krim v. pcOrder.com, Inc., 210 F.R.D. 581, 589 (W.D. Tex. 2002) (denying class certification because class representatives failed to demonstrate the adequacy of their counsel); see also Tedesco v. Mishkin, 689 F.Supp. 1327, 1339 (S.D.N.Y. 1988) (stating because "the unnamed members of the class are not present to protect their rights, the district court must accordingly take special care to guarantee the propriety and adequacy of the class' legal representation").  "Class counsel must act with unwavering and complete loyalty to the class members they represent, and the 'responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel.'"  Krim, 210 F.R.D. at 589 (quoting Kayes v. Pacific Lumber Co., 51 F.3d 1449, 1465 (9th Cir. 1995)).  Indeed, "[c]ourts have consistently held that counsel cannot simultaneously represent a class and prosecute either individual or class claims against the same defendants in a different proceeding." 1 McLaughlin on Class Actions § 4:39 (5th ed. 2009) (citing Ortiz v. Fibreboard Corp., 527 U.S. 815, 856 (1999) (stating that "an attorney who represents another class against the same defendant may not serve as class counsel," and finding conflict of interest where attorneys represented proposed settlement class and also separately represented individual clients with prior-negotiated, more favorable settlement)).

Here, however, only one member of class counsel, Mr. Dunn, has brought individual cases against Defendant based on the Policies.  Presumably, the other class counsel would not allow their colleague to put the interests of his individual cases before the interests of the class.  Moreover, Defendant has not demonstrated that

29

Plaintiffs' counsel suffers from an actual conflict.  Admittedly, situations may arise where counsel seeking to represent both class members and individual plaintiffs in separate actions against the same defendant suffers from actual conflict (e.g., pursuing a class action as well as actions on behalf of individual plaintiffs when both actions pursue a common pool of assets that might be insufficient to support the total amount sought).  See, e.g., Kuper v. Quantum Chem. Corp., 145 F.R.D. 80, 83 (S.D. Ohio 1992).

In this case, to illustrate the purported conflict suffered by one member of class counsel, Defendant points out that "in one of the individual actions filed by putative class counsel since this action was filed, the insured . . . seeks damages for bodily injury and emotional distress as a result of not receiving benefits."  DE 65 at 47.  The class, ostensibly, does not seek damages for bodily injury and emotional distress. Therefore, Defendant questions "why are some insured seeking such damages, while others are not, in what appear to be similar circumstances?"  Id.  Defendant then offers the following answer: "[C]lass counsel is aware that no class can be certified where such damages are sought, and hence is willing to sacrifice the ability of all absent class members to seek such damages, except, that is, for class counsel's personal clients." Id. at 47-48.  The Court is unconvinced that this scenario presents a conflict that renders class counsel, and thereby the class representatives, inadequate.

To the contrary, the individual actions and the purported class action appear to pursue the same goal: application of the Automatic Benefit Increase Percentage to the Per Occurrence Maximum Benefit and the Lifetime Maximum Benefit.  Furthermore, Defendant has not alleged that the proposed class members and individual plaintiffs

seek recovery from a single pool of assets.  The Court, therefore, perceives no conflict. Plaintiffs' counsel adequately represent the Plaintiffs.  Plaintiffs, therefore, adequately represent the Rule 23(b)(3) Class.

Because Plaintiffs adequately represent the Rule 23(b)(3) Class, Plaintiffs satisfy all four of the Rule 23(a) factors.  Before the Court certifies the class, however, the Court must determine whether the Plaintiffs' proposed class action also satisfies the Rule 23(b)(3) factors: predominance and superiority.

ii. Predominance

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Amchem Prods., Inc. v. Windsor, 117 S.Ct. 2231, 2249 (1997).  To satisfy the predominance requirement, "'the issues in the class action that are subject to generalized proof and, thus, applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.'"  Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1005 (11th Cir. 1997) (quoting Kerr v. City of W. Palm Beach, 875 F.2d 1546, 1558 (11th Cir. 1989)). The predominance requirement focuses on legal and factual inquiries that qualify each member's claim as a controversy, and it is "far more demanding" than the commonality requirement.  Id.

In this case, Defendant vigorously asserts that Plaintiffs' claims require highly individualized proof regarding both liability and damages.  Highly individualized proof, Defendant maintains, precludes this Court from finding that the predominance requirement is satisfied.  Accordingly, the Court must determine whether Defendant is correct that the Court must consider individualized proof, rather than general proof, to

31

resolve the class members' claims.

