UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 08-23401-CIV-COHN/SELTZER

SYDELLE RUDERMAN,
by and through her Attorney-in-fact, Bonnie Schwartz,
and SYLVIA POWERS,
by and through her Attorney-in-fact, Les Powers,
KATE KOLBER, by and through her Attorney-in-fact, Fred Kolber,
ROBERT SCHWARZ and, BLUMA SCHWARZ,
individually and on behalf of all others similarly situated,

                    Plaintiffs,

vs.

WASHINGTON NATIONAL INSURANCE COMPANY,
Successor-in-Interest to Pioneer Life Insurance Company,

                     Defendant.
_____/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Plaintiffs' Motion and Incorporated Memorandum of Law for a Final Order and Summary Judgment [DE 154] ("Motion for Summary Judgment"). The Court has carefully reviewed the Motion for Summary Judgment, Defendant's Opposition [DE 159], Plaintiffs' Reply [DE 166], and is otherwise advised in the premises.

### I. BACKGROUND

This case is a class action on behalf of all citizens of Florida who purchased a Limited Benefit Home Health Care Coverage Policy ("Policy") from Pioneer Life Insurance Company ("Pioneer Life") in the state of Florida where either: (a) Washington National Insurance Company ("WNIC") has rejected all or a portion of a claim on the Policy due to the Lifetime Maximum Benefit amount, the Per Occurrence Benefit

amount, or both, having been reached; or (b) the Policy was in effect at the time of the filing of this action.

The Policies issued to plaintiffs, under the heading "Benefits," provide as follows:

> HOME HEALTH CARE: We will pay 100% of the usual and customary charges for Home Health Care expenses if the care was pre-authorized. If the care was not pre-authorized we will pay 75% of the usual and customary charges for Home Health Care expenses incurred, up to 75% of the Daily Benefit Amount shown in the schedule. These benefits will be paid up to the Home Health Care Daily Benefit shown in the schedule. All benefits will be limited to the Per Occurrence Maximum Benefit Amount for ALL injuries and sicknesses which are shown in the certificate schedule.

DE 30 ¶ 11.[1]  Each of the three benefits in the Certificate Schedule (i.e., the Home Health Care Daily Benefit, the Lifetime Maximum Benefit Amount, and the Per Occurrence Maximum Benefit) are subject to a maximum dollar amount (i.e., per day,

---

[1] The subsequent paragraphs then state the following:

**B. AUTOMATIC DAILY BENEFIT INCREASE**: On each policy anniversary, we will increase the Home Health Care Daily Benefit payable under this policy by the Automatic Benefit Increase Percentage shown on the schedule page.

. . .

**E. PER OCCURRENCE MAXIMUM BENEFIT**: No further benefits will be payable for a sickness or injury when the total sum of Home Health Care or Adult Day Care benefits paid for that occurrence equals the amount shown in the schedule for the Per Occurrence Maximum Benefit. Successive confinement due to the same or related cause not separated by at least 6 months of normal daily living will be considered as the same occurrence.

**F. LIFETIME MAXIMUM BENEFIT**: This coverage shall terminate and no further benefits will be payable when the total sum of Home Health Care or Adult Day Care benefits paid equals the amount shown in the schedule for the Lifetime Maximum Benefit Amount. Any premium paid for a period after termination will be refunded.

per lifetime, per occurrence).² The Certificate Schedule also contains an "Automatic Benefit Increase Percentage and states that "Benefits increase by 8% each year." Id. The Policy does not state that the 8% Automatic Benefit Increase applies only to the Daily Benefit Amount. Defendant, however, has applied the 8% increase only to the Daily Benefit.

Plaintiff Ruderman filed her initial class action complaint ("Complaint") on December 9, 2008. The Complaint contained only a damages claim for breach of contract. WNIC filed a motion to dismiss on February 9, 2009. The Court denied the Motion to Dismiss and on April 28, 2009, plaintiffs filed an amended complaint ("FAC") which alleged that the action was brought pursuant to Rule 23(b)(2) and (3). The FAC, however, contained only two causes of action: a damages claim for breach of contract and a claim for injunctive relief. WNIC filed its answer to the FAC on May 12, 2009.

Thereafter, Plaintiffs filed a motion for class certification on July 15, 2009. Plaintiffs sought to represent two groups: 1) a Rule 23(b)(2) class defined as "[a]ll of Defendant's Florida Insureds who currently have a Policy in effect ("Rule 23(b)(2) Class")[;]" and 2) a Rule 23(b)(3) class defined as "[a]ll of Defendant's Florida Insureds

---

² The Certificate Schedule states as follows:

CERTIFICATE SCHEDULE

| | |
|---|---|
| HOME HEALTH CARE DAILY BENEFIT | $ 180 / Day |
| LIFETIME MAXIMUM BENEFIT AMOUNT | $ 250,000 |
| PER OCCURRENCE MAXIMUM BENEFIT | $ 150,000 / Illness |
| AUTOMATIC BENEFIT INCREASE PERCENTAGE | Benefits increase by 8% each year |

3

who were denied Policy benefits during the Class Period because they reached their Lifetime Maximum and/or Per Occurrence Maximum benefit under the Policy ("Rule 23(b)(3) Class").[3]  Plaintiffs also sought to be appointed as class representatives and to have their counsel appointed as class counsel.

