IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-CV-23401-CIV-COHN/ROSENBAUM

SYDELLE RUDERMAN, by and through her
Attorney-in-fact, Bonnie Schwartz, and
SYLVIA POWERS, by and through her
Attorney-in-fact, Les Powers, KATE KOLBER,
by and through her attorney-in-fact, Fred Kolber,
ROBERT SCHWARZ and, BLUMA SCHWARZ,
and on behalf of all others similarly situated,

> ' Plaintiffs,

v.

WASHINGTON NATIONAL
INSURANCE COMPANY,
Successors in Interest to
Pioneer Life Insurance Company,

> Defendant.

_____/

## FINAL JUDGMENT AND ORDER

**THIS MATTER** is before the Court upon the Parties' motions for final approval of

their class-action Settlement [DE 204; DE 205] pursuant to Rule 23(b)(3) of the Federal

Rules of Civil Procedure. Two objections were timely filed [DE 193; DE 195] and

responded to by the Parties [DE's 201-203].[1] Having reviewed and considered the

relevant submissions, the arguments of the Parties as presented at the November 12,

2010 Fairness Hearing, and the applicable law, I overrule the objections, grant the final

approval motions, appoint a Special Master, direct that the $100,000 donation called for

---

[1]    One of the two objections has since been withdrawn. See DE 206
(withdrawing Jill Starishevsky's objection).

in the Settlement be paid, approve the proposed Relief Election Form[2] [DE 205-2] and Relief Declaration Form [DE 205-3], and approve the Settlement [DE 205-1] as fair, reasonable, and adequate, for the reasons that follow.

## I.    Background and Procedural History

This case is a certified class action on behalf of individuals who purchased a Limited Benefit Home Health Care Coverage Policy ("Policy") from Pioneer Life Insurance Company ("Pioneer Life") in the state of Florida, where Washington National Insurance Company ("Defendant" or "WNIC") has rejected all or a portion of a claim on the Policy due to the Lifetime Maximum Benefit amount, the Per Occurrence Benefit amount, or both, having been reached [DE 125 at 1-2].    Among other things, Plaintiffs alleged that Defendant materially breached the Policy by denying claims on the Policy when the initial Lifetime Maximum and/or Per Occurrence Benefit had been reached, without providing them with an 8% annual increase in the Lifetime Maximum and/or Per Occurrence Benefits they alleged were required by the terms of the Policy [First Amended Complaint ("FAC"), DE 30 at ¶¶ 38-44].

Plaintiff Ruderman filed her initial class action complaint ("Complaint") on December 9, 2008 [DE 1]. The Complaint contained only a damages claim for breach of contract. WNIC filed a motion to dismiss on February 9, 2009 [DE 17]. The Court denied the Motion to Dismiss and on April 28, 2009, Plaintiffs filed an amended complaint ("FAC") [DE 30], which alleged that the action was brought pursuant to Rule 23(b)(2) and (3). The FAC contained two causes of action: a damages claim for breach of

---

[2] All capitalized terms have the same meaning as those terms in the Settlement Agreement preliminarily approved by the Court.

contract and a claim for injunctive relief. WNIC filed its answer to the FAC on May 12, 2009 [DE 32].

*Class Certification.* After several months of discovery and motion practice, on July 15, 2009, Plaintiffs filed their Motion for Class Certification with several supporting exhibits and declarations [DE 58]. On August 17, 2009, WNIC filed its Opposition to the Motion for Class Certification with numerous opposing exhibits and declarations [DE 65]. Plaintiffs in turn filed their reply on September 8, 2009, supported by additional exhibits [DE 89]. On January 5, 2010, the Court granted the Motion for Class Certification and certified two Florida-only classes under Rule 23, *Fed. R. Civ. P*, corresponding to subsections (b)(2) and (b)(3) of that Rule [DE 125 at 34] (reported at *Ruderman v. Washington National Insurance Company*, 263 F.R.D. 670 (S.D. Fla. 2009)).

After the Court granted class certification [DE 125], on January 19, 2010, Defendant petitioned to the Eleventh Circuit to appeal the Court's certification decision pursuant to Rule 23(f), *Fed. R. Civ. P.* [DE 163-5, Jaffe Decl. at ¶ 10].[3] Plaintiffs filed a response on January 29, 2010 [*id.*]. Defendant's petition was denied on March 4, 2010 [*id.*].

*Class Certification Notice.* On February 2, 2010, Plaintiffs filed a motion to approve the notice to the class certified pursuant to Rule 23(b)(3) [DE 126], which the Court granted on February 23, 2010 [DE 128]. On March 12, 2010, notice of the certified case and the opportunity to opt-out of this class case was provided to the Rule 23(b)(3) Class by Defendant via First Class Mail [DE 128; DE 151 at 1-2]. The notice

---

[3] "Jaffe Decl." refers to the Declaration of Steven R. Jaffe filed in support of Plaintiffs' Unopposed Motion and Plaintiffs' Memorandum Of Law In Support of Preliminary Approval of Proposed Settlement Agreement and Release [DE 163].

package included an Exclusion Request Form (approved by the Court) to be returned via pre-paid postage for those Rule 23(b)(3) Class Members who wished to opt out of this case [DE 126; DE 126-1 and DE 126-2; DE 128]. The notice advised Rule 23(b)(3) Class Members of the binding effect settlement or trial of the case would have, how to exclude themselves to avoid being bound, and the procedures for opting out [DE 126-1 at ¶¶ 11-13]. Exclusion requests were returned to Class Counsel [DE 163-5, Jaffe Decl. at ¶ 11]. Only three (3) Rule 23(b)(3) Settlement Class Members have excluded themselves from the certified class of approximately one hundred six (106) then living and deceased Rule 23(b)(3) Class Members or their representatives [DE 163-5, Jaffe Decl. at ¶ 11].

