## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

Case No.
### 08-23401-CIV-COHN/ROSENBAUM

SYDELLE RUDERMAN, by and through her
Attorney-in-fact, Bonnie Schwartz, SYLVIA
POWERS, by and through her Attorney-in-
fact, Les Powers, KATE KOLBER, by and
through her Attorney-in-fact, Fred Kolber,
ROBERT SCHWARZ, and BLUMA
SCHWARZ, individually and on behalf of all
others similarly situated,

                          Plaintiffs,

    - against -

WASHINGTON NATIONAL INSURANCE
COMPANY, Successor-in-Interest to Pioneer
Life Insurance Company,

                          Defendant.

_____/

Case No. 08-23401
Judge:  James I. Cohn
Magistrate Judge:  Robin S. Rosenbaum

## DEFENDANT WASHINGTON NATIONAL INSURANCE
## COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

## TABLE OF CONTENTS

PRELIMINARY STATEMENT..............................................................................1

STATEMENT OF FACTS.................................................................................2

ARGUMENT...................................................................................................5

I.     THE LODESTAR AWARD SOUGHT BY CLASS COUNSEL IS EXCESSIVE.........5

      A.     Introduction............................................................................5

      B.     Reasonable Number of Hours..................................................5

      C.     Reasonable Hourly Rate.........................................................9

II.    MR. DUNN'S TIME ENTRIES LACK ANY CREDIBILTY................................12

III.   ATTORNEYS' FEES CANNOT BE AWARDED ON THE BASIS OF A "COMMON BENEFIT" THEORY FOR THE (B)(2) CLASS OR A "COMMON FUND" FOR THE (B)(3) CLASS...................................................................................14

IV.   THE LODESTAR AWARD SHOULD NOT BE ENHANCED............................16

V.    LEAD PLAINTIFFS ARE NOT ENTITLED TO "INCENTIVE AWARDS".............19

VI.   THE COURT SHOULD STAY ITS AWARD OF ATTORNEYS FEES' AND COSTS UNTIL AFTER WNIC'S APPEAL................................................................19

CONCLUSION..............................................................................................21

## PRELIMINARY STATEMENT

Plaintiffs are entitled to a reasonable award of attorneys' fees, calculated simply as the number of hours reasonably spent on the case multiplied by a reasonable hourly rate -- the so-called "lodestar" method.  Class counsel contend that they reasonably spent a whopping 3,779 hours prosecuting this case, and ask this Court to approve an hourly rate of $550, thus producing a lodestar of $2,078,450.  They then ask this Court to basically double the lodestar and award attorneys' fees of $4,000,000.  Class counsel are not entitled to anywhere near that kind of attorneys' fee award in this case.

*First*, the number of hours allegedly spent by class counsel is plainly excessive.  A review of the time sheets submitted by class counsel reveal egregiously false entries for work never performed, the routine duplication of work, with multiple attorneys performing the same task, excessive time entries (including, most outrageously, the routine billing by one attorney of a flat 16 hours per day spent at any meeting or travelling), inefficient billing, and a general lack of billing judgment.  The time entries are in many instances excessively vague, warranting an overall reduction on that basis alone.

*Second*, an hourly rate of $550/hour is unreasonable.  Indeed, a lodestar award based on an hourly rate of $550/hour would set a new record in this state, by a wide margin.  Courts in this district and elsewhere in Florida approve hourly rates for experienced partners at half that amount.  Moreover, $550/hour is a third higher than the fees appearing on class counsel's own invoices.  The hourly rates should be substantially reduced.

*Third*, Plaintiffs are not entitled to a "multiplier."  Multipliers are rare, reserved only for those very difficult cases posing special risks to counsel taking the case.  Here, this was, as Plaintiffs continually argued, a simple case based on a single insurance policy, and the field was plowed by the previous *Gradinger* decision.  There was very little discovery in the case, and it was ultimately decided (for the (b)(2) class) on summary judgment, specifically, on the same exact grounds articulated by this Court in its Order denying the motion to dismiss.  This was not a difficult case for Plaintiffs' counsel.

*Fourth*, Plaintiffs' effort to supplement their attorneys' fee award based on some common fund/benefit approach is difficult to understand.  Plaintiffs cannot under any circumstances be awarded *both* a lodestar award and a common fund/benefit award -- that would

1

be double dipping at its worst. Moreover, the common fund/benefit approach to awarding attorneys' fees is not available to class counsel in this case, as explained below.

*Finally*, the lead plaintiffs are not "entitled" to any "incentive payments." Incentive payments, which are frowned upon in this circuit, are the product of negotiation and agreement. Here, the parties did not agree to any incentive payments, and the law does not allow this Court to simply "award" the named class representatives additional damages.

## STATEMENT OF FACTS

Class counsel contend that this was a complex and difficult case in which an insured was caught in a David and Goliath battle. The facts are otherwise. The groundwork for this case was established long before class counsel filed the initial complaint. The claim asserted here, based on the "automatic benefit increase percentage" in the Policies, was first raised in a complaint filed in a Florida circuit court nearly five years ago. *See Gradinger v. Wash. Nat'l Ins. Co.*, No. 06001019 (Fla. Cir. Ct. filed Jan. 25, 2006) (DE 69-19 at 9–15). The Eleventh Circuit ultimately found that the Policy was ambiguous and remanded the case to the district court with directions to enter judgment in favor of the insured. Thus, long before class counsel were even involved in this matter, the right class counsel sought to enforce for Plaintiffs had already been adjudicated.

Armed with the *Gradinger* decision, lawyers in Florida and even outside of the state went on a crusade to find clients, knowing that there was a substantial probability of success. Lawyers were so eager to find clients that they improperly tried to entice Roy Weinberg, a Florida insurance agent, to reveal a list of clients that possessed the Policies. DE 93 ¶ 8–17. Eventually, one policyholder, Anna Cohen, and her attorney-in-fact were persuaded to bring suit, and it was filed as a putative class action in July 2008. *Cohen v. Wash. Nat'l Ins. Corp.*, No. 08-61153 (S.D. Fla. filed July 22, 2008) (DE 69-21). Shortly after the parties settled, but prior to when the *Cohen* case was dismissed (DE 69-47), class counsel filed the initial complaint in this action (DE 1). Thus, this is the *second* class action complaint in this district filed on these policies.

The original complaint here is nearly identical to the *Cohen* complaint. Other than exchanging the personal information of Anna Cohen for Sydelle Ruderman, the allegations are almost word for word. *Compare* DE 69-21 *with* DE 1. Indeed, the lifting of allegations is so obvious that class counsel erroneously alleged that the withdrawn and null *Gradinger* opinion was attached as Exhibit A, as it was in *Cohen*, but the only document attached to the Complaint

2

was an incomplete copy of Ruderman's Policy.[1]  Class counsel just copied the *Cohen* complaint. Despite that, Mr. Dunn billed over 12 hours of time for "drafting" the complaint, setting the tone for constant over-billing on the case.

WNIC moved to dismiss the complaint, but this Court denied that motion on the basis of the withdrawn *Gradinger* opinion. DE 28.[2]  Twice in its decision this Court ruled that the policy was ambiguous and would be construed in favor of the insureds. As a result, by April 2009, class counsel had effectively obtained all the substantive relief they would eventually need for summary judgment with little to no effort at all. Class counsel recognized this. In his blog, Mr. Dunn wrote on May 11, 2009, shortly after the Court denied the motion to dismiss, "Recently, the court issued a ruling that will require the company to apply the benefits increase to all of the policy benefits." *See* Exh. A. Mr. Dunn recognized *then* that the case was over at the trial court level. Class counsel should have, right then, moved for summary judgment. In fact, class counsel prepared such a motion (Mr. Dunn's billing records show that he prepared a summary judgment motion on June 8, 2009). Had they prevailed—and they would have as evidenced by the later summary judgment order—the case would have effectively been over, as every class member would have benefited from the collateral estoppel effect of that judgment.

