UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 08-23401-CIV-COHN/SNOW

SYDELLE RUDERMAN,
by and through her Attorney-in-fact, Bonnie Schwartz,
and SYLVIA POWERS,
by and through her Attorney-in-fact, Les Powers,
individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

WASHINGTON NATIONAL INSURANCE COMPANY,
Successor-in-Interest to Pioneer Life Insurance Company,

Defendant.

_____/

## ORDER GRANTING IN PART MOTION FOR AN AWARD OF FEES

**THIS CAUSE** is before the Court upon Plaintiff's Motion for an Award of

(i) Attorneys' Fees and Expenses and (ii) Incentive Awards to Class Representatives [DE

214] ("Motion for Award of Fees"), Defendant's Responses [DE's 230; 231], and Plaintiff's

Reply [DE 245].  The Court has carefully considered the filings, the oral argument of

counsel, and is otherwise fully advised in the premises.

### I. BACKGROUND

This case is a class action on behalf of all citizens of Florida who purchased a

Limited Benefit Home Health Care Coverage Policy ("Policy") from Pioneer Life Insurance

Company ("Pioneer Life") in the state of Florida where either: (a) Washington National

Insurance Company ("WNIC") has rejected all or a portion of a claim on the Policy due to

the Lifetime Maximum Benefit amount, the Per Occurrence Benefit amount, or both,

having been reached; or (b) the Policy was in effect at the time of the filing of this action.

The Policies issued to plaintiffs, under the heading "Benefits," provide as follows:

> HOME HEALTH CARE: We will pay 100% of the usual and customary charges for Home Health Care expenses if the care was pre-authorized.  If the care was not pre-authorized we will pay 75% of the usual and customary charges for Home Health Care expenses incurred, up to 75% of the Daily Benefit Amount shown in the schedule.  These benefits will be paid up to the Home Health Care Daily Benefit shown in the schedule.  All benefits will be limited to the Per Occurrence Maximum Benefit Amount for ALL injuries and sicknesses which are shown in the certificate schedule.

DE 30 ¶ 11.[1]  Each of the three benefits in the Certificate Schedule (i.e., the Home Health

Care Daily Benefit, the Lifetime Maximum Benefit Amount, and the Per Occurrence

Maximum Benefit) are subject to a maximum dollar amount (i.e., per day, per lifetime, per

---

[1]    The subsequent paragraphs then state the following:

**B. AUTOMATIC DAILY BENEFIT INCREASE**: On each policy anniversary, we will increase the Home Health Care Daily Benefit payable under this policy by the Automatic Benefit Increase Percentage shown on the schedule page.

. . .

**E. PER OCCURRENCE MAXIMUM BENEFIT**: No further benefits will be payable for a sickness or injury when the total sum of Home Health Care or Adult Day Care benefits paid for that occurrence equals the amount shown in the schedule for the Per Occurrence Maximum Benefit. Successive confinement due to the same or related cause not separated by at least 6 months of normal daily living will be considered as the same occurrence.

**F. LIFETIME MAXIMUM BENEFIT**: This coverage shall terminate and no further benefits will be payable when the total sum of Home Health Care or Adult Day Care benefits paid equals the amount shown in the schedule for the Lifetime Maximum Benefit Amount.  Any premium paid for a period after termination will be refunded.

occurrence).[2]  The Certificate Schedule also contains an "Automatic Benefit Increase

Percentage and states that "Benefits increase by 8% each year."  Id.  The Policy does not

state that the 8% Automatic Benefit Increase applies only to the Daily Benefit Amount.

Defendant, however, applied the 8% increase only to the Daily Benefit.

Plaintiff Ruderman filed her initial class action complaint ("Complaint") on

December 9, 2008.  The Complaint contained only a damages claim for breach of

contract.  WNIC filed a motion to dismiss on February 9, 2009.  The Court denied the

Motion to Dismiss and on April 28, 2009, plaintiffs filed an amended complaint ("FAC")

which alleged that the action was brought pursuant to Rule 23(b)(2) and (3).  The FAC,

however, contained only two causes of action: a damages claim for breach of contract and

a claim for injunctive relief.  WNIC filed its answer to the FAC on May 12, 2009.

Thereafter, Plaintiffs filed a motion for class certification on July 15, 2009.  Plaintiffs

sought to represent two groups: 1) a Rule 23(b)(2) class defined as "[a]ll of Defendant's

Florida Insureds who currently have a Policy in effect ("Rule 23(b)(2) Class")[;]" and

2) a Rule 23(b)(3) class defined as "[a]ll of Defendant's Florida Insureds who were denied

Policy benefits during the Class Period because they reached their Lifetime Maximum

---

[2]        The Certificate Schedule states as follows:

CERTIFICATE SCHEDULE

| | |
|---|---|
| HOME HEALTH CARE DAILY BENEFIT | $ 180 / Day |
| LIFETIME MAXIMUM BENEFIT AMOUNT | $ 250,000 |
| PER OCCURRENCE MAXIMUM BENEFIT | $ 150,000 / Illness |
| AUTOMATIC BENEFIT INCREASE PERCENTAGE | Benefits increase by 8% each year |

and/or Per Occurrence Maximum benefit under the Policy ("Rule 23(b)(3) Class")."[3]

Plaintiffs also sought to be appointed as class representatives and to have their counsel appointed as class counsel.

On January 5, 2010, the Court entered its Order Granting Motion to Intervene and Granting Motion for Class Certification [DE 125].  Thereafter, the parties settled the Rule 23(b)(3) Class and the Court granted plaintiffs' motion for summary judgment on behalf of themselves and the Rule 23(b)(2) Class.  See DE's 171, 212.  Plaintiffs now move for an award of attorneys' fees and expenses, as well as incentive awards to class representatives.

