UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 08-23401-CIV-COHN/SNOW

SYDELLE RUDERMAN,
by and through her Attorney-in-fact, Bonnie Schwartz,
and SYLVIA POWERS,
by and through her Attorney-in-fact, Les Powers,
KATE KOLBER, by and through her Attorney-in-fact, Fred Kolber,
ROBERT SCHWARZ and, BLUMA SCHWARZ,
individually and on behalf of all others similarly situated,

                Plaintiffs,

  vs.

WASHINGTON NATIONAL INSURANCE COMPANY,
Successor-in-Interest to Pioneer Life Insurance Company,

                Defendant.

_____/

## ORDER DENYING MOTION TO STAY INJUNCTION

**THIS CAUSE** is before the Court on Defendant's Motion For Stay of Permanent Injunction Pending Appeal [DE 292] ("Motion"). The Court has carefully reviewed the Motion, Plaintiffs' Response [DE 294] ("Response"), Defendant's Reply [DE 298] ("Reply"), the argument of counsel at the April 26, 2012 hearing, and is otherwise fully advised in the premises.

I. BACKGROUND

This case is a class action brought on behalf of all citizens of Florida who purchased a Limited Benefit Home Health Care Coverage Policy ("Policy") from Pioneer Life Insurance Company ("Pioneer Life") in the state of Florida where either: (a) Defendant Washington National Insurance Company ("WNIC") rejected all or a portion

of a claim on the Policy due to the Lifetime Maximum Benefit amount, the Per Occurrence Benefit amount, or both, having been reached; or (b) the Policy was in effect at the time of the filing of this action.  Plaintiff Sydelle Ruderman ("Ruderman") filed her initial class action complaint on December 9, 2008.  See DE 1.  After the Court denied WNIC's Motion to Dismiss [DE 28], Ruderman filed a First Amended Complaint which joined Sylvia Powers as a plaintiff and alleged that the action was brought pursuant to Federal Rules of Civil Procedure 23(b)(2) and (3).  First Amended Class Action Complaint [DE 30] ("Am. Compl.").

Thereafter, Plaintiffs filed a motion for class certification on July 15, 2009.  See Motion for Class Certification [DE 58].   Plaintiffs sought to represent two groups: 1) a Rule 23(b)(2) class defined as "[a]ll of Defendant's Florida Insureds who currently have a Policy in effect ("Rule 23(b)(2) Class")[;]" and 2) a Rule 23(b)(3) class defined as "[a]ll of Defendant's Florida Insureds who were denied Policy benefits during the Class Period because they reached their Lifetime Maximum and/or Per Occurrence Maximum benefit under the Policy ("Rule 23(b)(3) Class")."  Motion for Class Certification at 1-2.[1]  Plaintiffs also sought to be appointed as class representatives and to have their counsel appointed as class counsel.  Id. at 2.

On January 5, 2010, the Court entered its Order Granting Motion to Intervene and Granting Motion for Class Certification [DE 125].  On August 27, 2010, the Court

---

[1] "Florida Insureds" is defined in the Motion for Class Certification as individuals named as insureds in Defendant's Policy or the attorneys in fact for such individuals, where the insured individuals currently reside in Florida and their Policy was issued to them in Florida.  The "Class Period" runs from December 1, 2003 to the present.

2

preliminarily approved the parties' settlement of the money damages portion of this litigation which resolved the claims of the Rule 23(b)(3) Class ("the Settlement"). See DE 165. On November 12, 2010, the Court granted final approval of the Settlement. See DE 212. Meanwhile, on September 8, 2010, the Court granted Plaintiffs' motion for summary judgment on behalf of themselves and the Rule 23(b)(2) class. See Summary Judgment Order [DE 171]. On October 6, 2010, WNIC appealed the Summary Judgment Order to the Eleventh Circuit Court of Appeals. Notice of Appeal [DE 184].

In the Summary Judgment Order, the Court concluded that because the policies were ambiguous, this ambiguity must be construed against WNIC. Summary Judgment Order at 5-7.[2] The Court also enjoined WNIC from "continuing to deny the 8% annual increase in Lifetime Maximum and Per Occurrence Benefits to Plaintiffs and Rule 23(b)(2) Class Members." Id. at 7. On February 17, 2012, the Eleventh Circuit stated

---

[2] The Policies issued to Plaintiffs, under the heading "Benefits," provide:

> HOME HEALTH CARE: We will pay 100% of the usual and customary charges for Home Health Care expenses if the care was pre-authorized. If the care was not pre-authorized we will pay 75% of the usual and customary charges for Home Health Care expenses incurred, up to 75% of the Daily Benefit Amount shown in the schedule. These benefits will be paid up to the Home Health Care Daily Benefit shown in the schedule. All benefits will be limited to the Per Occurrence Maximum Benefit Amount for ALL injuries and sicknesses which are shown in the certificate schedule.