As to liability, Defendant contends that if the Court determines that the Policies are ambiguous – a determination that the Court already made in its Order Denying Defendant's Motion to Dismiss [DE 28] – the Court must review extrinsic evidence to resolve the ambiguity.  The Court, as explained in detail above, rejects this argument.

As to damages, the Court finds that the class members will have to produce highly individualized evidence regarding damages.  Nonetheless, highly individualized damages determinations do not preclude class certification if liability may be determined class-wide.  See Klay v. Humana, Inc., 382 F.3d 1241, 1260 (11th Cir. 2004); Williams v. Mohawk Indus., 568 F.3d 1350, 1357-58 (11th Cir. 2003).  Here, the Court finds that liability may indeed be determined class-wide.

Plaintiffs, therefore, have presented an "Exemplar Trial Management Plan" that demonstrates how the Court may proceed to adjudicate this purported class action. See DE 89 at 21-25.  The Court will not recite the plan in this order.  Notwithstanding, the Court finds that Plaintiffs' plan intelligently provides a method for resolving the instant dispute as a class action.  To be clear, the Court is not adopting Plaintiffs' plan at this time and may never adopt Plaintiffs' plan.  The Court merely finds that the common issues of liability in this case, along with Plaintiffs' presentation of a feasible plan for the adjudication of damages, demonstrates to the Court that Plaintiffs have satisfied the Predominance prong of Rule 23(b)(3).

### iii.  Superiority

In many respects, the predominance analysis has a tremendous impact on the superiority analysis for the simple reason that the more common issues predominate

over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims. Klay, 382 F.3d at 1269. Here, the proposed class members' claims are predicated on a common set of facts and concern the same scheme. Thus, it will be unnecessary to hear testimony from every individual class member. In addition, because this controversy involves many common questions of law and fact, a class action will be superior to other available methods for fairly and efficiently adjudicating this controversy. Accordingly, this Court is convinced, based on the record before it, that Plaintiffs have met their burden to show that the requirements of Rule 23(b)(3) have been met.

### III.  CONCLUSION

Based on the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1.     The Motion of Kate Kolber, through her Attorney-in-Fact, Fred Kolber, Robert Schwarz and Bluma Schwarz to Intervene as Additional Plaintiffs and Class Representatives [DE 78] is **GRANTED**.

2.     The Emergency Motion of Kate Kolber, Through Her Attorney-in-Fact, Fred Kolber, Robert Schwarz and Bluma Schwarz to Stay Decision on Plaintiff's Class Certification Motion Pending a Decision on Proposed Intervenors' Motion to Intervene as Additional Plaintiffs and Class Representatives [DE 82] is **DENIED AS MOOT**.

3.     Plaintiffs' Motion for Class Certification [DE 58] is **GRANTED**.

   a.     The Court appoints Sydelle Ruderman, Kate Kolber, Robert Schwarz and

Bluma Schwarz as class representatives for the Rule 23(b)(2) Class.

b.      The Court appoints Sydelle Ruderman and Sylvia Powers as class

representatives for the Rule 23(b)(3) Class.

c.      Pursuant to Federal Rule of Civil Procedure 23(g), the Court appoints

Steven R. Jaffe, Mark S. Fistos, Seth Lehrman, and Steven M. Dunn as

class counsel.

d.      Pursuant to Federal Rule of Civil Procedure 23(c), Defendant shall

provide reasonable and adequate notice to Class Members at

Defendant's expense.

4.      The Trial and Pretrial Schedule is reset as follows:

a.      Calendar call in this case is reset for 9:00 a.m. on June 3, 2010 with trial
        to commence in the two-week trial period commencing June 7, 2010.

b.      Fact Discovery Completed                          March 19, 2010

c.      Expert Discovery Completed                        April 2, 2010

d.      Dispositive Pretrial Motions
        and Motions to Exclude or Limit
        Expert Testimony                                  May 7, 2010

e.      Motions in Limine                                 May 14, 2010

f.      Responses to Motions in Limine,
        Joint Pretrial Stipulation, and
        Designation of Deposition Excerpts for Trial      May 28, 1010

g.      Submission of Voir Dire Questions and
        Objections to Deposition Designations             June 3, 2010

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, on this 5th day of January, 2010.

JAMES I. COHN
United States District Judge

Copies provided to counsel of record.