On January 5, 2010, the Court entered its Order Granting Motion to Intervene and Granting Motion for Class Certification [DE 125].  Thereafter, the parties settled the Rule 23(b)(3) Class.  See DE 163.  Most recently, Plaintiffs have moved for summary judgment on behalf of themselves and the Rule 23(b)(2) Class.

## II. DISCUSSION

### A. Legal Standard

The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the non-moving party's case.  Id. at 325.

---

[3]   "Florida Insureds" is defined in the Motion for Class Certification as individuals named as insureds in Defendant's Policy or the attorneys in fact for such individuals, where the insured individuals currently reside in Florida and their Policy was issued to them in Florida.  The "Class Period" runs from December 1, 2003 to the present.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

### B.  The Court Construes the Ambiguity in the Policies Strictly Against the Defendant

The Court has already determined that the Policies contain an ambiguity. See DE 28 at 6; see also DE 125 at 17. The Court reached that conclusion by relying on the Eleventh Circuit's opinion in Gradinger v. Wash. Nat'l Ins. Co., 250 Fed. App'x 271, 275 (11th Cir. 2007). Specifically, the Court found that whether the Automatic Benefit Increase applied to the Per Occurrence Maximum Benefit and the Lifetime Maximum Benefit was ambiguous because the Policy did not state that the Automatic Benefit Increase did not apply to those benefits. See DE 28 at 6; see also DE 125 at 17.

Defendant revisits the same argument it advanced in its opposition to Plaintiffs' Motion for Class Certification: the Court should look to extrinsic evidence to determine the intent of the parties and thereby resolve the ambiguity.  See DE 159 at 7.  To support its argument, Defendant cites a significant number of cases from both Florida and other jurisdictions.  See id. at 12-22.  Defendant's argument is both well-researched and persuasive.  Nonetheless, the Court will adopt the Eleventh Circuit's reasoning set forth in Gradinger v. Wash. Nat'l Ins. Co., 250 Fed. App'x 271, 275 (11th Cir. 2007).[4]

In Gradinger, the Eleventh Circuit examined an insurance policy virtually identical to Plaintiffs' Policies and determined that the Certificate Schedule, read in isolation, appeared to apply the Automatic Benefit Increase to not only the Home Health Care Daily Benefit, but also to the Per Occurrence Maximum Benefit and the Lifetime Maximum Benefit.  Id. at 274.  Because the Benefits portion of the Policy that explained the Automatic Benefit Increase did not expressly state that the Automatic Benefit Increase did not apply to the Per Occurrence Maximum Benefit and the Lifetime Maximum Benefit, the Eleventh Circuit found that the Policy, when read in its entirety, contained an ambiguity.  Id.

Importantly, the Eleventh Circuit resorted to no extrinsic evidence to resolve the ambiguity.  See id.  Rather, the Eleventh Circuit resolved the ambiguity in favor of the insured and against the insurance company.  Id.  Defendant offers the Court no reason

---

[4] Defendant points out that the Eleventh Circuit has withdrawn its opinion in Gradinger because of a settlement the parties reached subsequent to the entry of the opinion.  Nonetheless, a "logical and well-reasoned decision, despite vacatur, is always persuasive authority, regardless of its district of origin or its ability to bind."  Gutter v. E.I. Dupont De Nemours & Co., No. 95-2152-CIV-GOLD, 2001 WL 36086589, at *6 (S.D. Fla. March 26, 2001).

why the Eleventh Circuit would reach a different conclusion in the case at bar.[5] Consequently, the Court construes the Policies liberally in favor of Plaintiffs and strictly against Defendant. The Court, therefore, will grant Plaintiffs' Motion for Summary Judgment.

In light of the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Motion and Incorporated Memorandum of Law for a Final Order and Summary Judgment [DE 154] is **GRANTED**.

2. Defendants are enjoined from continuing to deny the 8% annual increase in Lifetime Maximum and Per Occurrence Benefits to Plaintiffs and Rule 23(b)(2) Class Members.

3. Defendant shall provide notice to Rule 23(b)(2) Class Members about their right to the 8% annual increase in Lifetime Maximum and/or Per Occurrence Benefits under the Policy.

**DONE AND ORDERED** in Chambers, at Fort Lauderdale, Broward County, Florida, this 8th day of September, 2010.

/s/ James I. Cohn
JAMES I. COHN
United States District Judge

Copies provided to counsel of record.

---

[5] Defendant maintains that "[t]he mountain of extrinsic evidence available in this case, none of which was in the record on appeal in Gradinger, serves as an independent reason why this case is different." DE 159 at 23. The Eleventh Circuit's opinion in Gradinger, however, was not predicated on a dearth of extrinsic evidence. Rather, the Eleventh Circuit found that the policy was ambiguous and therefore had to be construed strictly against the Defendant. Gradinger, 250 Fed. App'x at 271.