*Preliminary Approval.* On August 20, 2010, Plaintiffs filed Plaintiffs' Unopposed Motion and Plaintiffs' Memorandum Of Law In Support of Preliminary Approval of Proposed Settlement Agreement and Release [DE 163], in which Plaintiffs requested that the Court grant preliminary approval of the proposed Settlement; order that notice of the Settlement be provided to the class certified under Rule 23(b)(3), *Fed. R. Civ. P.*; establish deadlines for objecting and intervening; and set a Fairness Hearing. As proposed, the agreed-upon Settlement concerned only the damages claim for breach of contract in the FAC, and is limited to the class members in the Rule 23(b)(3) Settlement Class. Pursuant to the Proposed Settlement Agreement, the Rule 23(b)(3) Settlement Class is defined as follows :

> All of Defendant's Florida Insureds, whether residing in or out of state identified in the First Amended Complaint (DE 30, ¶ 27) as the "Rule 23(b)(3) Class," who were denied Policy benefits during the Class Period because they reached their Lifetime Maximum and/or Per Occurrence Benefit maxiumum under the Policy. (Settlement Agreement, § II).

4

On August 27, 2010, the Court entered an order preliminarily approving the Settlement [DE 165].

*Settlement Notice.* On September 14, 2010, pursuant to this Court's Order preliminarily approving the Settlement [DE-165], Defendant sent the Direct Mail Notice called for under the Settlement to Rule 23(b)(3) Settlement Class Members via United States First Class Mail.[4] Also, commencing on September 25, 2010, Defendant ran the Publication Notice called for under the Settlement in weekend editions of the *The Miami Herald* and the *Ft. Lauderdale Sun-Sentinel* during four consecutive weeks.[5] Thereafter, two objections to the Settlement were filed [DE 193; DE 195].

*Fairness Hearing.* On November 5, 2010, the parties filed their respective motions for final approval of their class-action Settlement, entry of final judgment and order, and incorporated memorandums of law [DE 204; DE 205]. Plaintiffs' motion [DE 205] contained numerous exhibits including, proposed Relief Election and Declaration Forms, a copy of the fully executed Settlement Agreement, and several declarations from Rule 23(b)(3) Settlement Class Members supporting the Settlement. Defendant separately filed a brief motion in support of final approval of the Settlement [DE 204] and filed two declarations supporting the Settlement and detailing the Settlement Notice Program [DE's 202-203]. Defendant further supported the Settlement by rebutting the contentions of the two objectors in its response to the two objectors [DE 201]. On November 12, 2010, the Court heard arguments from the Parties on their motions for

---

[4] Declaration of Jacob A. Nemetz [DE 202] ("Nemetz Decl.").

[5] Declaration of Jeffrey H. Newhouse [DE 203] ("Newhouse Decl.").

final approval and responses to the objector.    The Court also heard from counsel for the objector.

## II.        **Legal Framework**

"Public policy strongly favors the pretrial settlement of class action lawsuits." *In re United States Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir.1992). Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length.  Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice...." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988) *aff'd*, 899 F.2d 21 (11th Cir. 1990) (citations omitted).  "[I]n analyzing any settlement, 'the clear policy in favor of encouraging settlements must . . . be taken into account.'" *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (citation omitted); *see Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (same); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)[6] (same).

"In order to approve the settlement agreement, the district court [i]s required to determine that it was fair, adequate, reasonable, and not the product of collusion." *Leverso v. Southtrust Bank of Al., Nat. Assoc.*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see Fed. R. Civ. P.* 23(e)(1)(C). "In determining whether a proposed class action settlement is fair, adequate and reasonable, the Court should consider six factors:[7] (1) the

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[7] These factors are sometimes referred to as the "*Bennett* factors" because they are taken from the Eleventh Circuit's decision in *Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir.1984). *See, e.g., Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360 (S.D. Fla. 207);

likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 672-73 (S.D. Fla. 2006) (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). "In addition, the judgment of experienced counsel is relevant to approval." *Borcea,* 238 F.R.D. at 672-73. (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (finding the trial court is "entitled to rely on the judgment of experienced counsel for the parties" in evaluating a settlement) (citations omitted)).

### III.      **Analysis**

After full consideration of all the matters presented and the arguments of the Parties and the objectors, and a careful review of the documents in the court file, the Court makes the following findings:

1. *Approval of Class Notice and Assertion of Personal Jurisdiction.* For a court to exercise jurisdiction over the claims of absent class members, there must be minimal procedural due process protection. Absent class members must receive notice and an opportunity to be heard and to participate in the litigation, whether in person or through counsel. *Fed. R. Civ. P. 23(c)(2)(B).* The notice must be the "best practicable, [and] 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"

---

(continued...)

*Access Now, Inc. v. Cunard Line Ltd.,* Co., No. 00-7233-CIV, 2001 WL 1622015, at *2 (S.D. Fla. 2001).

*Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 811-12 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).

2. Here, Rule 23(b)(3) Settlement Class Members received two rounds of Court-approved notice: certification notice pursuant to *Fed. R. Civ. P.* 23(c)(2)(B) sent via First Class Mail [DE 163-5, Jaffe Decl. at ¶ 11] and Settlement notice[8] pursuant to Rule 23(e)(1), *Fed. R. Civ. P.*[9] The certification notice afforded Rule 23(b)(3) Settlement Class Members the opportunity to exclude themselves from the case and provided them other pertinent information [DE 163-5, Jaffe Decl. at ¶ 11; DE 126; DE 126-1 and DE 126-2; DE 128]. Notice of the Settlement consisted of a Direct Mail Notice and a Publication Notice. The Direct Mail Notice, among other things, described the nature of the case, the Rule 23(b)(3) Settlement Class definition, the possibility to appear with counsel, the timing and place to object, the fairness hearing date and time, the stakes involved, the amount of the Settlement Fund, what was required to participate, and where to call (toll-free) to get more information [DE 202-1]. The Publication Notice contained a shortened version of the same information and explained how to get more detailed information [DE 203]. Therefore, THE COURT FINDS that the notice provided to Rule 23(b)(3) Settlement Class Members was sufficient to satisfy the requirements of

---

[8] Newhouse Decl. [DE 203]; Nemetz Decl. [DE 202].

[9] Rule 23(c)(2)(b), *Fed. R. Civ. P.*, sets forth specific contents of class certification notices, However, Rule 23(e)(1), *Fed. R. Civ. P.* simply provides: "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal." The Rule 23(e) "notice need only satisfy the 'broad reasonableness' standards imposed by due process." 4 Newberg on Class Actions § 11:41 (4th ed.) (Westlaw) (citation omitted). This standard is met where "the notice of settlement [is] sufficiently detailed to permit class members to determine the potential costs and benefits involved, or at least whether additional investigation into the matter would be an efficient use of their time." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999).

due process, and accordingly, that this Court has personal jurisdiction over the entire Rule 23(b)(3) Settlement Class because the Rule 23(b)(3) Settlement Class was provided with the "best practicable notice."