But rather than proceeding in such fashion, class counsel embarked on a series of wasteful tactics that contributed nothing to their ultimate success in this case, such as taking the useless deposition of a 30(b)(6) IT designee solely to discuss WNIC's computer systems. Class counsel sought to bill on the case for whatever they could—and then some. For example, class counsel hastily filed an improper motion to compel discovery, DE 36, even though WNIC had repeatedly advised them that additional disclosures would be forthcoming in due course. DE 39. Class counsel then spent hours on a motion that was ultimately, as counsel for WNIC advised prior to its filing, *id.*, resolved amicably without the need for judicial resolution. DE 53. Class counsel also refused to provide the required disclosures and unsuccessfully opposed WNIC's motion to compel, which was granted by the Court. DE 60. WNIC did not move for fees and

---

[1] In fact, class counsel mistakenly alleged that Ruderman's Certificate Schedule contained extra spacing between the limitations and the benefit increase, as was the case in Cohen's policy. Class counsel falsely alleged that WNIC had breached the Policy by failing to increase Ruderman's Lifetime Maximum (the identical allegation filed in *Cohen*) even though Ruderman was only paid benefits up to the Per Occurrence Maximum.

[2] WNIC prevailed on its motion to stay discovery pending the motion to dismiss, DE 27, and the Court noted that Plaintiff provided no analysis or substantive argument for denying the motion to stay; despite this, class counsel are seeking attorneys' fees for hours opposing the motion.

costs, as it was entitled to under Fed. R. Civ. P. 37(a)(5), but now *class counsel* seeks an award for their unsuccessful efforts. *See, e.g.*, DE 216-1 at 32–34. Finally, although Plaintiffs were granted class certification, class counsel spent a large amount of time opposing intervention, which they should not have opposed. All of these unfruitful efforts should not be rewarded by the Court.

Class counsel did not judiciously expend a large amount of resources in discovery, either. Far from being complex, as class counsel contends, the discovery in this case was minimal. All of it occurred between four months from May to August 2008, and related mostly to class certification. In total, only a meager 7802 pages of documents were exchanged in discovery. *See* Declaration of Jeffrey J. Amato in Opposition to Plaintiffs' Motion For Attorneys' Fees ("Amato Decl.") ¶¶ 2–3. The most laborious part of discovery appears to be the slipshod manner in which Plaintiffs provided their required disclosures, as they amended and supplemented them no less than five times. *See* DE 69 ¶¶ 2–12.

Depositions were severely limited. The parties participated in five half-day (or less than half-day) depositions. *See* DE 58-2 at 2, 141, 155 (Brock Hargett 9:05 am to 12:36 pm); DE 69-17 at 2 (Bonnie Schwartz 1:03 pm to 4:09 pm); DE 69-18 at 2 (Leslie Powers 9:33 am to 12:15 pm and 12:48 pm to 1:54 pm); DE 89-4 at 2 (Roy Weinberg 9:35 am to 12:50 pm); DE 89-5 at 2, 3, 4 (Dawn Helwig 9:22 am to approximately 11:30 am). Following class certification, class counsel sought to take additional unnecessary discovery, in the form of additional document requests, interrogatories, and another burdensome 30(b)(6) deposition of WNIC. Amato Decl. ¶ 4. However, such efforts were entirely unnecessary, as WNIC notified class counsel, because the Court had already ruled that additional evidence was inadmissible. Incredibly, although this second 30(b)(6) deposition *never* occurred, Mr. Dunn seeks fees for the time he supposedly spent at the deposition. In any event, despite the clear signals from the Court, class counsel continued to look for ways to gin up more unnecessary work to pad their legal fee application. Thus, class counsel's cry that this was a complex matter that required five partners to toil night after night to prosecute rings hollow.

## ARGUMENT

## I.   THE LODESTAR AWARD SOUGHT BY CLASS COUNSEL IS EXCESSIVE

**A.   Introduction.**   Absent a reversal of the summary judgment order, class counsel are entitled to an award of attorneys' fees under FLA. STAT. § 627.428. That statute "directs that the prevailing insured be awarded a 'reasonable' attorneys' fee. Florida has adopted the federal lodestar approach as the foundation for setting reasonable fee awards." *Ottaviano v. Nautilus Ins. Co.*, 717 F. Supp. 2d 1259, 1264 (M.D. Fla. 2010) (citation omitted). It is well-settled that attorneys' fees awards under § 627.428 *must* be calculated using the lodestar method.[3] "This method requires the court to determine a 'lodestar figure' by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate for the services of the prevailing party's attorney." *Ottaviano*. 717 F. Supp. 2d at 1264. "The fee applicant bears the burden of presenting satisfactory evidence to establish that the requested rate is in accord with the prevailing market rate and that the hours are reasonable." *Id.*

**A.   Reasonable Number of Hours.**   Attorneys are required to use "billing judgment" to ensure that fees are appropriate given the amount at issue, and also because "a court must deduct 'excessive, redundant or otherwise unnecessary hours' from those claimed." *See Fox v. The Marquis Corp.*, No. 08-81264, 2010 WL 1010871, at *3 (S.D. Fla. Mar. 15, 2010) (citations

---

[3] *See Gonzalez v. Cooperativa De Seguros Multiples De Puerto Rico, Inc.*, No. 8:08-cv-1910-T-30TGW, 2010 WL 2367221, at *1 (M.D. Fla. June 14, 2010) (citing *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1146 (Fla. 1985) (noting that "[u]nder fee shifting statutes like section 627.428 of the Florida Statutes, Florida courts have adopted the federal 'lodestar' approach for calculating the appropriate amount of attorneys' fees owed to the prevailing party."); *Gimenez v. Am. Sec. Ins. Co.*, 8:08-cv-2495-T-24-TGW, 2009 WL 2256088, at *2 (M.D. Fla. July 28, 2009) (same); *Jin Zhi Star Lt. LLC v. Am. Zurich Ins. Co.*, No. 08-61191, 2009 WL 2899913, at *5 (S.D. Fla. Sept. 9, 2009) (stating unequivocally that Florida courts "use the federal 'lodestar' method to determine reasonable attorney's fees under § 627.428"); *Alea London, Ltd. v. Sea Garden Hospitality Mgmt., Inc.*, No. 6:06-cv-1683-Orl-22UAM, 2008 WL 89807, at *2 (M.D. Fla. Jan. 7, 2008) ("The Court is to apply Florida law to determine the amount of fees to be awarded under Fla. Stat. § 627.428, and the lodestar model is the appropriate method to determine the amount of fees and costs."); *Dunworth v. Tower Hill Preferred Ins. Co.*, No. 05-14019, 2006 WL 889424, at *1 (S.D. Fla. Feb. 14, 2006) (recognizing that Florida has adopted the lodestar approach for assessing the reasonableness of fee awards "[w]here a claim for attorney fees arises from a state statute, such as § 627.428"); *see also Perdue v. Kenny A.*, 130 S. Ct. 1662 (2010) (finding lodestar calculation appropriate in class action lawsuit where fee-shifting statute provided for attorneys' fees and fund is created); *Tam Su v. Elec. Arts, Inc.*, No. 6:05-cv-131-Orl-28JGG, 2007 U.S. Dist. LEXIS 72961, at *9-10, 14-15 (M.D. Fla. Aug. 29, 2007) (noting that in fee-shifting cases, the lodestar is the appropriate method for calculating attorneys' fees even where settlement fund is created); *Howard v. Globe Life Ins. Co.*, 973 F. Supp. 1412, 1420 (N.D. Fla. 1996) (finding lodestar is the correct method for calculating attorneys' fees in class action case against an insurer).

omitted); Local Rule 7.3(a)(6). "Counsel is expected, of course, to claim only those hours that he could properly bill to his client." *Ottaviano*, 717 F. Supp. 2d at 1265.   Attorneys must maintain complete time records to enable opposing counsel and the Court to meaningfully review the claimed fee.[4]  If a fee applicant fails to exercise good billing judgment:

> courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are 'excessive, redundant, or otherwise unnecessary.' Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded.

*ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (citation omitted).

This Court's billing judgment analysis can account for the "novelty and difficulty" factor of reasonable fees awards.  *Rowe*, 472 So. 2d at 1150.  In this regard, class counsel have correctly characterized their position in the case as being

> simple . . . . It boils down to the interpretation of standardized insurance policy provisions affording three benefits . . . and a dispute as to whether or not only one of them or are [sic] all of them [are] subject to an 8 % annual increase called for under an insurance policy.

DE 33 at 2.

Courts will reduce the number of hours claimed by counsel where the hours were excessive or redundant.[5] *Ottaviano*, 717 F. Supp. 2d at 1265.  Class counsel's time entries reveal scores of instances of redundant billing.  Multiple attorneys routinely performed the same task. Indeed, counsels' time records reveal that "discussion with group" -- which consisted of four partners -- was a routine billing entry.  It was patently unreasonable to have multiple partners vet with each other every little issue in the case, as is clear occurred from the time records they submit.

---

[4] *Blue Water Marine Servs., Inc. v. M/Y Natalita III*, No. 08-20739, 2010 WL 1330265, at *7 (S.D. Fla. Feb. 2, 2010) (attorneys should "maintain contemporaneous, complete and standardized time records which reflect the work done by each attorney" and "[i]f there is inadequate documentation" to support a fee request, "the Court may reduce the number of hours for which fees will be awarded"); *Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (noting that "[a] well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case").

[5] The Court's reasonable number of hours inquiry can proceed as either an hour-by-hour analysis of the requested hours, or by resort to an across-the-board percentage reduction, if necessary. *Bivins v. Wrap It Up, Inc.* 548 F.3d 1348, 1351-52 (11th Cir. 2008); *see also Barnes*, 168 F.3d at 429 (lodestar jurisprudence contemplates "a task-by-task examination of the hours billed"); *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994).

Counsel sent multiple attorneys to each of the five depositions in the case (Mr. Dunn seeks over 40 hours of time for traveling to Chicago to watch Mr. Jaffe take a 2-hour deposition of no consequence). Class counsel unreasonably sent three partners to every settlement meeting (defense counsel sent only two). The time records are replete with hundreds of internal conference calls and meeting to discuss the most mundane issues like a *pro hac* vice motion, responding to a request for an extension of time from defense counsel, and the like. Counsel is not permitted to seek fees for such redundant work unless there is a "distinct contribution of each lawyer." *Norman*, 836 F.2d at 1301-02; *see also Sandin v. United Collection Bureau, Inc.*, No. 08-61087, 2009 WL 2500408, at *4 (S.D. Fla. Aug. 14, 2009) (reducing hours when two attorneys both billed for the same conversation with client). The fee award should be pared down to eliminate counsels' excesses and redundancies.

There are also scores of instances of inefficient and excessive billing, *i.e.*, where an inordinate amount of time is spent on simple tasks, and the time ought to be substantially reduced or eliminated as well. There are also numerous instances where there are billing entries for simple clerical tasks (like Mr. Dunn billing 12 hours to prepare a spread sheet of checks). Those time entries should be disregarded.[6]

What is more, the time sheets are remarkable in that they reveal that *no associates* worked on the case. There were certainly plenty of associates at RRA who could have performed legal research and writing, drafted and responded to discovery, reviewed documents, etc.. But class counsel had everything done by senior partners, which is absurd. Class counsel cannot charge a partner's rate for work that ought to have been done by an associate or paralegal.[7] As a comparison, WNIC's counsel staffed this case with only two partners, Dan Koleos and Adam Kaiser; the vast bulk of the legal work was performed, appropriately, by associates of varying levels suitable to the tasks they were asked to perform. If certain of class counsel functioned as associates or even paralegals on the case (like Mr. Dunn spending 12 hours

---

[6] *Norman*, 836 F.2d at 1306 ("[A] fee applicant is not entitled to compensation at an attorney's rate [for] tasks which were mundane, clerical, or which did not require the full exercise of an attorney's education and judgment."); *see also Fox*, 2010 WL 1010871, at *5 (hours spent by partner searching online database to identify a property's prior owner and litigation history was held unreasonable because a paralegal should have done that work).

[7] *Tiramisu Int'l LLC v. Clever Imp. LLC*, No. 08-60685, 2010 WL 3199718, at *14 (S.D. Fla. Aug. 11, 2010) (partners would be reimbursed at associate rates for tasks that do "not require complex legal analysis or strategy" such as preparing a scheduling report, reviewing discovery responses, and drafting discovery motions).

allegedly preparing a spread sheet of 30 checks) then they should be compensated as associates or paralegals, not partners. In addition, Plaintiffs seek reimbursement for several areas where they should not receive any fees:

> **(1) Class counsel are not allowed to recover fees for discovery and scheduling motions *they lost.*** *Norman*, 836 F.2d at 1302; *Niebuhr v. K.F.A. Enters., Inc.*, No. 09-22840, 2010 WL 5439762, at *8 (S.D. Fla. Dec. 28, 2010) (eliminating time entries because the plaintiff's "motion was unsuccessful"). Here, WNIC was constrained to file a discovery motion to compel Plaintiffs to produce their medical records. The time Plaintiffs spent litigating against WNIC's successful discovery motion should be excluded because they lost that motion and, in fact, WNIC was entitled to fees under Rule 37(a)(4). In addition, WNIC was constrained to file motions to stay discovery and to amend the scheduling order, which Plaintiffs unsuccessfully opposed, thus Plaintiffs should not receive fees for this time.

> **(2) Class counsel should not receive fees from defendant incurred in connection with the intervention motion.** The Florida statute permits fees for obtaining coverage, not for fights among class counsel and intervenors' counsel. Moreover, class counsel opposed that motion and lost, and the intervenors ultimately became their clients.

> **(3) As a matter of law class counsel should not receive attorneys' fees for time spent preparing their attorneys' fees motion.** Under Florida law, where, as here, the defendant does not dispute plaintiffs' *entitlement* to fees,[8] but only the *amount* of fees, plaintiffs may not receive attorneys' fees for time spent bringing a motion for attorneys' fees.[9]

In addition, there are hundreds of time entries that are so vague it is impossible to discern what was done, or whether a reasonable amount of time was spent on the task at issue. The Court may reduce a fee award by a blanket percentage amount to account for a lack of

---

[8] WNIC has previously conceded class counsel's entitlement to attorneys' fees. *See* Transcript of Hearing held on 10/13/10 at 7 (Tr 7: 1-3 Kaiser: "Just to be clear about this, Your Honor, the defendant is not disputing that the plaintiffs have a legitimate application for attorneys fees"); Tr. 28: 3-4 Fistos: "Defense counsel admitted to us that the class members are entitled to their fees.").