Class Counsel[4] seek $4,000,000.00 in attorneys' fees and $66,560.00 in costs. Furthermore, Class Counsel request that the Court

> [o]rder that Defendant pay attorney's fees to Class Counsel pursuant to § 627.428(1), Fla. Stat., and to the extent such award does not fully cover the requested amount of $4,000,000, order that any difference be paid from the Settlement Fund in accordance with the common-fund/benefit doctrine, Florida law, and the prevailing market methodology for attorney's fees; provided, however, that the difference be paid from the Settlement Fund only if after all Rule 23(b)(3) Settlement Class Member claims are made there remains any money left in the Settlement Fund[.]

Motion at 2.  Class Counsel also request that the Court award $50,000 to Lead Plaintiff Ruderman and $50,000 to Lead Plaintiff Powers.

---

[3]      "Florida Insureds" is defined in the Motion for Class Certification as individuals named as insureds in Defendant's Policy or the attorneys in fact for such individuals, where the insured individuals currently reside in Florida and their Policy was issued to them in Florida.  The "Class Period" runs from December 1, 2003 to the present.

[4]      The Court appointed two firms, Farmer, Jaffe, Weissing, Edward, Fistos & Lehrman P.L. and Steven M. Dunn, P.A., as Class Counsel.

Defendant recognizes that "Plaintiffs are entitled to a reasonable award of attorneys' fees." DE 231 at 3. Defendant, however, asserts that the Court should calculate the fee "simply as the number of hours reasonably spent on the case multiplied by a reasonable hourly rate – the so-called 'lodestar' method." Id. Defendant further asserts that the number of hours claimed by Class Counsel and the hourly rate sought by Class Counsel are both excessive. Specifically, Defendant submits that

> [a] review of the time sheets submitted by class counsel reveal egregiously false entries for work never performed, the routine duplication of work, with multiple attorneys performing the same task, excessive time entries (including, most outrageously, the routine billing by one attorney of a flat 16 hours per day spent at any meeting or traveling), inefficient billing, and a general lack of billing judgment.

DE 231 at 3. Defendant also submits that Class Counsel's proposed rate of $550.00 per hour is unreasonable. Furthermore, Defendant contends that the common fund/benefit approach to awarding attorneys' fees is not available to Class Counsel. Id. at 4. Defendant also objects to any incentive payments for the lead plaintiffs. Id. Lastly, Defendant asks the Court to stay an attorneys' fee award pending Defendant's appeal of the Court's order granting plaintiffs' motion for summary judgment on the Rule 23(b)(2) Class.

## II. DISCUSSION

Florida Statutes § 627.428 awards fees to an insured who recovers benefits under an insurance contract.[5] Class Counsel contend that they spent 3,780 hours prosecuting this case and ask the Court to approve an hourly rate of $550 per hour. Notwithstanding,

---

[5] In this diversity action, Florida law controls the resolution of the substantive state law components of this fee motion. Ins. Co. of N. Am. v. Lexow, 937 F.2d 569, 571-73 (11th Cir. 1991).

according to Class Counsel, "the presence of a fee-shifting statute does not preclude the application or examination of the common-fund doctrine which stems from the Court's equity jurisdiction."  Motion at 5.  Class Counsel, therefore, seek $4 million in fees predicated upon the benefit they achieved for Class Members.

According to Class Counsel, the benefit they achieved for Class Members is worth between $30 million and $34 million.  Specifically, Class Counsel obtained up to $8 million for the 23(b)(3) Class.  Class Counsel also obtained injunctive relief for the 23(b)(2) Class that Class Counsel's expert values between $21.95 million and $26.21 million.  Because $4 million constitutes between 11.8% and 13.3% of the estimated total value of the relief obtained for Class Members, Class Counsel contend that an award of $4 million in attorneys' fees constitutes a reasonable award.

Defendant, however, argues that the common-fund or common-benefit approach is not appropriate here.  According to Defendant, Class Counsel is entitled to an award of attorneys' fees based only on a lodestar approach.  Regardless, Class Counsel provide no authority for their professed entitlement to an award of fees based on **both** the lodestar method **and** the common benefit doctrine.  The Court, therefore, must determine the most appropriate method to determine Class Counsel's fee award.[6]

---

[6]    Because subject matter jurisdiction in this case is predicated on diversity, the attorney's fee issue is somewhat complicated.  Defendant contends that the Court must look to Florida law to determine the appropriate attorney's fee because a Florida statute provides entitlement to fees in this case.  See Underwriters v. Weisberg, 222 F.3d 1309, 1311-12 (11th Cir. 2000) ("By applying Fla. Stat. § 627.428 in federal court, we have obviously viewed the statute as substantive law for *Erie* purposes.").  However, as discussed more fully below, in a class action case, the Court may award an attorney's fee to class counsel pursuant to the common benefit doctrine which arises not from state substantive law, but from the Court's inherent powers of equity.  Thus, both federal law and Florida law inform the Court's analysis here.

"Whether the district court uses the lodestar or the common-fund method, the district court should apply the twelve factors listed in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir.1974), <u>abrogated on other grounds by</u> <u>Blanchard v. Bergeron</u>, 489 U.S. 87 (1989), to determine the appropriate statutory fee or the percentage to be utilized." <u>Dikeman v. Progressive Exp. Ins. Co.</u>, 312 Fed. App'x 168, 172 (11th Cir. 2008).  The twelve Johnson factors are (1) the time and labor required to prosecute the suit; (2) the novelty and difficulty of the legal questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[7]   <u>Johnson</u>, 488 F.2d at 718-19.

(1) The time and labor required to prosecute the suit.  Class Counsel spent a great deal of time and labor to prosecute this case.  As noted above, Class Counsel logged nearly four thousand hours to litigate this matter.  As discussed more fully below, Defendant disputes the number of hours that Class Counsel billed on this matter, but even if the Court reduces the number of hours, the number is still significant.