Am. Compl. ¶ 11. Each of the three benefits in the Certificate Schedule (i.e., the Home Health Care Daily Benefit, the Lifetime Maximum Benefit Amount, and the Per Occurrence Maximum Benefit) are subject to a maximum dollar amount (i.e., per day, per lifetime, per occurrence). Id. ¶ 15. The Certificate Schedule also contains an "Automatic Benefit Increase Percentage and states that "Benefits increase by 8% each year." Id. The Policy does not state that the 8% Automatic Benefit Increase applies only to the Daily Benefit Amount. Id. Defendant, however, applied the 8% increase only to the Daily Benefit. Id. ¶ 19.

that it believed that Florida law was unsettled as to how to resolve this ambiguity and certified the issue to the Florida Supreme Court.  Ruderman ex rel. Schwartz v. Wash. Nat. Ins. Corp., 671 F.3d 1208, 1210 (11th Cir. 2012).  Based on the certification to the Florida Supreme Court, WNIC has now moved to stay the injunction which requires them to pay claims of the Rule 23(b)(2) class above the policy caps, or in the alternative, to require either Plaintiffs or WNIC to post a  bond.  Motion at 4.  Plaintiffs contend that WNIC's Motion should be denied.

## II. DISCUSSION

### A. Legal Standard.

Federal Rule of Civil Procedure 62(c) provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."  Fed. R. Civ. P. 62(c).  A motion pursuant to Rule 62(c) seeking to stay an injunction pending appeal is "extraordinary relief" for which the moving party bears a "heavy burden."  Jaffe v. Bank of Am., N.A., 667 F. Supp. 2d 1299, 1323 (S.D. Fla. 2009) (citing Winston Salem/Forsyth Cnty. Bd. of Edu. v. Scott, 404 U.S. 1221, 1231 (1971)); see also Garcia-Mir v. Meese, 781 F.2d 1450, 1453 (11th Cir.1986) ("Such motions are disfavored and granted only in exceptional circumstances.").  When determining whether to grant a motion to stay, the court considers: "1) whether the applicant made a strong showing that it is likely to prevail on the appeal; 2) whether the applicant will be irreparably injured absent a stay; 3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and 4) where the public interest

lies." Jaffe, 667 F. Supp. 2d at 1323 (citing Hilton v. Braunskill, 481 U.S. 770 (1987)). The burden to demonstrate circumstances warranting issuance of a stay is on the movant. Id. at 1323-24. The Court will examine each of these factors below.[3]

### B. WNIC's Likelihood of Prevailing on Appeal.

WNIC contends that it has a probable likelihood[4] of prevailing on appeal because "the Eleventh Circuit's Opinion refusing to affirm the declaratory judgment and injunctive relief proves that the Court's Order was an error." Motion at 6. WNIC also states that it is likely to prevail because "the Florida Supreme Court has, for over a century, held that extrinsic evidence is admissible to solve ambiguities in insurance policies." Id. at 7. Plaintiffs disagree, arguing that "certification by a federal court of a question to a state

---

[3] WNIC cites Garcia-Mir v. Meese for the proposition that "[b]ecause the first factor is the most important,' if the movant "demonstrates a *probable* likelihood of success on the merits on appeal,' a stay will issue regardless of the remaining factors." Motion at 5-6 (citing 781 F.2d at 1453). WNIC misstates the law. In Meese, the Eleventh Circuit noted only that "ordinarily" the first factor is the most important. 781 F.2d at 1453. Additionally, the Supreme Court has cautioned that "[s]ince the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules." Hilton, 481 U.S. at 777. Accordingly, the Court will address each factor. See Harris Corp. v. Federal Express Corp., No. 6:07–cv–1819–Orl–28KRS, 2011 WL 3627379, at *5 (M.D. Fla. Aug. 17, 2011).

[4] WNIC spends over a page of its Reply arguing that the standard for granting a stay of an injunction in the Eleventh Circuit is a "probable likelihood of success on the merits on appeal" articulated in Meese. Reply at 3. The Court notes that the Eleventh Circuit's Meese decision was decided prior to the Supreme Court's decision in Hilton. Here, this Court cites the Hilton standard in accordance with other recent decisions in this Circuit, but notes that the Court's decision on the Motion does not depend upon application of one standard over the other. See, e.g., Harris Corp., 2011 WL 3627379, at *5 (applying Hilton factors); Jaffe, 667 F. Supp. 2d at 1323 (same); Oliver v. Bd. of Regents of Univ. Sys. of Ga., No. 3:06-CV-110 (CDL), 2008 WL 2302686, at *11 (M.D. Ga. May 30, 2008) (same).

supreme [court] is not tantamount to a ruling on the merits." Response at 5.  Plaintiffs also dispute that WNIC's position is supported by Florida law because there are important public policy reasons which favor not allowing use of extrinsic evidence to resolve latent ambiguities in contracts of adhesion.  Id. at 9.