### *Arms-Length Negotiations and Litigation*

3. The Court has already found, after reviewing the background of the Settlement negotiations and the record, that the "Settlement [wa]s the product of arms-length discovery, litigation and negotiation, which militate[d] in favor of its fairness and reasonableness" [DE 165 at 7]. "This certainly was not a 'file and settle'" case. *See David v. Am. Suzuki Motor Corp.*, No. 08-CV-22278, 2010 WL 1628362, at *6 (S.D. Fla. 2010).

4. Plaintiff Ruderman filed her initial class action complaint on December 9, 2008 [DE 1]. On February 9, 2009, Defendant moved to dismiss the entire Complaint [DE 17]. In an opinion dated April 22, 2009, the Court denied Defendant's motion to dismiss in its entirety [DE 28]. On April 28, 2009, original Lead Plaintiffs filed their First Amended Complaint [DE 30], which Defendant answered on May 12, 2009 [DE 32].

5. *Motion Practice*. The Parties engaged in extensive motion practice, including motions to dismiss [DE 17], to stay [DE 19], to require evidentiary hearing, and to extend the trial date [DE 33; DE 122]; numerous motions to compel and/or for protective orders from both Parties [DE 36; DE 39; DE 76; DE 130; DE 132]; motions to exceed briefing page limits from both sides [DE 63; DE 73]; and a hotly contested motion for class certification [DE 58]. Both Parties filed responses and replies and submitted significant amounts of evidence and materials to support their respective positions regarding the foregoing motions, and both Parties defended against a challenger's

motion to intervene and related filings [DE's 78-82 and 102-105]. After the Court granted class certification [DE 125], on January 19, 2010, Defendant petitioned to the Eleventh Circuit to appeal the Court's certification decision. Lead Plaintiffs filed a response on January 29, 2010. Defendant's petition was denied on March 4, 2010 [DE 163-5, Jaffe Decl. at ¶ 10].

6. *Discovery*. This Litigation involved extensive discovery [DE 163-5, Jaffe Decl. at ¶ 5], including several rounds of Rule 26 disclosures [DE's 69-2 through 69-4; DE 36-2]; requests for production of documents [DE's 69-9, 69-12; DE's 36-5, 36-13]; interrogatories [DE's 69-5 through 69-11, 69-13; DE's 36-4 and 36-12]; and requests for admissions [DE 58-3; DE's 36-6, 36-14 and DE 89-9]. Throughout the Litigation, the Parties held numerous meet-and-confer sessions concerning the Parties' disputed discovery requests and the scope the Parties' productions of documents in response thereto, and they filed several status reports setting forth these efforts [DE 163-5, Jaffe Decl. at ¶ 6; DE 38; DE 52; DE 56; DE 89-7; DE 90; DE 146]. As a result of Plaintiff's' discovery requests, Defendant produced thousands of pages of documents, all of which Class Counsel reviewed and analyzed [DE 163-5, Jaffe Decl. at ¶ 7].

7. The Parties also conducted several depositions [DE 163-5, Jaffe Decl. at ¶ 8]: Class Counsel took the deposition of Defendant's Fed. R. Civ. P. 30(b)(6) designee in Indianapolis, Indiana, on June 24, 2009 [DE 58-2] and Defendant's outside actuary in Chicago, Illinois, on August 27, 2009 [DE 89-5]. Class Counsel also deposed insurance agent Roy Weinberg who sold many of the Policies at issue in the case [DE 67; DE 89-4]. In addition, Class Counsel defended the original Lead Plaintiffs at their depositions in the Litigation [DE's 69-17, 69-18].

8. *Settlement Negotiations.* On April 21, 2009, the Parties participated in a full day mediation session with James Chaplin, Esq. of Mediation, Inc., which ended in an impasse [DE 163-5, Jaffe Decl. at ¶ 4]. Following this impasse, after nearly a year of litigation, and after denial of Defendant's Rule 23(f) petition on March 4, 2010, the Parties held seven days of in-person settlement conferences spread out over several months in Ft. Lauderdale, Florida, Carmel, Indiana, and Chicago, Illinois [DE 163-5, Jaffe Decl. at ¶ 12]. Additionally, the Parties conducted informal settlement negotiation conference calls [*id.*]. Some of these negotiations are referenced in joint motions and reports filed with the Court [*see, e.g.*, DE 147; DE 152]. Each in-person negotiation was attended by an official of Defendant, Defendant's counsel and Class Counsel [DE 163-5, Jaffe Decl. at ¶ 12].

9. On June 17, 2010, the Parties reached an agreement on the basic terms of settlement for the Rule 23(b)(3) Class [DE 163-5, Jaffe Decl. at ¶ 13]. The Settlement Agreement was reached after considering such factors as: (1) the benefits to Plaintiffs and the Rule 23(b)(3) Class; (2) the strength of the Parties' respective positions; (3) the attendant risks and uncertainty of litigation, especially likely appeals; (4) WNIC's vigorous defense of the Litigation and continued denial of the claims and facts at issue; and (5) the desirability of consummating this Settlement Agreement promptly, to secure important and valuable benefits for elderly Florida Insureds [DE 163-5, Jaffe Decl. at ¶ 13]. For the next month and a half, the Parties continued settlement discussions in earnest, negotiating the specific terms of the agreement and accompanying exhibits [*id.*]. These additional negotiations resulted in the current Settlement Agreement [*id.*].

10.     Based on the foregoing, it is apparent to the Court that the Settlement was reached only after contentious and extensive litigation, discovery and negotiations, which gave both Parties sufficient information to evaluate their respective, diverse positions adequately and realistically. *See Francisco v. Numismatic Guaranty Corp. of Am.*, No. 06-61677-CIV, 2008 WL 649124, at *11 (S.D. Fla. 2008) (collecting cases). Also, the Parties' Settlement was reached without any discussion or agreement on attorney's fees, which demonstrates a "commitment to arms-length negotiations."[10] *Manchaca v. Chater*, 927 F. Supp. 962, 966 (E.D. Tex. 1996); *accord Dewey v. Volkswagen of Am.*, No. 07-2249(FSH), 2010 WL 3018305, at *21 (D.N.J. 2010) (finding "vigor of the defendants' opposition [on issue of attorney's fees]...consistent with the arms-length manner" of negotiating a settlement). Accordingly, THE COURT FINDS that the Settlement is a result of arms-length litigation and negotiation and no evidence of collusion exists in the Parties' arriving at a settlement.