[9] *McMahan v. Toto*, 311 F.3d 1077, 1085-86 (11th Cir. 2002); *Jablonski v. St. Paul Fire & Marine Ins. Co.*, No. 2:07-cv-00386, 2010 WL 1417063, at *7 (M.D. Fla. Apr. 7, 2010) (citing *State Farm Fire & Cas. Co. v. Palma*, 629 So. 2d 830, 833 (Fla. 1993)); *Wendel v. USAA Cas. Ins. Co.*, No. 8:08-CV-536-T-23EAJ, 2009 WL 1971451, at *4 (M.D. Fla. July 8, 2009) ("§ 627.428 does not permit an award of attorneys' fees for time spent litigating the amount of the fees"); *Schafler v. Fairway Park Condo. Ass'n*, 324 F. Supp. 2d 1302, 1313 n.3 (S.D. Fla. 2004) ("[A]ttorneys are not entitled to an award of attorney's fees for time spent litigating the amount of the fee."); *Seminole Cnty. v. Boyle Inv. Co.*, 719 So. 2d 1004, 1004 (Fla. 5th DCA 1998) (trial court erred by awarding expert witness fees for experts who testified about the amount of attorneys' fees to be awarded).

specificity.[10] WNIC provides two separate lists of time entries that represent excessive, redundant, inefficient or vague time entries. One list is attached to the declaration of Douglas M. McIntosh, WNIC's expert, and another (related to Mr. Dunn only) is attached to this Brief at Exhibit B. Based on these analyses, WNIC respectfully request that the number of hours be reduced from the 3,779 hours class counsel claim they spent on this case, to the number of reasonable hours as set forth in Mr. McIntosh's declaration submitted herewith .

**B.** **Reasonable Hourly Rate.** Class counsel bear the "burden of establishing the prevailing 'market rate,' *i.e.*, the rate charged in [the] community by lawyers of reasonably comparable skill, experience and reputation, for similar services." *Rowe*, 472 So. 2d at 1151. Class counsel contend that they are entitled to compensation at $550/hour. That is a staggering hourly rate, much higher than has ever been awarded in any reported decision in Florida. Class counsel provide no basis for such a high hourly rate. Courts often look at the fee applicant's customary billing rate for hourly fee-paying clients, *see Dillard v. City of Greensboro*, 213 F.3d 1347, 1354-55 (11th Cir. 2000), but class counsel have not provided any evidence whatsoever as to rates actually charged to and paid by their clients who pay hourly. Courts also look at evidence of rates actually charged by comparable attorneys doing similar work, *see Norman*, 836 F.2d at 1299, but here too class counsel have decided not to offer any evidence. Significantly, "satisfactory evidence [of reasonable hourly rates] necessarily must speak to rates actually billed and paid in similar lawsuits." *Luken v. Int'l Yacht Council, Ltd.*, No. 02-60772, 2009 WL 1706534, at *12 (S.D. Fla. June 11, 2009). Here, class counsel offer no evidence of what other insureds have paid their attorneys in similar insurance coverage disputes.

Of course, this Court by law is an "expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman*, 836 F. 2d at 1303. In this regard, courts often look at hourly rates awarded by other courts. Typically, for partners in

---

[10] *Ottaviano*, 717 F. Supp. 2d at 1265 ("Inadequate documentation may result in a reduction in the number of hours claimed, as will a claim for hours that the court finds to be excessive or unnecessary"); *Conner v. BCC Fin. Mgmt. Servs., Inc.*, 597 F. Supp. 2d 1299, 1311 (S.D. Fla. 2008); *Loranger*, 10 F.3d at 783; *Blue Water*, 2010 WL 1330265 at * 9 (20% reduction of all hours based on insufficiently detailed time entries).

Florida, courts award hourly rates in the range of $225-$375, depending on the skill of the lawyer, the complexity of the case, and other factors.[11]

The hourly rate in this case must reflect what other attorneys in the community charge for insurance coverage litigation.[12] In *Ottaviano*, 717 F. Supp. 2d at 1268-69, another "straightforward case of conflicting interpretations of policy language," *id.* at 1270, two counsel (each with 20-25 years legal experience) in an insurance coverage dispute sought an hourly rate of $400. The court, in reviewing what other attorneys routinely charge in insurance cases, awarded an hourly rate of $275. *Id.* at 1269. As noted by the court, "I have reserved hourly rates in the $300-$400 range for the most skilled attorneys litigating complex cases. Although Wells and Pilka clearly possess substantial legal experience, their requested hourly rates are unreasonable under the circumstances of this case." *Id.* at 1270.

The unreasonableness of a requested hourly rate of $550/hour becomes palpable in comparing this case to *Tiramisu*, 2010 WL 3199718. There, very senior intellectual property lawyers from a top international law firm sought hourly rates of up to $675/hour. *Id.* at *13. The case was extremely complex, and plaintiff was represented by senior lawyers at McDermott Will & Emery from Chicago and Miami. The court summarily dismissed such claims and lowered the highest hourly rate to $425/hour. *Id.* at *13-*14. With all due respect to class counsel, they are not entitled to the same fee as the top intellectual property lawyers at a major international law firm, especially given how much simpler the case at bar was as compared to *Tiramisu*.

The reasonable hourly rates are set forth in the McIntosh Declaration submitted herewith. Class counsel have not submitted any evidence to justify a higher rate.[13] Class counsel have not

---

[11] *Dunworth*, 2006 WL 889424, at *4 (finding insufficient evidence of rates actually charged by the applicant, the court substituted the rate it "regularly awards" based on its own "competence"); *see Fox*, 2010 WL 1010871, at *3 ($295-$325/hour for senior partners); *Conner*, 597 F. Supp. 2d at 1310-11 (S.D. Fla. 2008) ($185/hour to $275/hour); *Gonzalez v. Akal Sec., Inc.*, No. 8:08-cv-2270-T-TBM, 2010 WL 2557688, at *2 (M.D. Fla. June 22, 2010) ($300-$325/hour for senior partners); *Ottaviano*, 717 F. Supp. 2d 1269 ($275/hour); *Wendel*, 2009 WL 1971451, at *2 ($315/hour).

[12] Plaintiffs' counsel seems to suggest that they are entitled to a higher hourly rate because a class was certified. Our research has not revealed any cases, however—and Plaintiffs cite none—that permit escalation of the hourly rate based on the fact that the case was brought as a class action.

[13] Notably, the rates sought by class counsel are much higher than the rates appearing on their own billing records. Class counsel listed their hourly rates in 2009 as $500/hour for Mr. Jaffe; $450/hour for Mr. Fistos; and $400 for Mr. Lehrman. In 2010, when they left RRA to form their own firm, Mr. Jaffe raised his rate by $50/hour, while Mr. Fistos raised his rate by a whopping $100/hour. Class counsel do not explain why they should be paid up to $150/hour more than the rates they listed on their own invoices. *See Luken*, 2009 WL 1706534, at *14 (stating that attorneys should not seek more than their

even sought to establish different hourly rates for different attorneys—they just ask for $550/hour *for everyone*. To support their hourly rate, counsel ignore the relevant market for insurance coverage cases and relies almost exclusively on two "expert" declarations. But those declarations miss the mark and provide no useful evidence. Mr. Zebersky does not say that *anyone* in this jurisdiction has *ever* been paid an hourly rate of $550/hour (or anything close to that) for prosecuting an insurance coverage case. Rather, Mr. Zebersky spends most of his analysis praising the legal work by class counsel, but his paid opinion testimony is uninformed. He ignores the fact that this case was a "me too" action filed on the heels of *Gradinger* and *Cohen*, and that the case was actually very simple (as class counsel repeatedly said).[14]

Professor Miller's declaration is also of no use. He does not even understand the case, or the settlement.[15] Professor Miller also ignores the Florida fee-shifting statute and analyzes this case as if it were a contingency fee case. He forgets that "[t]he lodestar method does not permit the translation of contingent fee percentages into hourly rates." *Fla. Birth-Related Neurological Injury Comp. Ass'n v. Carreras*, 633 So. 2d 1103, 1109 (Fla. 3d DCA 1994). Moreover, it is unclear why Professor Miller is relying upon a 1996 study of settled securities class actions, where the attorneys' fees were agreed to as part of a settlement. Miller Decl., ¶¶ 23-25.[16]

---

actual billing rate). And equally important, class counsel do not contend that anyone has ever paid them these rates for similar cases.