---

[7]      Rule 4-1.5 of the Rules Regulating the Florida Bar sets forth the factors the Court should consider when establishing a lodestar amount under Florida law.  <u>See</u> <u>Standard Guar. Ins. Co. v. Quanstrom</u>, 555 So. 2d 828, 831 (Fla. 1990).  Nonetheless, almost all of the <u>Johnson</u> factors are set forth in Rule 4-1.5.  Thus, the Court finds the <u>Johnson</u> opinion instructive here.

(2) The novelty and difficulty of the legal questions.  The novelty and difficulty of the legal questions in this case militate against a large fee.  The groundwork for this case was established by other lawyers before Class Counsel filed the Complaint in this case.  Indeed, the claim asserted here, based on the "automatic benefit increase percentage" in the Policy, was first raised in a complaint filed in a Florida circuit court on January 25, 2006.  See Notice of Removal at 8, Gradinger v. Wash Nat'l Ins. Co., No. 06-CV-60227-JIC (S.D. Fla. Jan. 25, 2006).  The Eleventh Circuit ultimately found that the Policy was ambiguous and remanded the case to the district court with directions to enter judgment in favor of the insured.[8]  Thus, as Defendant submits in its Response, "long before [Class Counsel] were even involved in this matter, the right [Class Counsel] sought to enforce for Plaintiffs had already been adjudicated."  Response at 2.  Defendant's position is well-founded.  The Court relied on Gradinger in both the Order Granting Motion to Intervene and Granting Motion for Class Certification [DE 125] and the Order Granting Motion for Summary Judgment [DE 171].  Indeed, the Court found that Gradinger disposed of the critical issues in this case.  See DE's 125, 171.  Consequently, even though Defendant vigorously litigated this case, Class Counsel did not encounter novel and difficult issues of law.

(3) The skill requisite to perform the legal service properly.  This case required Class Counsel to exercise skill to prosecute this case.  Defendant has been, and

---

[8]     The Eleventh Circuit has withdrawn its opinion in Gradinger because of a settlement the parties reached subsequent to the entry of the opinion.  Nonetheless, a "logical and well-reasoned decision, despite vacatur, is always persuasive authority, regardless of its district of origin or its ability to bind."  Gutter v. E.I. Dupont De Nemours & Co., No. 95-2152-CIV-GOLD, 2001 WL 36086589, at *6 (S.D. Fla. March 26, 2001).

8

continues to be, very well represented in this matter.  Even though the Eleventh Circuit had already resolved the dispositive issues, Defendant conceded little, if anything, in this case and consistently presented compelling arguments.  Stated differently, Defendant required Class Counsel to exercise skill in this matter.

 (4) The preclusion of other employment by the attorney due to acceptance of the case.  Class Counsel have not submitted evidence that their representation here precluded them in whole or in part from accepting other cases or working on other matters. It stands to reason that Class Counsel could not work on two matters at the exact same time, but it appears Class Counsel litigated other cases during the same time period that this case proceeded.  Accordingly, this factor militates against a large fee.

 (5) The customary fee.  Class Counsel submit expert testimony that $550 per hour is a reasonable rate "given the market for legal services in South Florida."  DE 214-5. Class Counsel further submit that the requested hourly rate is the "usual and customary" hourly rate that they charge for their services in similar complex class action litigation. One of Class Counsel's experts, Edward Zebersky, asserts that an exhibit to his original declaration "specifically referred to an attached billing rate chart, which depicts general rates for bankruptcy, commercial litigation and other types of civil legal services including federal and state filings."  DE 252 at 6-7.  The exhibit to the original declaration was a newspaper article.  The Court places little value in this hearsay evidence as it provides no indication as to what type of work the billing rates are associated with, what degree of experience the respective attorneys have, or what the listed firms charge within the local market.  See 252-1 at 3.  Moreover, the article contains no information whatsoever that would allow the Court to make a comparison between Class Counsel and the firms on the

9

chart.  Indeed, most, if not all, of the firms on the list do defense work which Class

Counsel contend is not an appropriate comparator.

Defendant asserts that Class Counsel "have not provided any evidence whatsoever

as to rates actually charged to and paid by their clients who pay hourly."  DE 231 at 11.

Likewise, Defendant asserts that Class Counsel has failed to offer "evidence of rates

actually charged by comparable attorneys doing similar work."  Id.  Moreover, Class

Counsel "offer no evidence of what other insureds have paid their attorneys in similar

insurance coverage disputes."  Id.

(6) Whether the fee is fixed or contingent.  Here, the fee is contingent.  In this

particular case, however, the contingent fee component of the case does not necessarily

lead to the conclusion that Class Counsel deserve a higher fee.  As noted above, Class

Counsel knew they had, at worst, a reasonable chance for success after Gradinger paved

the way.  Furthermore, as the court in Johnson stated, a client "might agree to pay his

lawyer a percentage contingent fee that would be greater than the fee the court might

ultimately set[, but such] arrangements should not determine the court's decision."

Johnson, 488 F.3d at 718.  Nonetheless, the contingent nature of the fee agreement

exposed Class Counsel to some risk.

(7) The time limitations imposed by the client or the circumstances.  "Priority work

that delays a lawyer's other legal work is entitled to some premium.  This factor is

particularly important when a new counsel is called in to prosecute the appeal or handle

other matters at a late stage in the proceedings."  Johnson, 488 F.3d at 718.  Here, there

is no indication that any new counsel has been called in to prosecute an appeal or handle

other matters at a late stage in the proceedings.  Notwithstanding, many class members

10

are advanced in age and required prompt adjudication of this matter to obtain meaningful relief.