The Court agrees with Plaintiffs that the Eleventh Circuit's certification of questions to the Florida Supreme Court cannot be construed as proof of this Court's "error."  In certifying certain questions to the Florida Supreme Court, the Eleventh Circuit made clear that "the proper approach to take in resolving an ambiguity in an insurance contract seems to us to be an unsettled question of Florida law."  Ruderman ex rel Schwartz, 671 F.3d at 1212.  As Plaintiffs point out, if the Eleventh Circuit believed that this Court's ruling was clearly erroneous under Florida law, it would simply have reversed this Court's grant of summary judgment.  See Response at 6-7.  Instead, the court noted that the correct approach to resolving the ambiguity was "unclear" under Florida law.  Ruderman ex rel Schwartz, 671 F.3d at 1211.  Thus, the Court cannot construe the Eleventh Circuit's certification of questions to the Florida Supreme Court as evidence of WNIC's likelihood of success on the merits of its appeal.

The Court also finds that WNIC has failed to make a strong showing that it is likely to prevail on appeal.  WNIC cites a plethora of cases which it contends stand for the proposition that Florida law permits extrinsic evidence to be used to resolve ambiguities in insurance policies.  Motion at 7-11 (citing cases).  However, as the Eleventh Circuit pointed out, a recent case where the Florida Supreme Court addressed an ambiguity in an insurance policy, Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000), "has been repeatedly cited by state and federal courts for the principle

that '[a]mbiguous policy provisions are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy.'" Ruderman ex rel Schwartz, 671 F.3d at 1211.  In Anderson, the Florida Supreme Court found that an insurance policy was ambiguous, but did not resort to extrinsic evidence to resolve the ambiguity.  756 So. 2d at 35-36.  Instead, it construed the ambiguity against the drafter.  Id. at 36.

After examining some additional recent cases, the Court agrees with the Eleventh Circuit that Florida law on this issue is unsettled.  For example, in Kiln PLC v. Advantage General Ins. Co., Ltd., the District Court of Appeal for the Fourth Circuit held that "[i]n the case of an ambiguous insurance policy, where extrinsic evidence is available, consideration of that evidence *may* be appropriate."  80 So. 3d 429, 432 (Fla. Dist. Ct. App. App. 2012) (emphasis added). The court noted that "[a]mbiguous policies are often simply construed against the insurer, as drafter of the insurance contract."  Id. Although the court ultimately permitted use of extrinsic evidence to resolve an ambiguity in the contract, it cautioned that it reached this conclusion because of the "unique and highly specialized nature of the insurance provided."  Id.; see also Castillo v. State Farm Fla. Ins. Co., 971 So. 2d 820, 823 (Fla. Dist. Ct. App. 2007) (permitting extrinsic evidence to resolve ambiguity in home owner's insurance policy).

Other cases, however, have determined that ambiguities in insurance policies must be resolved against the drafter.  See, e.g., Travelers Indem. Co. v. PCR Inc., 889 So. 2d 779, 785-86 (Fla. 2004) ("When language in an insurance policy is ambiguous, a court will resolve the ambiguity in favor of the insured by adopting the reasonable interpretation of the policy's language that provides coverage as opposed to the reasonable interpretation that would limit coverage.") (citations omitted); Swire Pac.

Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 165 (Fla. 2003) ("An ambiguous provision is construed in favor of the insured and strictly against the drafter.") (citations omitted); DCI MRI, Inc. v. Geico Indem. Co., 79 So. 3d 840, 843 (Fla. Dist. Ct. App. 2012) ("Ambiguities in insurance contracts are resolved in favor of the insured.") (citations omitted).  Accordingly, because the Florida Supreme Court may resolve this issue in favor of either side, the Court finds that WNIC has failed to demonstrate a strong showing that it is likely to prevail.[5]

### C. Irreparable Injury to WNIC Absent a Stay.

WNIC also contends that it will suffer an irreparable injury because if it wins on appeal, it will be forced to "[t]rack[] down 20 or more insureds (or their estates, as many of the insureds are in their 90's) to collect tens of thousands of dollars or more from each of them."  Motion at 13.[6]  Because this collection process would be "enormous and costly,"  WNIC states that it will suffer irreparable harm.  Id.  Plaintiffs point out that the alleged irreparable harm WNIC will suffer is speculative.  Response at 12.  Additionally, Plaintiffs contend that mere monetary harm is not enough to establish irreparable harm and WNIC has failed to address how it might recoup or otherwise guard against its losses.  Id. at 12-13.