### Lengthy, Expensive Litigation and the Probable Success of Damage Claims

11.     "The Court should [also] consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise of the mere possibility of relief in the future, after protracted and extensive litigation. In this respect, '[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.' " *Borcea*, 238 F.R.D. at 674 (quoting *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993)).

12.     Absent a settlement, the final resolution of this Litigation through the trial process may have required several more months or years of protracted adversary

---

[10] The Settlement Agreement was attached as Exhibit A to Plaintiff's final approval motion [DE 205-1]. *See* § VII of the Settlement Agreement.

litigation and appeals, which may have delayed relief to Rule 23(b)(3) Settlement Class Members all of whom are of advanced age.[11]  Resolving the damage claims for each elderly Rule 23(b)(3) Settlement Class Member would have entailed discovery of and a degree of hardship on each elderly insured to gather extensive documents and submit him/herself potentially to re-examinations by Defendant's healthcare practitioners to determine their eligibility for covered care under the terms of the Policy [DE 58-3 at 31, 35, 41-42, 44].  The Policy requires covered care to be performed under a Plan of Care [id.].  Plans of Care may or may not have been in place for some of the care insureds received after Defendant cut off their benefits for reaching maximums under the Policy. The Policy also requires pre-authorization for care to be paid at 100% of covered benefits [DE 58-3 at 41-42], the lack of which would result in the payment of only 75% of the submitted charges.  After being cut off, several insureds may not have had care pre-authorized.  Potentially, each Rule 23(b)(3) Settlement Class Member would have had to prove his or her damages under rules of evidence, including medical testimony—a process that could have taken months or years to complete.  And then, each Rule 23(b)(3) Settlement Class Member possibly faced an appeal on his or her individualized damages claim, adding further time to the process.  Whether and to what extent Rule 23(b)(3) Settlement Class Members maintained detailed records of their payments for home care services is also questionable.

13.    "Complex litigation ... 'can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.'" *Lipuma*, 406 F. Supp. 2d at 1323-24 (quoting *Woodward v.*

---

[11] DE 163-5, Jaffe Decl. at ¶ 11.

*NOR-AM Chem. Co.*, No. Civ. 94-0780-CB-C, 1996 WL 1063670, at *21 (S.D. Ala. 1996) (quoting *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992))). Thus, "[s]ettlement will alleviate the need for judicial exploration of these complex subjects, reduce litigation cost, and eliminate the significant risk that individual claimants might recover nothing." *Id.* Based on the uncertainties inherent in pursuing a trial of damages, based on a likely appeal of this case, and based on the delays and complexities presented by the nature of the case especially as relates to proving damages and the elderly class members who may have had to do so, THE COURT FINDS the benefits of the Settlement crafted by the Parties outweigh any benefit possibly gained by continuing litigation.

### Possible Range of Recovery and View of Experienced Counsel

14.     Class Counsel and defense counsel have extensive backgrounds in class litigation and long-term care insurance disputes.[12]  Therefore, "[c]ounsel's conclusions that the Settlement is fair, adequate and reasonable" is entitled to some weight in the Court's decision to approve the Settlement. *See Francisco,* 2008 WL 649124, at *12 (giving "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation") (citations omitted).

---

[12] In its Order granting class certification, the Court found the firms of Farmer, Jaffe, Weissing, Edwards, Fistos & Lehrman, LLP and Steven M. Dunn, P.A. to be adequate representatives of both certified Classes and appointed them Class Counsel [DE 125 at 28-31, 34]. Class Counsel have extensive experience in class and long-term care litigation. www.pathtojustice.com; www.stevendunnlawoffices.com. Along these same lines, Defendant's counsel, Adam Kaiser, is a partner in the international firm, Dewey & LeBoeuf, and he possesses significant class action experience especially in complex commercial and insurance disputes. *See* http://www.deweyleboeuf.com/en/People/K/AdamJKaiser.aspx.

15.     Both Parties believe that the Settlement affords Rule 23(b)(3) Settlement Class Members substantial benefits.   Along these lines, in its order preliminarily approving the Settlement, the Court found that the "Settlement provide[d] significant, concrete benefits to the Rule 23(b)(3) Settlement Class" [DE 165 at 6].  The benefits under the Settlement can be summarized as follows:

16.     *First*, under the Settlement, WNIC agreed to establish a Settlement Fund for Rule 23(b)(3) Settlement Class up to $8,000,000, which comes to roughly $80,000 per eligible insured. *Settlement Agreement*, § VI A.  Each Rule 23(b)(3) Settlement Class Member is provided with two options for receiving compensation: the "Flat Payment Option" or the "Reimbursement Option."

17.     If they select the Reimbursement Option, Rule 23(b)(3) Settlement Class Members can take part in a claims process where they are subject to a lesser burden and standard of proof of their damages than would be required in a court proceeding. *Settlement Agreement* at § VI(B)(4). The Settlement Agreement provides clear procedures that must be followed where the insured is alive or has passed away. *Id.* The Settlement contains a "cure" provision which requires a conference among the Parties in the case of a disputed claim and which allows Rule 23(b)(3) Settlement Class Members to resolve technical deficiencies in their claims submissions. *Id.*, § VI(B)(7). If WNIC believes that a Rule 23(b)(3) Settlement Class Member's claim should not be paid in whole or in part, WNIC and Class Counsel must meet and confer to resolve the claim, and if they cannot do so, a Special Master will resolve the dispute. *Id.*, § VI(B)(7). Decisions of the Special Master are not reviewable by the court or subject to appeal. *Id.*, § VI(B)(7)(ii)(C).

18.     Under the Settlement Agreement, individual Rule 23(b)(3) Settlement Class Members selecting individualized damage awards under the Reimbursement Option need not prove up their damage claims subject to the rules of evidence and rules of discovery. There will be no trial of damages claims, no discovery, and no appeals of individual claims. Rather, Rule 23(b)(3) Settlement Class Members will only have to fill out the Relief Declaration Form and provide documentary evidence of their out-of-pocket expenditures. *See Settlement Agreement*, § VI(B)(4). Within ten days after receiving the form, WNIC must provide a copy to Class Counsel. *Id.* § VI(B)(6). "Defendant and Class Counsel commit and agree to work closely and openly together to ensure that" each claim "is examined in good faith, carefully, thoroughly and fairly." *Id.* WNIC must provide specific reasons for denying any claim, *see id.* § VI(B)(7)(i), and if the Parties cannot resolve any specific claim, then the Special Master will finally resolve it. *Id.*, § VI(B)(7)(ii).

19.     Unlike an actual federal court trial—which each Rule 23(b)(3) Settlement Class Member seeking damages may have faced in some form absent a settlement—the Special Master process, like the claims process itself, is streamlined. There will be no discovery or live witnesses; the Special Master will decide all controversies based solely upon written proofs and arguments. *Id.*, § VI(B)(7)(ii)(2)(B). To avoid having Parties take every case to the Special Master, the prevailing party may be entitled to attorneys' fees. *Id.*, § VI(B)(7)(ii)(2)(C). The Special Master's decision will be binding and not subject to appeal. *Id.*

20.     On the other hand, the Flat Payment Option under the Settlement is what the *Manual for Complex Litigation*, refers to as a "default award... appropriate for those

16

who can establish membership in the class but cannot, or prefer not to, submit detailed claims." Herr, David, *Manual Complex Lit.* § 21.66, p. 332 (4h Ed.). For Rule 23(b)(3) Settlement Class Members selecting this option, the Settlement Agreement provides them with the option of just collecting a flat $10,000 from the Settlement Fund with no more evidence than a valid proof of identity and, if lawful representatives of Rule 23(b)(3) Settlement Class Members elect this option, they only have to provide some evidence of lawful representative status in addition to proof of their identities.

21.     The Settlement Agreement therefore provides Rule 23(b)(3) Settlement Class Members with a significant benefit: they can select to receive a flat payment with no proof of out-of-pocket expenditures or if they wish to be reimbursed, Rule 23(b)(3) Settlement Class Members will be able to use a streamlined, more expeditious claims procedure and be entitled to an equally streamlined adjudicative process if one is needed. Absent such a Settlement, every Rule 23(b)(3) Settlement Class Members would likely have been subject to discovery, an appeal, and some form of evidentiary rules and procedures, all of which may have taken months or years, with uncertain ultimate recoveries.

22.     *Second*, WNIC agrees to pay 85% of all legitimate claims, up to a maximum of $200,000 per claimant, for home health care expenses of those who choose the Reimbursement Option—a percentage which exceeds the actual benefits available under the terms of the Policy. *Settlement Agreement* at § VI(B)(8)(v). Under the Policies, WNIC is required to pay 100% of pre-authorized home health care expenses [DE 58-3 at 41], but only 75% of care that was not pre-authorized [*id.*]. Much of the care Rule 23(b)(3) Settlement Class Members received after being cut off by

WNIC may not have qualified as pre-authorized care, because some may have changed health care providers or for other reasons.   Thus, the 85% amount is a reasonable compromise amount, which provides a level amount provided uniformly to every member of the Rule 23(b)(3) Settlement Class.

23.     *Third*, Rule 23(b)(3) Settlement Class Members were and are not required to pay past premiums, even though they are entitled to reimbursement for past claims in accordance with the Settlement Agreement. Even before final Settlement approval, WNIC agreed to reinstate Rule 23(b)(3) Class Members so they could go back on claim while forgiving them for back premium owed.   For example, if a Rule 23(b)(3) Settlement Class Member submits claims for reimbursement for home health care expenses in 2007, 2008 and 2009, the insured need not pay premium for those three years (which could be over $10,000), even though the insured is obtaining coverage for those three years.  Thus, for those insureds for whom 85% represents a 15% discount, the discount is significantly less when taking into account that the insured is obtaining this retroactive coverage without charge (*i.e.*, without paying premium).     Also, Rule 23(b)(3) Settlement Class Members were given the right to reinstate lapsed policies. *Settlement Agreement*, § VI(B)(8)(vi).  This means that Rule 23(b)(3) Settlement Class Members who were denied claims and then let their Policies lapse by not paying premium became entitled to go back on claim.  The prospective amounts paid by WNIC under the reinstated Policies are not charged against the $8,000,000 Settlement Fund. *Settlement Agreement*, § V(B)(8)(vi).

24.     *Fourth,* in agreeing to the Settlement, WNIC made a number of other significant concessions, including: (i) agreeing not to appeal the class certification

decision, (ii) agreeing not to seek appellate review of any liability determination for the Rule 23(b)(3) Settlement Class; (iii) agreeing not to appeal individual damages determinations; (iv) agreeing to pay *all* costs of a the Special Master and all costs of Settlement administration; (v) agreeing to allow authorized representatives of insureds to file claims on their behalf; (vi) agreeing to use any monies remaining in the Settlement Fund for the future benefit of holders of the Policy at issue; and (vii) agreeing to donate $100,000 to a charity whose mission is to serve the needs of the elderly.[13] *Settlement Agreement*, §§ V(A); VI(B)(5); VI(B)(7)(ii)(1); VI(B)(3)(ii); VI(B)(4)(ii); VI(B)(8)(iv); and XIV(C).

25.     Based on the foregoing, THE COURT FINDS that the Settlement is well within the range of potential recovery and provides substantial, valuable and concrete benefits to Rule 23(b)(3) Settlement Class Members.

### The Substance and Amount of Opposition to the Settlement

26.     "In determining whether a proposed settlement is fair, reasonable and adequate, the reaction of the class is an important factor." *Lipuma*, 406 F.Supp.2d 1298, 1324. No state or federal governmental authority filed objections to the Settlement, which supports the fairness of the Settlement.[14] A low percentage of objections

---

[13] *See generally* 3 Newberg on Class Actions § 10:15 (4th ed.) (Westlaw).

[14] *See* DE 169-1 (listing state and federal authorities served with the Settlement); *see also IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 590 (E.D. Mich. 2006) (granting final approval to proposed class action settlement and noting that "GM issued notice to the appropriate federal and state attorneys general pursuant to [CAFA.] None submitted an objection."); *Access Now, Inc.*, No. 00-14017-CIV, 2002 WL 1162422 (S.D. Fla. May 7, 2002) ("The Court notes that in several recent Title III of the ADA class actions in this district which were similarly noticed, the Department of Justice and several state attorneys general filed objections. This has not been the case in this matter. The fact that no objections have been filed strongly favors approval of the settlement.").

demonstrates the reasonableness of a settlement. *Id.*[15] Conversely, a high percentage of objections indicates that a class action settlement may very well not be fair and reasonable. *Id.*

27.    Here, the Court-approved Notice Program set out a very specific procedure for Rule 23(b)(3) Class Members to file an objection to the proposed Settlement. In response to the Notice Plan, only two objectors filed objections [DE 193; DE 195]. This number is 2 percent of the approximately 106 member Rule 23(b)(3) Settlement Class, which weighs in favor of the Settlement.[16]

28.    *Objector Dankner.* The lack of substance of the objections also weighs in favor of approving the Settlement. The Court has considered the arguments raised by the proportionately small number of objectors, and finds that the objections do not warrant rejecting the proposed Settlement. Indeed, after WNIC responded to Dankner's objection, *see* DE 201, noting that the business records indicated that Dankner was a resident of the state of New York when the Policy was issued and delivered to her and thus was not a "Florida Insured" under the Settlement Agreement, Dankner withdrew her objection [DE 206]. THE COURT THEREFORE FINDS Dankner is not a "Florida

---

[15] *See Cotton*, 559 F.2d at 1331; *Bennett*, 96 F.R.D. at 352-53; *In re Dennis Greenman Sec. Litig.*, 622 F. Supp. 1430, 1442 (S.D. Fla. 1985); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86-87 (2d Cir. 2001); *In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) ("The District Court correctly found that [the small number of objectors] weighed strongly in favor of the Settlement."); *Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (concluding that when "only" 29 members of a 281 person class [i.e., 10% of the class] objected, the response of the class as a whole "strongly favors [the] settlement"); *Cotton*, 559 F.2d at 1333 (settlement approval affirmed despite objections by half of the current employee class); *Elkins v. Equitable Life Ins. of Iowa*, No. CIVA96-296-CIV-7-17B, 1998 WL 133741, at *28 (M.D. Fla. Jan. 27, 1998) ("[t]here have been only six objections received from a Class of approximately 109,000 policy owners, which is a de minimus number" relative to the size of the class).

[16] DE 163-5, Jaffe Decl. at ¶ 11.

Insured" and not a "Rule 23(b)(3) Settlement Class Member" as defined in the Settlement and that her withdrawn objection is no impediment to the settlement.

29. *Objector Karron.* The other objector, Mary Karron, appears to be a Rule 23(b)(3) Settlement Class Member, but her arguments are unconvincing. Karron contends that she never received notice of class certification [DE 195 at 2]. However, WNIC has provided evidence that the class certification notice was mailed to her at her correct address and was not returned.[17] WNIC also states that Karron received a later notice at the same address and took advantage of the Settlement by reinstating her Policy and going back on claim [DE 202 at 3; DE 201 at 17].

30. Otherwise, Karron maintains that the Settlement is "unreasonably vague," claiming that electing between the Reimbursement Option and the Flat Payment Option options is a "speculative gamble" because there is no way for her to determine which option to choose [DE 195 at 6-7]. This criticism is misplaced. Rule 23(b)(3) Settlement Class Members have 30 days to decide which option to take and a full 90 days to gather proofs to support their claims based on the option they choose. If they have significant claims exceeding $10,000 and want to pursue them, they will likely select the Reimbursement Option. Those with smaller claims, or those not wishing to pursue their rights in a claims process, will likely select the Flat Payment Option. This is not confusing. The Settlement provides ample time and information to decide which option to choose.

31. Further, Karron is not required as she suggests, "to accept [$10,000] in settlement of what would otherwise be a [$403,136.15] claim" [*Id.* at 7]. If Karron truly

---

[17] Nemetz Decl. [DE 202].

has such a large claim, she can through the streamlined claims process obtain $200,000 in reimbursement. Karron was sufficiently aware of her options to effectuate the reinstatement of her Policy when it was offered to her as part of the Settlement [DE 201 at 17]; choosing between the two payment options is no more difficult. In fact, for Karron it is easier: if her claims are as significant as she alleges, the Reimbursement Option would seem the wiser choice. Also, because Karron was sent class certification notice, she could have opted out, but chose not to. The notice clearly stated that any class member not opting out could be bound by a settlement of the case.

32.    Karron also attacks the potential fee application by Class Counsel. Class Counsel has now indicated that they will seek a total of $4 million in fees for all work in the case, which they will discuss in a fee application to be filed. This Court will ultimately decide fee-related issues. The Parties' Settlement does not include any agreement on fees or incentive awards. In their Settlement Agreement, the Parties state that they did not negotiate attorney's fees or incentive awards as part of the Settlement and an agreement on attorney's fees and incentive awards was not a pre-condition to their agreeing on the terms of their Settlement. *Settlement Agreement*, §§ VII and VIII. Rule 23(b)(3) Settlement Class Members may choose to object to Class Counsel's fee application. But any disapproval or approval in whole or in part of Class Counsel's fee application or an incentive award payment has no bearing on the fairness and reasonableness of the Parties' Settlement Agreement. Therefore, any objection to Class Counsels' potential fee application is not grounds to derail the Parties' Settlement.

33.    *Reactions of Class Members*. Several Rule 23(b)(3) Settlement Class Members, including Lead Plaintiffs, have expressed support for final approval of the

Settlement.[18]   Rule 23(b)(3) Settlement Class Members (including their attorneys in fact) have specified in declarations that they received notice of the class certification; they have expended substantial money for care out-of-pocket after having their benefits terminated; they in turn received notice of the Settlement; and they find the Settlement fair and request the Court finally approve the Settlement.[19]  They also state particular support for the streamlined claims process, the charitable donation required under the Settlement, the ability to reinstate their Policies, and the option of settling as opposed to going to trial, even if a trial may not have yielded a greater monetary judgment.[20]

34.    Based on the foregoing, THE COURT FINDS that the response of Rule 23(b)(3) Settlement Class Members supports final approval of the Settlement and that the contentions of the two objectors are without merit.

35.    *Relief Forms*.    Under the Settlement Agreement, under the claims administration process, claimants are to submit a Relief Election Form and Relief Declaration Form to make claims from the Settlement Fund. *Settlement Agreement*, VI B 1-4. Lead Plaintiffs filed proposed forms with their Motion [DE 205-2 and DE 205-3].

36.    "Class settlements are rarely self-executing…[c]lass members must usually file claims forms providing details about their claims and other information needed to administer the settlement." Herr, David, *Manual Complex Lit.* § 21.66, p. 331 (4h Ed.). "Verification of claims forms by oath or affirmation under 28 U.S.C. § 1746 [are sometimes] required, and it may be appropriate to require substantiation of the claims (e.g., through invoices, confirmations, or brokers' records)." *Id.*; *see In re*

---

[18] *See* DE 205, Exhibits D-O.

[19] *Id.*

[20] *Id.*

*Phenylpropanolamine (PPA) Products Liability*, 227 F.R.D. 553 (W.D. Wash. 2004) (incorporating extensive settlement claims forms and other materials); *David v. Am. Suzuki Motor Corp.*, No. 08-CV-22278, 2010 WL 1628362 (S.D. Fla. 2010) (DE's 95 at ¶ 12, 103, 104, 107-1 at 87—providing examples of claims forms as part of class settlement).

37.     The COURT FINDS THAT proposed Relief Election Form [DE 205-2] and a Relief Declaration Form [DE 205-3] are part of a streamlined claims process outlined above. In accordance with the Settlement Agreement, they contain various instructions on due dates, contact information for Class Counsel, proofs required and other germane caveats and instructions to simplify and inform the claimant about the claims process as much as practicable. *Settlement Agreement*, V C. They are approved.

38.     *Charitable Donation.* The Settlement requires WNIC to make a $100,000 charitable donation to an organization whose mission is to serve the needs of the elderly.     The Settlement also requires the Parties to propose to the Court for its approval the name(s) of a charity or charities to receive the agreed donation. Settlement Agreement, § XIV C. The Parties have proposed "The Alzheimer's Association." The Court has reviewed the background of this organization and THE COURT FINDS it to be an appropriate recipient of the donation called for under the Settlement.

39.     *Special Master.* "Judges often appoint a claims administrator or special master and describe the duties assigned in the order approving the settlement agreement." Herr, David, *Manual Complex Lit.* § 21.661, p. 332 (4h Ed.). "Duties may include...administering the distribution procedures...reviewing the claims and deciding whether to allow claims that are late, deficient in documentation, or questionable for

other reasons." *Id.* The Settlement Agreement requires the Parties to propose a Special

Master to effectuate the streamline claims process under the Settlement. *Settlement*

*Agreement*, § VI B 7. The Parties propose former Florida Circuit Court Judge David L.

Tobin. THE COURT FINDS Judge Tobin to be an appropriate choice.

Based on the above reasons, it is hereby **ORDERED AND ADJUDGED** as

follows:

1. The Parties' Motions for Final Approval are **GRANTED**.

2. The Court incorporates by reference the definitions set forth in Section II of the Settlement Agreement (DE 163-1). Without limiting the effect of that incorporation, the following terms used in this Final Judgment and Order have the following meanings defined in the Settlement Agreement:

   a. "Class Period" means December 1, 2003, through and including the date the Court enters the Final Judgment.

   b. "Defendant" means Washington National Insurance Company, Successors in Interest to Pioneer Life Insurance Company, and its successors, assigns, employees and agents

   c. "Florida Insureds" means those individuals who were or are named as insureds in Defendant's Policy issued in Florida during the Class Period. An insured need not be currently living in Florida to be a Florida Insured; so long as the Policy was issued in Florida, the Policyholder is deemed to be a Florida Insured and will be bound by the terms of this Settlement.

   d. "Policy" means Defendant's Limited Benefit Home Health Care Coverage Policy bearing form numbers 9311 and 9264 issued to Florida Insureds during the Class Period.

   e. "Released Claims" means each and every claim, causes of action, or other demands of any kind or nature, whether legal or equitable, whether known or unknown, that Lead Plaintiffs or any Rule 23(b)(3) Settlement Class Member (i) asserted against any of the Releasees in the Litigation (including all claims asserted in the original complaint and the First Amended Complaint) or (ii) could have asserted or could assert against any of the Releasees, whether arising under any federal, state, or foreign statutory or common-law rule, in any other court, tribunal, agency, or other forum, that arises out of or relates to the Policy. Without limiting the generality of the foregoing, the term Released Claims includes, without limitation, any claims or unknown claims arising out of or relating to: any or all

of the acts, failures to act, omissions, misrepresentations, facts, events, matters, transactions, statements, occurrences, or oral or written statements or representations of Releasees that have been, could have been, or could be directly or indirectly alleged, complained of, asserted, set forth, or otherwise referred to in the Litigation. The equitable claims and legal claims of the Rule 23(b)(2) Class identified in the First Amended Complaint (DE 30, ¶ 27) as the "Rule 23(b)(2) Class," are not a part of this Settlement Agreement and no equitable claims or legal claims of the Rule 23(b)(2) Class are being settled or released by or in this Settlement Agreement, and WNIC preserves all of it defenses at law and in equity, with respect to any claim or issue, in connection with the claims of the Rule 23(b)(2) class. Nothing in the Final Judgment and Order of Dismissal or this Settlement Agreement shall bar or restrict any action or claim by the Parties to enforce the terms of this Settlement Agreement or the Final Judgment and Order of Dismissal, or any claim or action that may accrue under the Policy after the Effective Date of this Settlement Agreement.

f.   "Released Parties" and "Releasees" mean Defendant and its predecessors, successors, and assigns; the present and former, direct and indirect, parents, subsidiaries, sister corporations, divisions, corporate affiliates, or associates of any of the above; and the present and former members, principals, partners, officers, directors, control persons, employees, agents, attorneys, shareholders, advisors, assigns, and representatives of any of the above.

3. The Court has subject matter jurisdiction of this matter and all claims asserted in this Litigation against the Defendant.

4. The Class Certification Notice and Notice of Settlement given to the Rule 23(b)(3) Class pursuant to the Court's Orders of February 23, 2010 and August 27, 2010 was the best notice practicable under the circumstances. Said forms of notice provided valid, due and sufficient notice of the proposed Settlement and the terms and conditions set forth in the Settlement and of these proceedings to all persons entitled to such notice, and said notice fully satisfies the requirements of the Federal Rules of Civil Procedure, Federal law, and Due Process.

5. The proposed Settlement of this Litigation is in its entirety, and all releases, including its release of all claims on the terms set forth in the Settlement Agreement, are in all respects, fair, reasonable and adequate to the Rule 23(b)(3) Settlement Class and in the best interests of them and should be and hereby are approved. The Parties' proposed Settlement is fair, adequate and reasonable, and not the product of collusion between the Parties or their attorneys. The relief to Rule 23(b)(3) Settlement Class Members constitutes a

substantial, appropriate and ascertainable benefit to Rule 23(b)(3) Settlement Class Members. Thus, the proposed Settlement is GRANTED FINAL APPROVAL.

6. This Final Judgment and Order is binding on all Rule 23(b)(3) Settlement Class Members.

7. Pursuant to Rule 23 of the Federal Rules of Civil Procedure and this Court's Order of Preliminary Approval, THE COURT CERTIFIES for settlement purposes a Rule 23(b)(3) Settlement Class identified in the First Amended Complaint [DE 30, ¶ 27] as the "Rule 23(b)(3) Class" and consisting of: All of Defendant's Florida Insureds who were denied Policy benefits during the Class Period because they reached their Lifetime Maximum and/or Per Occurrence Benefit maximum under the Policy. The Rule 23(b)(3) Settlement Class includes spouses having lawful representative status of Florida Insureds, duly authorized attorneys-in-fact and other legal representatives acting for and on Rule 23(b)(3) Settlement Class Members' behalves. All members of the Rule 23(b)(3) Class who have excluded themselves from this Litigation are excluded from the Rule 23(b)(3) Settlement Class. All federal judges and members of their families within the first degree of consanguinity, and officers and directors of Defendant, are also excluded from the class definition.

8. Sydelle Ruderman, Sylvia Powers, and Kate Kolber ARE APPOINTED AND APPROVED as representatives of the Rule 23(b)(3) Settlement Class.

9. The proposed Relief Election Form and Relief Declaration Form ARE APPROVED.

10. Steven R. Jaffe, Mark S. Fistos, Seth Lehrman, and Steven M. Dunn ARE APPOINTED AND APPROVED as Class Counsel of the Rule 23(b)(3) Settlement Class.

11. THE PARTIES ARE DIRECTED to carry out their obligations under the Settlement forthwith.

12. All objections to the Settlement are **OVERRULED**.

13. Each Released Claim of each member of the Rule 23(b)(3) Settlement Class, whether or not such Rule 23(b)(3) Settlement Class Member makes a Monetary Relief Request under the Settlement , is hereby extinguished as against the Released Parties and Releasees. Lead Plaintiffs and each Rule 23(b)(3) Settlement Class Member shall be deemed conclusively to have compromised, settled, discharged and released the Released Claims against the Released Parties upon the terms and conditions provided in the Settlement.

14. As of the date of this Final Judgment and Order and continuing thereafter, in order to preserve and protect the Court's jurisdiction over the Settlement and its implementation, and to implement the Settlement (including the releases therein), all Rule 23(b)(3) Settlement Class Members, whether or not a Rule 23(b)(3) Settlement Class Member makes a Monetary Relief Request under the Settlement , shall BE AND HEREBY ARE PERMANENTLY BARRED AND ENJOINED from either directly, indirectly, representatively, as a member or on behalf of the general public, or in any other capacity, commencing, prosecuting, participating in any recovery in, continuing or taking any action in any judicial proceeding in any state or federal court or any other judicial or arbitral forum against the Released Parties in the Settlement with respect to any of the Released Claims as defined in the Settlement or any claims arising out of, relating to, or in connection with the defense or resolution of the Released Claims against the Released Persons, except and only to the extent such Rule 23(b)(3) Settlement Class Members are also members of the Rule 23(b)(2) Class identified in the First Amended Complaint (DE 30, ¶ 27) and pursue claims as Rule 23(b)(2) Class Members in the Litigation. Nothing in this Final Judgment and Order is designed to limit or modify any of the releases set forth in the Settlement, the rights or benefits of any Rule 23(b)(3) Settlement Class Member or Class Counsel relating to the Settlement, or the obligations of any Party under the Settlement, all of which are approved in this Final Judgment and Order.

15. Neither this Final Judgment and Order, the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or shall be deemed to be or shall be used as an admission of, or evidence of, the validity of any Released Claims or any wrongdoing by or liability of any Released Parties; (b) is or shall be deemed to be or shall be used as an admission of, or evidence of, any fault or omission of any Released Party in any statement, release or written document or financial report issued, filed or made; (c) shall be offered or received in evidence against the any Released Party in any civil, criminal or administrative action or proceeding in any court, administrative agency arbitral or other tribunal other than such proceedings as may be necessary to consummate or enforce the terms of the Settlement and/or this Final Judgment and Order, except that the Settlement and this Final Judgment and Order  may be filed or referred to in this matter to support a claim in this matter and the Settlement and this Final Judgment and Order may be filed in any subsequent action brought against any Released Party in order to support a defense or counterclaim of any Released Party of res judicata, collateral estoppel, released, accord and satisfaction, payment, good faith settlement, judgment bar or reduction, or any other theory of claim or issue preclusion or similar defense or counterclaim, including without limitation specific enforcement of the settlement embodied in the Settlement by way of injunctive relief.

16. The COURT APPOINTS the Honorable Judge David L. Tobin as the Special Master under the Settlement.  The duties of the Special Master are to

effectuate and implement the terms of the Settlement as set forth in the terms thereof. Defendant shall pay all fees associated with the Special Master under the Settlement.

17. Defendant SHALL MAKE a $100,000 charitable donation to The Alzheimer's Association in accordance with the terms of the Settlement.

18. Without affecting the finality of this Final Judgment and Order in any way, the Court reserves exclusive and continuing jurisdiction over this Litigation, the Lead Plaintiffs, the Rule 23(b)(3) Settlement Class and Defendant for purposes of interpretation, enforcement and implementation of the Settlement Agreement and over the administration and distribution of Settlement benefits and to consider and rule upon any award of attorney's fees and incentive awards requested by Class Counsel.

19. The Clerk of Court is ordered to enter this Final Judgment and Order forthwith.

DONE AND ORDERED in Chambers in Ft. Lauderdale, Broward County, Florida this 12ᵗʰ day of November, 2010.

JAMES I. COHN
UNITED STATES DISTRICT JUDGE