[14] Mr. Zebersky is factually wrong when he concludes that "[t]he case involved exceptional motion practice and briefing, extensive pre-trial discovery . . . and required time-consuming and extensive research and advocacy." Zebersky Decl., ¶ 9(b). In fact, the case involved very few motions, very limited discovery, revolved around one sentence in a short insurance Policy, and was ultimately summarily resolved by the trial court on the basis of the *Gradinger* opinion.

[15] He says, for example, that the (b)(3) class received an "$8 million cash award" and refers to that as an "outstanding result," (Miller Decl., ¶ 17), but that is false. There is no "$8 million cash award." Under the Settlement Agreement, WNIC need only pay claims "up to" $8 million. WNIC may wind up paying half that amount, or even less. What's more, Mr. Miller cannot possibly opine that the result is "outstanding" because no one knows what the result will be. If there are $20 million dollars in claims made, the $8 million cap will represent a victory for WNIC and a defeat for the class.

[16] Professor Miller says "Defendant adopted a 'scorched earth' strategy throughout this litigation." Miller Decl., ¶ 37. That is ludicrous. Defendant took two depositions in the case, both very short ones of the two plaintiffs. This was hardly a contentious case.

## II.    MR. DUNN'S TIME ENTRIES LACK ANY CREDIBILTY

Steven Dunn's "time records" are especially alarming. They are extremely vague and in many instances there is just no way to tell what he was doing, or why he was doing it. But that's just the tip of the iceberg. There are two problems with Mr. Dunn's "time records" that warrant special attention by this Court.

**Vast Overbilling.** Mr. Dunn constantly bills for meetings with co-counsel that co-counsel's more detailed records reveal never took place, or were much shorter. For example:

- In Entry 741 (Exh. B), Mr. Dunn bills 8 hours for a meeting with Mr. Jaffe which according to his records never took place;

- In Entries 39-41, Mr. Dunn bills 6 hours (one 4 hour entry and two 1 hour entries) for a meeting with Mr. Jaffe, but his records show that the meeting never took place;

- In Entry 85, Mr. Dunn bills 90 minutes for a meeting with Mr. Fistos which according to his records never took place;

- In Entry 297, Mr. Dunn bills 2 hours for a call with Mr. Fistos which according to his records never took place;

- In Entry 358, Mr. Dunn bills 2 hours for a call with Mr. Fistos which according to his records never took place;

- In Entry 380, Mr. Dunn bills 2 hours for a call with Mr. Fistos which according to his records never took place;

- In Entries 529-530, Mr. Dunn bills more than 2 hours for calls with other plaintiffs' counsel which according to their records never took place;

- In Entry 696, Mr. Dunn bills 3 hours for a meeting with Mr. Jaffe which according to his records never took place; and

- In Entry 80, Mr. Dunn bills 2 hours for a meeting Mr. Jaffe says lasted 30 minutes.

This goes on and on. And unfortunately, it gets worse from there. In addition to billing large amounts of time for fictional meetings and phone calls, Mr. Dunn billed for court appearances and depositions *that never happened* (*e.g.*, Entries 225, 226, 536-538, 619-621). He also routinely bills far in excess of the events underlying the time entry (for example, billing a full day for a deposition that lasted a few hours; billing twice what Mr. Fistos or Mr. Jaffe billed for an event; and billing 16 hours for travel when they billed 8 hours). Some entries are especially egregious. For example:

- On October 31, 2010, when the case was essentially over, Mr. Dunn bills over *22 hours*, including an alleged 8 hour meeting with the client, and two entries of 10 and 4 hours to allegedly draft form declarations he previously drafted to support the final approval of the settlement against a single meritless objection;

- Mr. Dunn claims to have worked more than *20 hours* on January 11, 2010, 15 hours of which was allegedly spent on looking at the patent-latent issue, which the Court had *already resolved* in the previous class cert order;

- In Entries 167, 170 and 172, Mr. Dunn bills six hours for a meet and confer over three days, when the records of other counsel show that the meet and confer actually occurred on a single day and lasted only an hour;

- In Entries 192, 253 and 287, Mr. Dunn bills 12 hours for creating a spread sheet of 30 checks. This is clerical work, and it is unlikely any attorney would do this work or need so much time to do it;

- In Entry 375, Mr. Dunn bills 16 hours for a deposition which Mr. Jaffe took and lasted 2 hours;

- On September 10, 2010, Mr. Dunn bills 4 hours for a court conference that lasted 5 minutes. Mr. Lehrman from Mr. Jaffe's firm billed only 30 minutes for the conference.

**Fictional Entries Generated By Software.** Mr. Dunn apparently uses a computer system that generates fictional time entries in two separate ways. *First*, Mr. Dunn's computer system automatically assigns time entries to every tickler on Mr. Dunn's calendar. For example, if there was a calendar entry for a pleading being due, or for any date in the scheduling order (*e.g.*, jury instructions due), Mr. Dunn's computer would generate a time entry in either 10 minute, 30 minute or 1 hour increments -- and that is so even though *no work* is being performed. There are literally dozens upon dozens of such entries in Mr. Dunn's billing entries.[17]  These fictional entries must be stricken.

*Second*, Mr. Dunn's computer system is designed to add time entries by assigning 10 minute, 30 minute or 1 hour entries in each line of text of a single time entry. As an example, Entries 44-46 are actually a single "tickler" entry noting that Judge King entered an order allowing two attorneys to appear *pro hac vice*. The entry is long (because it copies the Pacer text) and takes up three lines, so the computer adds a time entry to each line of text, resulting in two 1-hour entries and one 10 minute entry for this single entry (presumably, only the 10 minute entry was intended). Putting aside that it takes less than a minute to look at a *pro hac* order, the computer, by first assigning any entry for this tickler and then providing an entry for each line of text, turns this into a 2 hour 10 minute event. This happens again and again. As another

---

[17] Thus, for example, on January 8, 2009, Mr. Dunn bills an hour for "Def's Ans to our complaint is due today." *See* Exh. B, Entry 29. The due date for the answer was extended to February 9, 2009, so Mr. Dunn's computer generated a ten minute entry on that day for the new due date. *Id.*, Entry 52. Mr. Dunn's computer even generated time entries for calendar dates under Judge King's long abandoned case management order. *Id.*, Entries 436-437 (billing 10 and 30 minutes for submitting jury instructions under Judge King's order and for "Calendar Call w/Jd. King" -- which did not take place).

example, Entries 172-177 contain six separate time entries (one for 2 hours, and five for 30 minutes), for a single calendar reminder. There are dozens upon dozens of these computer-generated, fictionalized time entries, all of which appear in orange highlight on Exhibit B.

There is no possible way Mr. Dunn spent the number of hours on this case he claims to have -- and it appears he didn't. WNIC urges the Court to carefully review the Exhibit B hereto which highlights many of the problems with Mr. Dunn's "records."

## III. ATTORNEYS' FEES CANNOT BE AWARDED ON THE BASIS OF A "COMMON BENEFIT" THEORY FOR THE (B)(2) CLASS OR A "COMMON FUND" FOR THE (B)(3) CLASS

Class counsel ask that, *in addition to the lodestar award,* they be awarded millions of dollars in fees based on a "common benefit" or "common fund" approach.[18] Class counsel cite not a single case, because there are none, where an attorney was awarded a reasonable attorney fee under the lodestar method *and* a reasonable attorney fee under some other approach. And that is clearly not allowable. *See, e.g., Dikeman v. Progressive Express Ins. Co.,* 312 Fed. Appx. 168, 172 (11th Cir. 2008). Under settled law, *only* the lodestar method can be used to determine attorneys' fees under Fla. Stat. § 627.428, even where a settlement is reached and a common fund is created.[19] And what is particularly galling here, frankly, is that class counsel are seeking a staggering $2 million in fees under the lodestar approach (based on highly inflated hours and rates), and *another $2 million* in fees under the common benefit/fund doctrines. No law allows such blatant double-dipping.[20]

Putting aside that class counsel's double-dip efforts should be rejected out of hand, under no scenario could they be entitled to a fee award under any common fund or common benefit

---

[18] In common fund cases where attorneys' fees are awarded as a percentage of the common fund, the attorneys' fees are taken out of the common fund so that the class action plaintiffs pay for the attorneys' fees from their damages award. The defendants do not pay for the attorneys' fees. *Camden I Condominium Ass'n v. Dunkle,* 946 F.2d 768, 771 (11th Cir. 1991). "[A] key element of the common fund case is that fees are not assessed against the unsuccessful litigant (fee shifting), but rather, are taken from the fund or damage recovery (fee spreading)." Id. at 774 (emphasis added); *see also, Leonard v. Enter. Rent a Car,* 279 F.3d 967, 974 (11th Cir. 2002) ("The common fund doctrine . . . authorizes the trial court to deduct reasonable attorneys' fees from the damages recovered from the defendant"). Indeed, Plaintiffs' acknowledge as much in their brief. DE 214 at 6 (in common fund cases attorneys' fees are "spread[] . . . proportionately among those benefited by the suit") (citation omitted).

[19] *See supra,* n.3.

[20] It is critical to note that nearly *all* the work performed by class counsel was for both classes, with the exception of the Settlement Agreement for the (b)(3) class and the motion for summary judgment for the (b)(2) class. Hence, awarding class counsel both a common fund *and* a lodestar award would be allowing a double recovery of fees under any scenario.

theory, and not just because the law requires using the lodestar method here. Critically, *there is no $8,000,000 common fund.* The (b)(3) Settlement Agreement, at Sec. VI(A), states that WNIC "shall designate the total sum of ***up to*** $8,000,000 (the 'Settlement Fund') to resolve all claims of Rule 23(b)(3) Settlement Class Members." DE 163-1 at 19 (emphasis added). The Settlement Fund, therefore, is not $8,000,000. It is an amount equal to claims made under the agreement, "up to" $8,000,000. $8,000,000 is, in fact, a *cap* on the total amount of damages WNIC will have to pay to the class. If WNIC needs to only pay $1 million to settle claims because few class members submit valid claims, the "Settlement Fund" will be $1 million. The notion that there exists a "fund" of $8,000,000 out of which the Court can simply dip into to pay a fee award is totally contrary to the Settlement Agreement.

As for the (b)(2) class, class counsel are not entitled to attorneys' fees under any "common benefit" theory. Again, the law is clear that the lodestar method must be used under this fee-shifting statute.[21] What is more, the law is clear that a common benefit approach is impermissible where the value of the (b)(2) relief to the class cannot be demonstrated with mathematical precision[22] Here, it is inherently unknowable, as set forth in the Declaration of Darrell Knapp submitted herewith, and thus the lodestar approach should be applied.[23] Additionally, class counsel make no proposal for how the (b)(2) class members would pay for any fee award based on the common benefit theory; but it is class members, not WNIC, who must pay the attorneys' fees in that scenario. *See, e.g., Strube,* 2006 U.S. Dist. LEXIS 28582, at

---

[21] *See supra,* n.3.

[22] *See, e.g., Staton v. Boeing Co.,* 327 F.3d 938, 973-74 (9th Cir. 2003) (declining to apply common benefit approach where the injunctive award did not yield "an undisputed and mathematically ascertainable" amount for each class member, and that the "the true cost of the injunction to the defendant —and the true benefit to the plaintiff class – [was] a matter of speculation and may be far less than $ 3.65 million" estimated and holding that "only in the unusual instance where the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained may courts include such relief as part of the value of a common fund for purposes of applying the percentage method of determining fees"); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 821 (3d Cir. 1995); *Boeing Co. v. Van Gemert,* 444 U.S. 472, 479 (1980) (noting that in common fund cases, "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf").

[23] *See, e.g., In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 821-22 (3d Cir. 1995) (the lodestar method is preferred "where the difficulty of valuing injunctive relief complicates the calculation of a fee using the percentage method") (citations omitted).

*2-3; *Kenny A. ex rel. Winn v. Perdue*, 454 F.Supp.2d 1260, 1272 (N.D. Ga. 2006), *aff'd in part and rev'd on other grounds* 532 F.3d 1209 (11th Cir. 2008) (quotation omitted).[24]

In any event, as a matter of law because the (b)(2) class members may have a statutory right to recover attorneys' fees (so long as their claim is not reversed on appeal), a lodestar approach must apply.[25] This is especially true in light of the inherently speculative nature of the (b)(2) class relief, and the fact that nearly all of the work for both classes was identical for class counsel. Notably, under settled law, a lodestar calculation can be used both for fee-shifting *and* common fund cases.[26] In other words, even where a common fund approach applies, courts may, and often do, calculate the fee award using the lodestar method, as opposed to a simple percentage of the fund approach. All arrows point to using the lodestar method in this case.

## IV. THE LODESTAR AWARD SHOULD NOT BE ENHANCED

Class counsel ask that the lodestar figure be enhanced by a multiplier of almost 2. As the Supreme Court stated in the recent case of *Perdue v. Kenny A.*, 130 S. Ct. 1662 (2010), a case Plaintiffs ignore, a multiplier is permitted only in the most "extraordinary," "rare," and "exceptional" circumstances, and "there is a strong presumption that the lodestar is sufficient." *Id.* at 1673. *Perdue* and other federal cases apply here because federal courts in Florida "use the federal 'lodestar' method to determine reasonable attorneys' fees even in a diversity case governed by Florida law." *Marlite v. Eckenrod*, No. 09-22607-C, 2011 WL 31095, at *3 (S.D.

---

[24] Moreover, this case is not one of the special subset of cases to which the common benefit doctrine applies, as when the defendant and beneficiaries share an identity of interests. "Such a recovery has generally been permitted in only two types of cases: suits by shareholders against their corporations and suits by union members against their union. In such cases, fees are paid by the defendant, because it is the alter ego of the beneficiaries who would otherwise be unjustly enriched by the suit." *Perdue*, 454 F.Supp.2d at 1272 (citations and quotations omitted).

[25] *See, e.g., Perdue v. Kenny A.*, 130 S. Ct. 1662 (2010) (finding lodestar calculation appropriate in class action lawsuit where fee-shifting statute provided for attorneys' fees); *Camden I Condominium Ass', Inc.n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("The lodestar analysis [is] the applicable method used for determining statutory fee-shifting awards"); *Tam Su v. Elec. Arts, Inc.*, No. 6:05-cv-131-Orl-28JGG, 2007 U.S. Dist. LEXIS 72961, at *9-10, 14-15 (M.D. Fla. Aug. 29, 2007) (noting that in fee-shifting cases, the lodestar is the appropriate method for calculating attorneys' fees); *Howard v. Globe Life Ins. Co.*, 973 F. Supp. 1412, 1420 (N.D. Fla. 1996) (finding lodestar is the correct method for calculating attorneys' fees in class action case against an insurer); *Perez v. Asurion Corp.*, No. 06-20734, 2007 WL 2591180, at *2 (S.D. Fla. Sept. 6, 2007) ("Payment of fees based on the lodestar method is also sensible as a policy matter" where state statute allows for fee-shifting).

[26] *See, e.g.,Nelson v. Wakulla County*, 985 So. 2d 564, 574 (Fla. 1st DCA 2008) (citing *Kuhnlein* and finding that the "determination of attorneys' fees should be made based on a reasonable 'lodestar' method"); *Homer & Bonner, P.A. v. Miami-Dade County*, 884 So. 2d 425, 427 (Fla. 3d DCA 2004) (finding that the lodestar method is the correct method to calculate attorneys' fees in a common fund case); *Dikeman*, 312 Fed. Appx. at 172.

Fla. Jan. 5, 2011) (collecting cases).[27] *Perdue* was recently applied by a federal court in Florida to reject a multiplier under the same statute at issue here. *Ottaviano*, 717 F. Supp. 2d at 1271-1272 & n.12. In short, multipliers are rare.[28] A multiplier is not warranted here. This was not a difficult or complex case involving huge hurdles to recovery -- the type of extraordinary and rare case where a multiplier might seem reasonable. A fee-shifting statute's purpose is to enforce the law, "not to provide 'a form of economic relief to improve the financial lot of attorneys.'" *Perdue*, 130 S. Ct. at 1673 (citation omitted); *see also Allstate Indem. Co. v. Hicks*, 880 So. 2d 772, 774 (Fla. 5th DCA 2004) ("An award of attorney's fees under a fee-shifting statute isn't a prize to the winning lawyer. . . . There is a 'strong presumption' that an attorney's fee award may not exceed [the lodestar]"). Awarding class counsel a multiplier in the present circumstances is not justified and would amount to a windfall for class counsel.

---

[27] Moreover, the Florida Supreme Court has adopted the federal lodestar as the method to be used in calculating attorneys' fees pursuant to state fee-shifting statutes. *See, e.g., Bell v. U.S.B. Acquisition Co.*, 734 So. 2d 403, 406 (Fla. 1999) (federal lodestar approach is used by Florida courts in determining reasonable attorneys' fees); *Standard Guar. Ins. Co. v. Quanstrom*, 555 So. 2d 828, 829 (Fla. 1990); *Florida Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150 (Fla. 1985); *see also Ottaviano v. Nautilus Ins. Co.*, 717 F. Supp. 2d 1259, 1271-72 & n.12 (M.D. Fla. 2010) (noting that *Perdue's* holding applies to this type of case because "Florida [has] adopted the federal lodestar method for determining a reasonable attorneys' fee"); *Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1373-74 (M.D. Fla. 2010) (citing *Rowe* and noting that although "a federal court must apply state law . . . to resolve disputes about the reasonableness of fees . . . [t]he Florida Supreme Court . . . has turned the law full circle by adopting the federal lodestar method, rather than a state rule, to determine what constitutes 'reasonable' attorney's fees"); *Bush v. Raytheon Co.*, No.: 8:07-cv-02087-T-24-AEP, 2010 U.S. Dist. LEXIS 51283, at *4-5 (M.D. Fla. May 21, 2010) (noting that "[a]lthough this Court applied Florida law to determine it would award Raytheon attorney's fees as the prevailing party under Florida Statute § 448.104, it applies the federal lodestar method to calculate the amount of reasonable fees"); *Dunworth*, 2006 WL 889424 ( "[t]he State of Florida has adopted the federal lodestar formula for assessing a reasonable fee award").

[28] *See also, Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) (upward adjustment of the lodestar justified only in a "rare and exceptional case"); *Chacon v. El Milagro Care Ctr., Inc.*, No. 07-22835, 2010 U.S. Dist. LEXIS 89085, at *16-18 (S.D. Fla. July 28, 2010) (noting that "the Supreme Court has found that the lodestar 'product is presumed to be the reasonable fee to which counsel is entitled' . . . [f]urther, this presumption is a strong one" and "[a]lthough upward adjustments of the lodestar figure are still permissible, such modifications are proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts") (quoting *Del. Valley*, 478 U.S. at 563 and *Perdue*, 130 S. Ct. at 1662); *Hicks*, 880 So. 2d at 774 ("The statute [section 627.428] is intended to allow the court to award a reasonable attorney's fee for a successful action under an insurance contract, not two or three times a reasonable fee, except in rare instances") (citations omitted).

17

The fee applicant has the burden of proving, by specific evidence, that a multiplier is necessary. *Perdue*, 130 S. Ct. at 1673; *Ottaviano*, 717 F. Supp. 2d at 1272.[29] "Before adjusting for risk assumption, there should be evidence in the record, and the trial court should so find, that without risk enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or relevant market." *Sun Bank of Ocala v. Ford*, 564 So. 2d 1078, 1079 (Fla. 1990) (quoting *Del. Valley*, 478 U.S. at 731).[30] To the contrary, however, the record here reveals that counsel was lining up to take this case. After *Gradinger*, Lee Weiss, Esq., a New York class action lawyer filed the *Anna Cohen* class action, and Mr. Weiss was so enthusiastic about this case that he tried to intervene in this suit after going through extraordinary efforts to find four additional plaintiffs, who were allowed to intervene. Far from being a daunting case, this case was very attractive to the plaintiffs' bar (indeed *this* case was a "me too" action filed on the heels of *Cohen*). Class counsel have failed to satisfy their burden to show with specificity that Plaintiffs would not have been able to retain counsel without a multiplier award.[31] In fact, had Ms. Cohen not passed away during the pendency of her suit, the named representatives in this case would have been part of the *Cohen* class action, a fact which completely dooms the argument that plaintiffs would have had difficulty finding counsel.

Class counsel also allege that the fact that they took the case on a contingency-fee basis supports their request for a multiplier. DE 124 at 9, 16. However, the fact that class counsel took the case on a contingency fee basis does not justify a multiplier – if it did, multipliers would

---

[29] *See also Gray v. Bostic*, 613 F.3d 1035, 1046 (11th Cir. 2010) (reversing multiplier award when "[t]here [was] no evidence in the record to support the [the multiplier award], and there [was] no apparent reason why the court chose fifteen percent instead of twelve percent or ten percent or some other enhancement rate"); *United States v. Fifty-Nine Thousand Dollars ($59,000.00) in United States Currency*, No. 06-60573, 2010 U.S. Dist. LEXIS 91910, at *8-9 (S.D. Fla. Aug. 12, 2010) (Cohn, J.) ("The party seeking an adjustment to the lodestar bears the burden of proving that such an adjustment is necessary to the determination of a reasonable fee"); *Dunworth*, 2006 WL 889424 at 3 ("Plaintiffs must . . . demonstrate how [a multiplier] is warranted").

[30] *See also Perdue*, 130 S. Ct. at 1674 (fee applicant must present "specific evidence that the lodestar fee would not have been adequate to attract local counsel"); *Bell*, 734 So. 2d at 409, 412 (noting that "the critical factor for [a] court to consider in deciding whether to apply a multiplier [is] the party's difficulty in finding counsel without risk-enhancement"); *Quanstrom*, 555 So. 2d at 834.

[31] *See, e.g., Ottaviano*, 717 F. Supp. 2d at 1272-73 (finding that contention that competent counsel could not have been obtained without the prospect of a multiplier must be supported by "probative evidence" in order for a multiplier to be awarded); *Dunworth*, 2006 WL 889424 (finding that because "this Court sees no indication that the Plaintiffs faced any difficulty in finding legal representation" a multiplier was not warranted); *Jones v. Minnesota Mut. Life Ins. Co.*, 759 So. 2d 723, 725 (Fla. 4th DCA 2000) ("a multiplier is properly rejected where [a] trial court [finds] that . . . the relevant market [does] not require a multiplier to obtain competent counsel").

not be reserved for rare and exceptional cases, as the Supreme Court recently held. *See, e.g.,* *Perdue*, 130 S. Ct. at 1662 (finding that "the [district] court's reliance on the contingency of the outcome [to award a multiplier] contravenes our [prior] holding").[32] And, although class counsel vaguely allege that "these types of cases carry a significant risk of nonpayment," DE 214 at 10, they neglect to give specifics about why this particular case carried a significant risk of nonpayment greater than other cases. In fact, in this case, the risk of nonpayment was manageable, and certainly less than in other cases, especially given the prior *Gradinger* decision.

## V.    LEAD PLAINTIFFS ARE NOT ENTITLED TO "INCENTIVE AWARDS"

There is no "right" for a named class representative to receive any "incentive award." Rather, incentive fees are creatures of settlement agreements (though they remain subject to court approval). Moreover, even where the parties agree to incentive awards, courts are reluctant to approve them because (i) they are not authorized by statute or court rule and (ii) they raise troubling ethical issues.[33]  Plaintiffs have cited no case, and we are not aware of any, where a court "awarded" an incentive fee payment that was not agreed to by the defendant as part of an overall settlement.

## VI.   THE COURT SHOULD STAY ITS AWARD OF ATTORNEYS FEES' AND COSTS UNTIL AFTER WNIC'S APPEAL

As this Court has noted, WNIC has well-researched and persuasive arguments that the Policy should not be strictly construed against it in favor of the Plaintiffs. DE 171 at 6. WNIC has appealed the Court's order granting summary judgment for the (b)(2) Class, and it is currently pending. Given the strength of its arguments, there is a substantial likelihood that WNIC will succeed in obtaining a reversal in the Eleventh Circuit. And, notably, because Plaintiffs did not contest the extrinsic evidence that the Court found irrelevant in construing the

---

[32] *See also Ottaviano*, 717 F. Supp. 2d at, 1274 ("the existence of a contingent fee agreement does not mandate the application of a multiplier . . . [i]f it did, the use of a multiplier would not be limited to the 'rare' and 'exceptional' case"); *Zunde v. Int'l Paper Co.*, 3:98-cv-439-J-20B, 2000 U.S. Dist. LEXIS 14754 at 9-10 (M.D. Fla. July 20, 2000) ( "the prevailing party [does] not 'automatically qualify to receive a contingency multiplier simply because its attorney provided representation on a . . . contingent fee basis'" and "[t]he prevailing party's difficulty in locating counsel without risk enhancement [is] the critical factor") (quoting *Sun Bank*, 564 So. 2d 1078); *Quanstrom*, 555 So. 2d at 830 (finding that fact of contingency fee agreement does not necessitate a multiplier).

[33] *See generally, Homles v. Continental Can Co.*, 706 F.2d 1144, 1148-50 (11th Cir. 1983); *In re Carbon Dioxide Antitrust Litigation*, No. 940, 1996 WL 523534, at *6 (M.D. Fla. July 15, 1996) ("Participating in some discovery or lending a name to the class action is not a sufficient basis for awarding incentive payments and also raises serious questions about the fiduciary nature of the named plaintiffs as class representatives ...").

ambiguity in the Policy, if WNIC obtains reversal on appeal, the (b)(2) Class will need to be decertified (and summary judgment in favor of WNIC may be granted). If this occurs, class counsel would not be entitled to any fees related to their work on the (b)(2) class. In light of this uncertainty, it is prudent for this Court to stay its award of attorneys' fees until the appeal is resolved. *Morris v. Ariz. Bev. Co. LLC*, No. 03-60907 CV, 2005 WL 5544958, at \*1 (S.D. Fla. July 26, 2005) (staying award of fees until resolution of appeal).

Moreover, a reversal would not just affect which categories of hours this Court may award class counsel, but also alter the entire analysis of whether fees are allowed. The (b)(3) Settlement Agreement contains, in clear and unambiguous terms, a limit on the total amount of WNIC has to pay to the (b)(3) class of up to $8 million. If that amount is exhausted, WNIC has no further obligation to pay anything else to the (b)(3) class because of the broad release contained in the Settlement Agreement. In addition, if any of the $8 million remains after claims, the Settlement Agreement is clear that it shall revert to WNIC. Because, as Plaintiffs admit, DE 214 at 4–5, the insured, and not the attorney, are entitled to any fees awarded under § 627.428, *Morrison*, 228 F.3d at 1267–68, the Settlement Agreement may very well preclude an award of attorneys' fees.[34] As these issues are not before the Court, given the existence of the (b)(2) class and the overlap among members in both classes, it is unnecessary for this Court to address these issues at this time, but they reinforce the reasons why any award is subject to uncertainty and should not be made until all appeals have been resolved.

[*signature follows on next page*]

---

[34] The Settlement Agreement contains a carve-out for Named Plaintiffs and class counsel to seek an award of attorneys' fees, but not the class or class members. DE 163-1 at 29. Thus, the (b)(3) class and class members may be precluded from an award of fees made as part of their damages.

Case No. 08-23401-CIV-COHN/ ROSENBAUM

## CONCLUSION

For the foregoing reasons WNIC respectfully requests this Court grant plaintiffs attorneys' fees in the amount set forth in the McIntosh declaration but stay such order granting fees until the appeal is resolved.

Dated:  January 14, 2011

Respectfully submitted,

KOLEOS ROSENBERG P.A.

By:

DANIEL J. KOLEOS
Florida Bar No.: 516325
AmTrust Bank Building
8211 W. Broward Blvd., Suite PH4
Fort Lauderdale, FL  33324
Telephone: (954) 474-9929
Facsimile: (954) 474-9959

DEWEY & LeBOEUF LLP
Adam J. Kaiser (admitted *pro hac vice*)
Jeffrey J. Amato (admitted *pro hac vice*)
1301 Avenue of the Americas
New York, NY  10019-6092
Telephone: (212) 259-8000
Facsimile: (212) 259-6333

*Attorneys for Defendant Washington National Insurance Company*

21

Case No. 08-23401-CIV-COHN/ ROSENBAUM

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing was sent via ECF and U.S. mail this 14th day of January, 2011 to:

Steven M. Dunn, P.A.
1135 Kane Concourse, 5th Floor
Bay Harbor Island, FL 33154
(305) 868-1400

Steven R. Jaffe
Mark S. Fistos
Farmer, Jaffe, Weissing, Edwards, Fistos & Lehman, PL
425 N. Andrews Ave., Suite 2
Ft. Lauderdale, FL 33301
(954) 524-2820

Richard J. Lantinberg
Wilner Hartley & Metcalf, P.A.
444 E. Duval Street
Jacksonville, FL 32202

Lee A. Weiss
Brown Wood George LLP
1 Liberty Plaza, Suite 2329
New York, New York 10006
(212) 354-4901

David H. Charlip, Esq.
Charlip Law Group, LC
AVENTURA BAYVIEW
17501 Biscayne Blvd. Suite 510
Aventura, FL 33160

KOLEOS ROSENBERG P.A.
AmTrust Bank Building
8211 W. Broward Blvd., Suite PH4
Fort Lauderdale, FL 33324
Telephone: (954) 474-9929
Facsimile: (954) 474-9959

By:

DANIEL J. KOLEOS
Florida Bar No.: 516325