(8) The amount involved and the results obtained.  Here, the amount involved and the results obtained are significant.  As noted above, Class Counsel's valuation expert monetized the results obtained at more than $30 million.  Even if the Court discounts the relief obtained based on Defendant's representations at the hearing on the Motion for an Award of Fees, the result is significant.  Thus, based on the amount involved and the results obtained, Class Counsel has earned a substantial fee.

(9) The experience, reputation, and ability of the attorneys.  Steven Dunn submitted a declaration wherein he set forth his professional experience, including more than 450 long term care insurance cases.  He asserts that he has a great deal of experience with maritime practice, but long term care practice has impacted his ability to take on new maritime cases.  Steven Jaffe has twenty-five years of experience and focuses his practice on complex civil jury trial matters and class action cases.  Mark Fistos has litigated class action and consumer cases for more than fifteen years.  Thus, Class Counsel have considerable experience and ability.

(10) The "undesirability" of the case.  Defendant asserts that lawyers were lining up to take this case.  To support their position, they point to the motion to intervene filed in this case, as well as the other cases filed on this same Policy.  Class Counsel has not argued that this case was undesirable.

(11) The nature and length of the professional relationship with the client.  The record contains no information regarding the nature and length of the professional relationship with the client.

(12) Awards in similar cases.  Class Counsel's expert, Edward Zebersky, cites a number of cases wherein plaintiffs' counsel obtained fee awards at the $500 per hour range.  He represents that the $500 per hour figure is "stale" and that the fee should be higher because of the complexity of this case and his naked assertion that legal fees have risen over the last year.  The expert ignores the fact that almost all of the fee awards in the cases he cites were uncontested.  Indeed, the attorneys' fee awards were part of the respective parties' settlement agreements.  Such awards provide the Court with little guidance here.

After applying the factors to the facts of this case, the Court must determine whether it should award a fee based on the common benefit doctrine or the lodestar method.

## A. Common Benefit Doctrine

"According to the now axiomatic American Rule, which was reaffirmed by the United States Supreme Court in Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240 (1975), all parties are to bear their own costs in litigation."  Camden I Condo. Ass'n, Inc. v. Dunkle, 946 F.2d 768, 770-71 (11th Cir. 1991).  Nonetheless, a "common fund" case constitutes an exception to the American Rule.  Id. at 771.  "The common fund exception 'rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense.'"  Id. (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980).  According to the Eleventh Circuit, "[a]ttorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval."  Id. (citing Fed. R. Civ. P. 23(e)).

12

Class counsel's entitlement to a percentage of the common fund derives from the equitable power of the courts under the doctrines of quantum meruit, unjust enrichment and the "common benefit" doctrine.  Id.  Under the common benefit doctrine, courts permit fee reimbursement in two situations:

> (1) when litigation indirectly confers substantial monetary or nonmonetary benefits on members of an ascertainable class, and (2) when the court's jurisdiction over the subject matter of the suit, and over a named defendant who is a collective representative of the class, makes possible an award that will operate to spread the costs proportionately among class members.

Id. (quoting H. Newberg, Attorney Fee Awards § 2.01 at 28-29 (1986)).

Here, as set forth above, the litigation conferred substantial monetary and nonmonetary benefits on members of an ascertainable class.  Nonetheless, Defendant contends that "[u]nder settled law, only the lodestar method can be used to determine attorneys' fees under Fla. Stat. § 627.428, even where a settlement is reached and a common fund is created."  DE 231 at 16.  To support that proposition, Defendant cites a number of unpublished district court opinions.  See id. at 7 n.3.

The first case cited by Defendant, Gonzalez v. Cooperative de Seguros Multiples de Puerto Rico, Inc., No. 8:08-cv-1910-T-30TGW, 2010 WL 2367221 (M.D. Fla. June 14, 2010), does not support that proposition.  Indeed, that opinion does not mention the common benefit doctrine, let alone hold that "only the lodestar method can be used to determine attorneys' fees."  The opinion in Gonzalez, therefore, does not assist the Court here.

Likewise, the second case cited by Defendant, Gimenez v. American Security Insurance Co., No. 8:08-cv-2495-T-24-TGW, 2009 WL 2256088 (M.D. Fla. July 28, 2009), does not support the proposition that "only the lodestar method can be used to determine

13

attorneys' fees."  As with <u>Gonzalez</u>, the opinion in <u>Gimenez</u> does not even mention the common benefit doctrine.  In fact, none of the unpublished district court opinions cited by Defendant mention the common benefit doctrine.[9]

Rather, Defendant extrapolates its purported rule of law from cases that applied the lodestar method of calculating attorneys' fees awarded to a plaintiff pursuant to Fla. Stat. § 627.428.  In none of those cases, however, did a court hold that the lodestar method is the "only" appropriate method or that "attorneys' fees awards under § 627.428 <u>must</u> be calculated using the lodestar method."  <u>See</u> DE 231 at 7.  Nonetheless, for a variety of reasons, the undersigned finds that the lodestar method provides the superior method for awarding attorney's fees in this case.

First, the purported "common fund" is somewhat illusory in this case.  The (b)(3) Settlement Agreement, at Sec. VI(A), states that Defendant "shall designate the total sum of <u>up to</u> $8,000,000 (the 'Settlement Fund') to resolve all claims of Rule 23(b)(3) Settlement Class Members."  DE 163-1 at 19 (emphasis added).  The Settlement Fund, therefore, is not $8,000,000.  Rather, the $8,000,000 figure constitutes a cap on Defendant's liability.[6]

_____

[9]      Defendant also cites <u>Jin Zhi Star Lt. LLC v. Am. Zurich Ins. Co.</u>, No. 08-61191-CIV, 2009 WL 2899913 (S.D. Fla. Sept. 9, 2009); <u>Alea London Ltd. v. Sea Garden Hospitality Mgmt., Inc.</u>, No. 6:06-cv-1683-Orl-22UAM, 2008 WL 89807 (M.D. Fla. Jan. 7, 2008); <u>Dunworth v. Tower Hill Preferred Ins. Co.</u>, No. 05-14019-CIV, 2006 WL 889424 (S.D. Fla. Feb. 14, 2006).

[6]      Indeed, at the hearing on Class Counsel's Motion for an Award of Fees, Defendant represented that based on the claims already filed and a projection of claims yet to be filed, Defendant will most likely pay Rule 23(b)(3) Class Members between $3.91 million and $2.26 million to settle their claims.  Class Counsel did not contend otherwise.

Second, the value of the injunctive relief to the Rule 23(b)(2) Class cannot be demonstrated with mathematical precision.  Because the value of the injunctive relief cannot be demonstrated with mathematical precision, there is no principled way to determine an award based on the common benefit doctrine.

Lastly, the purpose of the common benefit doctrine is to spread the cost of litigation in a class action case from the named plaintiffs to all who benefit from the litigation.  Here, even without application of the common benefit doctrine, the named plaintiffs need not bear a disproportionate share of the litigation costs, for a Florida statute requires Defendant, rather than plaintiffs, to pay plaintiffs' reasonable attorneys' fees.

Thus, although the Court may have the ability to use the common benefit doctrine to award a reasonable fee in some class actions subject to a state fee-shifting statute, the Court need not use the common benefit doctrine here.  The Court, therefore, must determine whether the lodestar method provides Class Counsel with a reasonable fee.

### B. The Lodestar Method

To establish a lodestar amount, the court must ascertain the number of hours an attorney reasonably expended on the litigation and multiply that figure by a reasonable hourly rate.  Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1302 (11th Cir. 1988).  The party seeking fees "is responsible for submitting satisfactory evidence to establish both that the requested rate is in accord with the prevailing market rate and that the hours are reasonable."  Duckworth v. Whisenant, 97 F.3d 1393, 1396 (11th Cir. 1996).  After a court determines a lodestar, it may adjust that amount (either upward or downward) based upon a number of factors, including the results obtained in the litigation.  Norman, 836 F.2d at 1302.

15

<u>1. Reasonable Hours Expended</u>

A fee applicant must set out the general subject matter of the time expended by the attorney "with sufficient particularity so that the court can assess the time claimed for each activity." <u>Norman</u>, 836 F.2d at 1303. "[A] lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights." <u>Id.</u> at 1301. Thus, fee applicants must use "billing judgment." <u>Id.</u> In ascertaining the number of reasonable hours, a court must deduct "'excessive, redundant or otherwise unnecessary hours'" from those claimed. <u>Id.</u> (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983)).

As noted above, Class Counsel seek remuneration for 3,780 hours expended on this case. A review of Class Counsel's billing statement appears to indicate that Class Counsel did not deduct any time from their billing records. Such a practice casts serious doubt on Class Counsel's billing judgment. Indeed, according to Defendant, "[t]he time records are replete with hundreds of internal conference calls and meeting[s] to discuss the most mundane issues like a *pro hac vice* motion, responding to a request for an extension of time from defense counsel, and the like." DE 231 at 9. The Court agrees.

Class Counsel's billing records contain more than 1,800 separate entries. Thus, it is not practical for the Court to reduce all of its line-by-line findings to a written order. Notwithstanding, the Court endeavors to set forth at least some of the reasons why Class Counsel's fee request is unreasonable.

a. Steven Dunn

Steven Dunn billed 1,269 hours on his time sheet. <u>See</u> DE 216-3. Mr. Dunn's nineteen-page time sheet, however, contains very little information regarding what he

actually did during any particular increment of time logged, for each entry consists of only a few words, many of which are shorthand.  For example, Mr. Dunn's records include a sixteen hour entry that states only "SMD IN CHICAGO."  DE 216-3 at 14.  Mr. Dunn therefore makes it virtually impossible for the Court to determine the reasonableness of Mr. Dunn's time.[7]

Consequently, Defendant devotes an entire section of its response to the billing records of Mr. Dunn.  Defendant labels the section as follows: "Mr. Dunn's Time Entries Lack Any Credibility."  DE 231 at 14.  According to Defendant, Mr. Dunn's time records "are extremely vague and in many instances there is just no way to tell what he was doing, or why he was doing it."  Id.

Mr. Dunn "concede[s] . . . after a careful review . . . some adjustments are appropriate."  Supplemental Declaration of Steven Dunn [DE 248].  Thus, Mr. Dunn "agree[s] that a total reduction of 99.45 hours is appropriate."  Id.  The fact that Mr. Dunn concedes, only after he is challenged, that he overbilled nearly one hundred hours on this case casts doubt on his entire billing record.  Indeed, Mr. Dunn attempts to defend several billing entries that the Court finds unreasonable.

For example, Mr. Dunn asserts that "being away from home (family) and office is valuable time and should be compensable, and in my judgment was properly included in my submission."  Id.  Class Counsel offers no support for such an assertion.  The Court disagrees that time spent away from home, but not working on the billed matter, is

_____

[7]     Likewise, Mr. Dunn's record reflects the following ten minute entry: "Filing of Class Counsel's motion is due today per order of."  Id. at 17-18.  On its face, this billing entry is simply a note regarding a deadline.  How it amounts to ten minutes of billable time is perplexing.  Such examples exist throughout Mr. Dunn's records.

17

compensable.  Likewise, Mr. Dunn billed nearly thirty hours to attend a short deposition (i.e., less than three hours) taken by his co-counsel, Mr. Jaffe.  Even if Mr. Dunn attended the deposition to support his co-counsel, billing judgment dictates that Mr. Dunn not bill for it.

Also, there are several instances where Mr. Dunn billed for meetings with co-counsel (like Mr. Jaffe on some occasions and Mr. Fistos on others), but the other attorney's time sheets do not reflect the meetings.  Although it is possible that the meetings occurred and Mr. Dunn's co-counsel failed to record them, the suspect billing practices of Mr. Dunn on other time entries casts doubt on all of his time entries.  Accordingly, whenever there is a doubt regarding the propriety of Mr. Dunn's billing records, the Court resolves the doubt against Mr. Dunn.

Similarly, Mr. Dunn's billing records are replete with instances where he performed tasks along with co-counsel, but co-counsel billed considerably less time than Mr. Dunn.  For example, between March 22, 2010, and March 25, 2010, Mr. Fistos, Mr. Jaffe, and Mr. Dunn attend meetings in Indianapolis.  Mr. Dunn, however, over just a three-day period, billed sixteen hours more than Mr. Fistos and eighteen hours more than Mr. Jaffe.  Even if Mr. Dunn spent eighteen more hours than Mr. Jaffe on the case during those three days, Mr. Dunn's time was either not used reasonably or he performed extra work but failed to set forth in his billing statement what he actually did.  The Court therefore has no basis on which to award Mr. Dunn any fees for that time.  Likewise, Mr. Dunn billed 110 minutes on January 2, 2009, for a telephone conference about Defendant's motion for extension of time to respond to the complaint.  See DE 216-3 at 1.  That entry is patently unreasonable.

b. Farmer, Jaffe, Wessing, et. al.

Class Counsel from Farmer, Jaffe, Wessing, et. al. submitted a "pre-bill worksheet" that describes work from 12/18/2008, through October 21, 2009. See DE 216-1. The sixty-eight page pre-bill worksheet indicates that Farmer, Jaffe, Wessing, et. al. logged 1,161.65 hours on this matter during that time. See id. The pre-bill worksheet presents time that Mr. Fistos, Mr. Jaffe, and their colleagues worked on this matter before they created their present firm and includes 130 hours worked by non-attorneys. See id. at 68.

Farmer, Jaffe, Wessing, et. al. also submitted a separate thirty-two page billing report that indicates their present law firm expended 1,349.55 hours on this matter between December 23, 2009, and November 16, 2010. See DE 216-2. This billing report reflects 48.9 hours of time contributed by non-attorneys. Between the old firm and the new firm, Farmer, Jaffe, Wessing, et. al. seek remuneration for 2,510.65 hours worked on this case.[8] See DE 214-1 at 26.

Defendant's primary contention with the number of hours charged by Farmer, Jaffe, Wessing, et. al., is that multiple attorneys often performed the same task and routinely conferred with one another when such conferrals were not necessary. Even if such conferrals took place, the Court will not award Class Counsel its fees for meeting with one another on mundane matters. Indeed, sound billing judgment dictates that only one attorney bills the client in many such situations. That said, the Court does not rule that multiple attorneys can never charge clients for meeting with one another to discuss a

---

[8]    The Court recognizes that 1,161.65 plus 1,349.55 equals 2,511.2. Nonetheless, Farmer, Jaffe, Wessing, et. al. seek remuneration for 2,510.65 hours worked.

19

matter, develop strategy, etc.  Stated differently, whether multiple attorneys can properly charge a client for working on a joint task depends entirely on the nature of the task.  For example, it is reasonable to have multiple attorneys draft and review a complex motion for summary judgment whereas it is not reasonable for multiple attorneys to review a motion for extension of time.

Furthermore, a review of Class Counsel's time records reflects that Class Counsel spent exorbitant amounts of time on routine matters or matters that should not have been contested with such energy.  For example, Class Counsel expended roughly eighty-two hours for the deposition of an information technology witness that lasted only two hours.  Likewise, Class Counsel expended fifty-eight hours opposing a motion for intervention when intervention only bolstered the class.  Regarding discovery in this matter, the case involved only 7,802 pages of documents and five half-day depositions.  Thus, the Court questions the billing judgment exercised by Farmer, Jafee, Wessing, et. al.  The Court will address their time accordingly.

<u>2. Reasonable Rate</u>

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  <u>Norman</u>, 836 F.2d at 1299.  A fee applicant bears the burden of demonstrating with satisfactory evidence that counsel's rates are reasonable.

> Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work. . . . [S]atisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits.  Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate.  Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence.

Id. (citations omitted). "The court . . . is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." Id. at 1303.

Here, Class Counsel have submitted billing rates of $550 per hour. Class Counsel support these rates with various arguments under the Johnson factors. For example, Class Counsel submit that the requested hourly rate is the "usual and customary" hourly rate that they charge for their services in similar complex class action litigation. Class Counsel also submit expert testimony that $550 per hour is a reasonable rate "given the market for legal services in South Florida." DE 214-5. Finally, because the attorneys' fees were contingent, counsel assumed some risk of recovering nothing for their time.

Defendant objects to the proposed rate, stating that it "is a staggering hourly rate, much higher than has ever been awarded in any reported decision in Florida." DE 231 at 11. Defendant asserts that Class Counsel "have not provided any evidence whatsoever as to rates actually charged to and paid by their clients who pay hourly." Id. Likewise, Defendant asserts that Class Counsel has failed to offer "evidence of rates actually charged by comparable attorneys doing similar work." Id. Moreover, Class Counsel "offer no evidence of what other insureds have paid their attorneys in similar insurance coverage disputes." Id.

Not only have Class Counsel failed to submit evidence regarding hourly rates charged by lawyers working on similar matters in the local community, but Class Counsel also fail to explain why every lawyer who worked on this case commands the same exact rate. By their own admission, the respective lawyers have different skills and different

experiences.  Lastly, Defendant contends that this case was not complicated and involved relatively little risk on the part of Class Counsel, especially in light of the Eleventh Circuit's opinion in <u>Gradinger</u> which proved dispositive in this case.

In their reply, and as noted above, Class Counsel's expert cites cases wherein plaintiffs' counsel obtained fee awards at the $500 per hour range.  He represents that the $500 per hour figure is "stale" and that the fee should be higher because of the complexity of this case and his naked assertion that legal fees have risen over the last year.  The expert ignores that almost all of the fee awards he cites were part of settlement agreements.  Such awards provide the Court with little guidance here.

One of the biggest problems with Class Counsel's proposed hourly rate is that Class Counsel used no associates on this matter, or even partners who could bill at a lower rate.  Although the Court recognizes that plaintiffs' firms often do not employ large numbers of associates the way defense firms do, the Court finds that Class Counsel's decision to perform mundane tasks and then bill at a partner's rate for such work demonstrates poor billing judgment.  Stated differently, because much of the work on this case involved legal research and writing, drafting and responding to discovery, and reviewing documents, the Court should not award Class Counsel an hourly rate associated with a senior partner working on the most sophisticated assignments.  That said, because most of this type of work is performed on a contingency fee basis, it is difficult to establish a prevailing hourly rate.  Based on the factors set forth above, including the Court's own judgment and experience, the Court finds that $375 per hour constitutes a reasonable rate for work performed by the attorneys in this case and $125.00 per hour constitutes a reasonable rate for paralegals.

22

3. Reduction

Upon careful review of the pleadings submitted, the court docket, and the supporting documentation accompanying the fee request, the undersigned finds that a 20% reduction is warranted to reflect the problems noted above. Cf. Conner v. BCC Fin. Mgmt. Servs., Inc., 597 F. Supp. 2d 1299, 1311 (S.D. Fla. 2008) (Altonaga, J.) (adopting recommendation to reduce imprecise and excessive bills by 15%); see also Villano v. City of Boynton Beach, 254 F.3d 1302 (11th Cir. 2001) (upholding a magistrate judge's decision to reduce a fee award where the submissions were insufficiently detailed or redundant).

In their Motion for an Award of Fees, as noted above, Class Counsel claimed 3,780 billable hours. However, 178.7 of these hours were billed by non-attorneys. Thus, only 3,601.3 hours were billed by attorneys. As noted above, the Court finds that a reasonable hourly rate for the attorneys is $375 per hour. Multiplying the attorneys' hourly rate by the number of hours they billed results in a lodestar amount of $1,350,487.50.

As to the work performed by non-attorneys, 178.3 hours were logged by paralegals. As set forth above, the Court finds $125.00 per hour a reasonable rate for paralegals in this community. The total fees generated by paralegals, therefore, is $22,287.50. Class counsel cannot recover time billed by support staff who are not paralegals. Thus, the $1,350,487.50 for the attorneys plus $22,287.50 for paralegals results in a total of $1,372,775.00.

However, after reducing that amount by 20%, the award becomes $1,098,220.00.

## C.  Multiplier

Class Counsel ask the Court to award a 2.5 multiplier.  Under Florida law, a trial court must consider whether to add a multiplier, but the decision whether to award one is discretionary with the trial court.  State Farm Fire & Casualty Co. v. Palma, 629 So.2d 830, 833 (Fla. 1993).  Fee awards pursuant to Fla. Stat. § 627.428 can qualify for a multiplier.

According to the Florida Supreme Court, a trial court must consider several factors, including whether the relevant market requires a contingency fee multiplier to obtain competent counsel; whether the attorney was able to mitigate the risk of nonpayment in any way; and whether any of the factors in Rowe are applicable, "especially, the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client." Standard Guar. Ins. Co. v. Quanstrom, 555 So. 2d 828, 834 (Fla. 1990).  If the trial court determines that success was more likely than not at the outset, it may apply a multiplier of 1 to 1.5; if the likelihood of success was approximately even at the outset, then it may apply a multiplier of 1.5 to 2.0; and if success was unlikely, then it may apply a multiplier of 2.0 to 2.5.  Id.

Here, in light of the Eleventh Circuit's opinion in Gradinger, as set forth above, success was more likely than not at the outset.  Notwithstanding, Class Counsel took some risk in prosecuting this case.  Accordingly, the Court shall apply a 1.5 multiplier. After applying the 1.5 multiplier to Class Counsel's award of $1,098,220.00, the Court arrives at a total fee award of $1,647,330.00.  The Court finds that this constitutes a reasonable fee under the circumstances.

### D. Incentive Awards

In their Motion, Class Counsel request the Court to award $50,000 each to Lead

Plaintiff Ruderman and Lead Plaintiff Powers.  To support their request, Class Counsel

cite an opinion from Judge Gold: Allapattah Servs., Inc. v. Exxon Corp., 454 F. Supp. 2d

1185, 1218-19 (S.D. Fla. 2006).  In Allapattah, the court awarded the class

representatives an incentive award because the case was "unprecedented" and "unique"

in that it lasted fifteen years and obtained full relief for 11,000 class members.  Indeed, the

settlement in Allapattah was for more than $1,000,000,000.00.  See id.

"While the Eleventh Circuit has not expressly set forth guidelines for courts to use in

determining incentive awards, there is ample precedent for awarding incentive

compensation to class representatives at the conclusion of a successful class action."  Id.

(citing cases).  In Allapattah, Judge Gold determined the class representatives deserved

an incentive award because they "played a substantial role in the litigation."  Id. at 1220.

Moreover, the class representative in Allapattah undertook significant risk because they

agreed to accept liability for litigation costs.  Id.  Judge Gold specifically noted that

Allapattah was "not a case where lawyers inappropriately recruit plaintiffs to serve as

'figureheads' for suits the lawyers themselves want to file and settle."  Id.

Here, Class Counsel assert that "original Lead Plaintiffs participated fully in the

action, sat for deposition, engaged in discovery, kept abreast of the action and were an

integral part of the prosecution of this case."  DE 214 at 19.  Defendant, however, submits

that "Plaintiffs have cited no case, and we are not aware of any, where a court 'awarded'

an incentive fee payment that was not agreed to by a defendant as part of an overall

settlement."  DE 231 at 21.  Furthermore, the Lead Plaintiffs appear to have taken no risk

25

in this case.  <u>See</u> DE 250.  Tellingly, Class Counsel do not revisit the incentive award

issue in their reply in support of their Motion.  The Court will not award Lead Plaintiffs an

incentive award.

### E. Costs

Class Counsel seek $66,560.00 in costs expended in this action.  DE 214 at 17.

Specifically, Farmer, Jaffe, Weissing, et. al. seek $50,665.11 in costs.  Steven Dunn seeks

$15,895.03.  Class Counsel represents that it seeks both taxable costs and nontaxable

costs.  According to Class Counsel, "[n]ontaxable costs are allowed under Rule 23(h),

Fed. R. Civ. P., and case law."  DE 221 at 1 n.1.

Rule 23(h) provides that "[i]n a certified class action, the court may award . . .

nontaxable costs that are authorized by law or by the parties' agreement."

Notwithstanding, Defendant submits that Class Counsel "are not entitled to nontaxable

costs and many of the taxable costs, which were untimely filed, are unreasonable,

unnecessary, or not properly documented."  DE 230 at 2 (citing <u>Storfer v. Guar. Trust Life

Ins. Co.</u>, No. 10-60400-CV, 2010 WL 5093654, at *1 (S.D. Fla. Dec. 8, 2010)).

Specifically, Defendant takes exception with Class Counsel's efforts to recover expert

fees, travel costs, and other miscellaneous expenses.  Defendant also contends that

Class Counsel "has completely disregarded the time limits and formats proscribed by

Local Rule 7.3."  <u>Id.</u>

Federal law allows a prevailing party to recover certain costs from the unsuccessful

party.  <u>See</u> 28 U.S.C. § 1920.  A court, however, may tax costs only as authorized by

statute.  <u>Crawford Fitting Co. v. J.T. Gibbons, Inc.</u>, 482 U.S. 437, 445 (1987).  Specifically,

a prevailing party can tax the following costs:

      (1) Fees of the clerk and marshal;

      (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

      (3) Fees and disbursements for printing and witnesses;

      (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

      (5) Docket fees under section 1923 of this title;

      (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Farmer, Jaffe, Weissing, et. al. filed an "Expense Report" that contains such items as "Telephone and Telecopier," "Computer Research/Bloomberg," "Experts/Consultants," "Mediation," "Postage," and "Travel Costs."  DE 214-1 at 28.  Likewise, Mr. Dunn filed a "Statement of Costs" that includes travel, phone calls, and expert fees, but he submits no invoices, detailed explanations, or other support for the charges.  See id. at 32.  The Court will not reimburse Class Counsel for any such costs or expenses not authorized by the statute.

As to taxable costs, Farmer, Jaffe, Weissing, et. al. offer no breakdown at all for the $1,473.22 they seek for "Photocopying," nor do they explain what "Transcripts" they obtained for $3,823.52.  Without supporting documentation or explanation, the Court cannot determine whether such costs were used for the case or whether such costs are reasonable.  Indeed, the only cost on the "Expense Report," that appears recoverable as submitted is the $340.00 claim for service of process.

Mr. Dunn's Statement of Costs contains slightly more detail.  For example, the Statement of Costs shows per copy charges for printing and copying.  Nonetheless, the Statement of Costs contains many noncompensable costs (e.g., phone calls, Pacer

charges, travel expenses) and fails to explain how the compensable costs are reasonable and related to the case.

Furthermore, under Local Rule 7.3(c), a Bill of Costs, along with supporting documentation, must be filed no later than thirty days after entry of the final judgment or order that gives rise to the claim.  Defendant submits that in this case, "class counsel's motion for Summary Judgment was granted on September 8, 2010."  DE 230 at 8.  Class Counsel filed its first Bill of Costs on December 10, 2010.  See DE 221.  Defendant therefore argues that Class Counsel's Bill of Costs was untimely.

Although Class Counsel filed their first Bill of Costs more than thirty days after the Court granted Plaintiff's Motion for Summary Judgment, the 23(b)(3) Class claim still required adjudication.  Eventually, the parties agreed to settle the 23(b)(3) Class claim. The parties did not move the Court for final approval of the settlement of the 23(b)(3) Class until November 5, 2010.  The Court therefore finds the Bill of Costs timely.

Class Counsel supplemented its Bill of Costs most recently on January 27, 2011. See DE 239.  Based on the latest supplement, the Bill of Costs lists $6,923.48 in costs. Id.  The Court shall award Class Counsel $6,923.48 as listed in the Bill of Costs.

## F. Stay

Defendant asks the Court to stay any fee award pending appeal.  According to Defendant, "[g]iven the strength of its arguments, there is a substantial likelihood that WNIC will succeed in obtaining a reversal in the Eleventh Circuit."  DE 231 at 21. Defendant, however, settled a claim in the case that is inextricably linked with the claim on appeal.  Thus, even if Defendant prevails on appeal, Plaintiff will be entitled to a reasonable attorneys' fee.  The Court therefore declines to stay the award of fees.

### III. CONCLUSION

In light of the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1.  Plaintiff's Motion for an Award of (i) Attorneys' Fees and Expenses and (ii) Incentive

    Awards to Class Representatives [DE 214] is hereby **GRANTED IN PARAT** and

    **DENIED IN PART**, as explained above;

2.  Plaintiffs shall recover $1,647,330.00 in reasonable attorneys' fees and $6,923.48

    in costs.

3.  The Court shall separately enter a final judgment as to attorney's fees and costs.

    **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida,

this 17th day of March, 2011.

JAMES I. COHN
United States District Judge

Copies furnished via CM/ECF:
counsel of record