The Court agrees with Plaintiffs that WNIC has failed to demonstrate that it will suffer irreparable harm absent a stay.  This case has been on appeal since October

---

[5] The Court notes that it would reach the same conclusion under the "probable likelihood of success" standard that WNIC urges the Court to apply.

[6] During oral argument, counsel for WNIC represented that the number could be 70-80 by the time the Florida Supreme Court resolves the certified questions. Plaintiffs counsel stated that only 20 people were on claim.

2010.  WNIC has failed to articulate why it is facing a threat of irreparable injury now, when it has been complying with the preliminary injunction since October 2010.[7]  The Court also agrees that WNIC's potential monetary loss is insufficient to establish irreparable harm.  <u>Gesualdi v. Laws Constr. Corp.</u>, 759 F. Supp. 2d 432, 448-49 (S.D.N.Y. 2010) ("To establish irreparable harm, 'the injury alleged must be one requiring a remedy of more than mere money damages.' <u>Ford v. Reynolds</u>, 316 F.3d 351, 355 (2d Cir. 2003).  Monetary loss may constitute irreparable harm where, for instance, the loss threatens the existence of a business.").  Here, WNIC has not indicated that its business would be in jeopardy if it is forced to continue payments to the approximately 20 class members on claim during the remainder of the appeal.  Nor has WNIC established that its business is in danger if it prevails on appeal, but is unable to collect overpayments from the class members currently on claim.  Finally, WNIC has failed to establish that it would be impossible to collect overpayments made to class members.  <u>Conkright v. Frommert</u>, 556 U.S. 1401, 129 S. Ct. 1861, 1862 (2009) ("With respect to irreparable harm, the applicants urge that, should they prevail in this Court, they may have trouble recouping any funds they disburse to beneficiaries.  But they do not establish that recoupment will be impossible; nor do they suggest that the outlays at issue will place the plan itself in jeopardy."). Thus, the Court finds that WNIC has failed to demonstrate irreparable harm.

---

[7] Indeed, WNIC states that it has already expended "in excess of $1,000,000 to approximately 20 policyholders."  Motion at 13.  At oral argument, WNIC counsel stated that the amount paid could stretch to several million dollars by the time the Florida Supreme Court resolves the certified questions.

### D. Injury to Parties in the Proceeding.

WNIC also argues that a stay will not harm the class because (1) "there can be no harm from losing a benefit that was never bargained for in the first place;" (2) if the Supreme Court rules against WNIC, the class members have an adequate remedy to recover losses resulting from the stay; and (3) the class members have other assets from which they can pay for their own health care." Motion at 15-16. Plaintiffs argue that granting a stay would harm the class members because WNIC "is actually asking the Court not to preserve the status quo . . ., but to alter it to the detriment of Class Members." Response at 17.

The Court agrees with Plaintiffs that staying the permanent injunction will harm the elderly class members. See id. at 16 (noting that the average age of insureds is close to 90 years old). In its Reply, WNIC states that "although Plaintiffs assert that '[e]ntry of the stay . . . would entirely cut off the on-going benefits to very elderly insureds,' . . . they provide no evidence that class members will lack access to home health care or be otherwise unable to pay their own home healthcare." Reply at 7. Plaintiffs are not required to come forward with such evidence. The burden of establishing entitlement to the "extraordinary relief" of a stay is solely on WNIC, as the moving party. See Jaffe, 667 F. Supp. 2d at 1323. Here the Court finds that WNIC has failed to establish that depriving class members of continued benefits will not harm the class members.

### E. Public Interest.

Finally, the Court finds that the public interest is served by maintaining the status

quo, i.e. requiring WNIC to continue to make payments to the Plaintiffs and other members of the class while the Florida Supreme Court resolves the questions the Eleventh Circuit certified to it.  Additionally, the Court finds that WNIC is not entitled to a stay because it has failed to demonstrate that "the balance of the equities [identified in factors 2, 3, and 4] weighs heavily in favor of granting the stay."  See Meese, 781 F.2d at 1453.  Accordingly, because WNIC has failed to establish that it is entitled to a stay of the permanent injunction, the Court will deny the motion and declines to address WNIC's proposed alternatives for mitigating injury to the class members.  See Motion at 14-15 (discussing options for (1) the class to post a bond and continue to receive benefits; (2) WNIC to cease making payments and to post a bond; and (3) for WNIC to use the attorney's fee award as collateral for additional payments).

### III. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Defendant's Motion For Stay of Permanent Injunction Pending Appeal [DE 292] is **DENIED**.

**DONE AND ORDERED** in Chambers, at Fort Lauderdale, Broward County, Florida, this 27th day of April, 2012.

JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF.